# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>Plaintiffs,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>Defendant. | Civil Action No.   1:19-cv-01071 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs RACHEL MILLER, the TEXAS DEMOCRATIC PARTY (the "TDP"), the DEMOCRATIC NATIONAL COMMITTEE (the "DNC"), DSCC, and DCCC file this Complaint for Declaratory and Injunctive Relief against Defendant RUTH HUGHS, in her official capacity as the Texas Secretary of State, and allege as follows:

### NATURE OF THE CASE

1.      It is a truth almost universally acknowledged that the candidate listed first on a ballot receives an electoral benefit solely due to their ballot position. Academics have come to this conclusion again and again, as have federal and state courts. Even Texas law recognizes this reality, having long required that in *primary* elections a county-by-county lottery system must be used to determine ballot order. *See* Tex. Elec. Code § 12.082(a). This system, which randomizes the impacts of ballot order, was put into place expressly "*so [that] no preference shall be given to any candidate.*" Section 113, Terrell Law Acts, 29th Leg., 1905, 1st C.S. at 521, et seq. (emphasis added).

2.      The same safeguards, however, are not in place for Texas's general elections. Quite to the contrary, Texas law mandates that candidates who share their political party with the last-

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1**

elected Governor *must* be listed first in every single partisan race on the general election ballot. *See* Tex. Elec. Code § 52.091(b) (the "Ballot Order Statute"). As a result, candidates of the last-elected Governor's party—and only that party—receive a state-mandated advantage in every partisan election across the state, up and down the ballot, be it in races for national, statewide, or local offices, undermining the integrity of Texas's general elections.

3.     The well-established advantage that inures to a first-listed candidate is the result of a well-studied and proven phenomenon known as "position bias."[1] Because a Republican has held the position of Governor in Texas since 1995, the Ballot Order Statute has mandated a systemic advantage to all Republican candidates in contested general elections for the last 24 years. Absent an order from this Court prohibiting its future enforcement, that advantage will continue into the next election cycle in 2020, and through at least 2022, when Texas is next set to elect a Governor.

4.     Plaintiffs in this case include Ms. Miller, an individual Texas voter who has supported and plans to continue to support Democrats for public office in Texas in 2020 and beyond; the TDP, which supports the election of Democrats up and down the ticket in Texas; the DNC, the official national party committee for the Democratic Party, which supports the election of Democrats up and down the ticket across the country; the DSCC, a political committee the central mission of which is to support Democratic candidates for the U.S. Senate, including the seat currently held by Republican Senator John Cornyn, up for election in 2020; and the DCCC, a political committee the central mission of which is to support Democratic candidates for the U.S. House of Representatives, including for Texas's 36 congressional districts, each of which will be on the ballot in 2020.[2]

5.     Each of these Plaintiffs has been and will continue to be severely injured as a direct result of the systemic advantage that the Ballot Order Statute confers on all candidates of the Republican Party in election after election, up and down the ticket. At its most basic, the Ballot

---

[1] Other terms for this phenomenon include the "primacy effect," or, in elections specifically, "ballot order effect" and "candidate name order effect."

[2] This Complaint refers to the TDP, DNC, DSCC, and DCCC collectively as the "Committee Plaintiffs."

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2**

Order Statute injures the Committee Plaintiffs and its candidates, as well as Ms. Miller and the other voters who support them, by treating them differently from the similarly situated Republican Party, solely because a Republican candidate won the last election for Governor—an election entirely unrelated to all of the other elections in which the Ballot Order Statute arbitrarily bestows upon all Republican candidates an advantage over their similarly situated Democratic opponents.

6. The Ballot Order Statute also dilutes the vote of Texans, including Ms. Miller and the voting members and constituents of the Committee Plaintiffs, who consistently support Democratic candidates in Texas elections. The resulting disparate treatment and burden on Plaintiffs' (and in the case of the Committee Plaintiffs, their members' and constituents') right to vote are not justified by any legitimate, much less compelling, state interest.

7. In the only case in which the U.S. Supreme Court has considered a challenge to a practice that similarly gave certain types of candidates the advantage of being listed first, the Court summarily affirmed a preliminary injunction that required the use of a system that gave candidates an equal opportunity to be listed first. *See Mann v. Powell*, 333 F. Supp. 1261 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970). Multiple courts that have considered analogous challenges have similarly found they cannot survive constitutional scrutiny. *See, e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980); *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977); *Graves v. McElderry*, 946 F. Supp. 1569, 1580 (W.D. Okla. 1996); *Netsch v. Lewis*, 344 F. Supp. 1280, 1280 (N.D. Ill. 1972); *Gould v. Grubb*, 14 Cal. 3d 661, 664 (1975); *Matter of Holtzman v. Power*, 62 Misc.2d 1020, 1025 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (1970). This Court should reach the same conclusion and hold Texas's Ballot Order Statute unconstitutional.

## JURISDICTION AND VENUE

8. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

9. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3**

10.     This Court has personal jurisdiction over the Defendant, the Secretary of State, who is sued in her official capacity only.

11.     Venue is proper in the Austin Division of the U.S. District Court in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because, *inter alia*, a substantial part of the events that gave rise to Plaintiffs' claims occurred there.

12.     This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

13.     Plaintiff RACHEL MILLER is a resident of and registered voter in the State of Texas. She has been a resident of and registered voter in Fort Worth since 2013. Ms. Miller regularly votes in Texas elections and has voted consistently for Democratic Party candidates. Ms. Miller intends to vote for Democratic Party candidates in the upcoming 2020 general election. If the Court does not enjoin the Ballot Order Statute prior to the upcoming November 2020 election, Republican Party candidates will be listed in the first position on the ballot in all partisan races in which Ms. Miller will be voting, and they will receive an artificial and unfair advantage purely as a result of the Ballot Order Statute. As a result, Ms. Miller will suffer serious, irreparable injury as a result of the Ballot Order Statute, both due to the dilution of her vote and the burden on her efforts to help elect Democratic Party candidates. Her vote for Democratic Party candidates in the 2020 election will be diluted relative to the votes for Republican Party candidates, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates increased—by the votes accruing to Republican Party candidates solely due to their first position on the ballot. Ms. Miller has also been actively engaged in efforts to help elect Democratic Party candidates in Texas as a campaign manager, precinct chair for the county party, and board member of the Tarrant County Democratic Women's Club—efforts which the Ballot Order Statute makes significantly more difficult. Ms. Miller plans to continue to be an active Democratic supporter in regard to the upcoming 2020 general election. The Ballot Order Statute, if it is not enjoined, will burden Ms. Miller's ability to engage in effective efforts to elect

Democratic Party candidates by requiring substantially more time and resources to achieve her mission.

14.     Plaintiff TDP is the State committee of the Democratic Party as defined by 52 U.S.C. § 30101(15). Its mission is to elect local, state, and national candidates of the Democratic Party to public office in Texas. The TDP works to accomplish that mission by, among other things, working closely with Democratic candidates and assisting county parties by making expenditures on candidates' behalves, providing Get Out the Vote ("GOTV") assistance, and actively supporting the development of programs benefiting Democratic Party candidates. The TDP has previously engaged in, and plans to continue to engage in, expenditures on behalf of Democratic Party candidates, GOTV assistance, and the development of programs to elect Democratic Party candidates in Texas. The TDP has members and constituents across Texas, including Democratic Party candidates, elected officials, and voters. The Ballot Order Statute directly harms the TDP by frustrating its mission and efforts to elect Democratic Party candidates in Texas by giving an unfair, arbitrary, and artificial electoral advantage to Republican Party candidates. The TDP has had to and will have to expend and divert funds that otherwise would have supported GOTV and other mission-critical efforts to combat the effects of the Ballot Order Statute to assist in getting Democratic candidates elected in Texas, including specifically in anticipation of the 2020 general election. The Ballot Order Statute further harms the TDP because it treats the TDP's candidate members differently than similarly situated Republican Party candidates in partisan elections by mandating that all Republican candidates must be listed first on the ballot in every election for no other reason than because a Republican won the last gubernatorial election. The TDP's voter members and its constituency of Democratic voters also have suffered and will continue to suffer serious, irreparable injury as a result of the Ballot Order Statute, because their votes for Democratic Party candidates have been and will continue to be diluted by operation of the Ballot Order Statute.

15.     Plaintiff the DNC is the national committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect local, state, and national candidates of the Democratic Party to public office throughout the United States, including in Texas. The DNC works to

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5**

accomplish that mission by, among other things, working closely with Democratic candidates and assisting state parties by making expenditures on candidates' behalves, providing GOTV assistance, and actively supporting the development of programs benefiting Democratic Party candidates. The DNC has previously engaged in, and plans to continue to engage in, expenditures on behalf of Democratic Party candidates, GOTV assistance, and the development of programs to elect Democratic Party candidates in Texas. The DNC has members and constituents across the United States, including in Texas, where the DNC's members and constituents include Democratic Party candidates, elected officials, and voters. The Ballot Order Statute directly harms the DNC by frustrating its mission and efforts to elect Democratic Party candidates in Texas by giving an unfair, arbitrary, and artificial electoral advantage to Republican Party candidates. The DNC has had to and will have to expend and divert funds that otherwise would have supported GOTV and other mission-critical efforts in order to combat the effects of the Ballot Order Statute to assist in getting Democratic candidates elected in Texas, including specifically in anticipation of the 2020 general election. The Ballot Order Statute further harms the DNC because it treats the DNC's candidate members in Texas differently than similarly situated Republican Party candidates in partisan elections by mandating that all Republican candidates must be listed first on the ballot in every election for no other reason than because a Republican won the last gubernatorial election. The DNC's voter members and its constituency of Democratic voters also have suffered and will continue to suffer serious, irreparable injury as a result of the Ballot Order Statute, because their votes for Democratic Party candidates have been and will continue to be diluted by operation of the Ballot Order Statute.

16.     Plaintiff DSCC is the national senatorial committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect candidates of the Democratic Party to the U.S. Senate, including in and from Texas. The DSCC works to accomplish its mission by, among other things, making expenditures for and contributions to Democratic candidates for U.S. Senate and assisting state parties throughout the country, including in Texas. In 2018, the DSCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to

support Democratic Senate candidates. In 2020, there will be a Senate election in Texas, and the DSCC will work to elect the Democratic candidate. As a result, the DSCC again intends to make substantial contributions and expenditures to support the Democratic candidate for U.S. Senate in Texas in 2020. The Ballot Order Statute directly harms the DSCC by frustrating its mission by giving an unfair, arbitrary, and artificial electoral advantage to the Republican Party candidates in all partisan elections, including elections for U.S. Senate. Most immediately, the DSCC will have to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Texas, at the expense of its efforts in other states, to combat the effects of the Ballot Order Statute in the 2020 general election for U.S. Senate in Texas.

17.     Plaintiff DCCC is the national congressional committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). The DCCC's mission is electing Democratic candidates to the U.S. House of Representatives from across the United States, including from Texas's 36 congressional districts. The DCCC works to accomplish its mission by, among other things, making expenditures for, and contributions to, Democratic candidates for U.S. Congress and assisting state parties throughout the country, including in Texas. In 2018, the DCCC made contributions and expenditures in the millions of dollars to persuade and mobilize voters to support Democratic congressional candidates—including several million dollars in Texas alone. For 2020, the DCCC has identified a number of congressional districts in Texas as targeted races, in which it will expend significant resources to support Democratic candidates. Overall, in 2020, the DCCC expects to make contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic candidates in congressional elections around the country, including in Texas. The Ballot Order Statute directly harms the DCCC by frustrating its mission and efforts to elect Democratic Party candidates to the U.S. Congress in Texas by giving an unfair, arbitrary, and artificial electoral advantage to the Republican Party candidates. Most immediately, the DCCC will have to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Texas, at the expense of its efforts in other states, in order

to combat the effects of the Ballot Order Statute in getting Democratic candidates elected in Texas in the 2020 general election.

18.     Defendant Ruth Hughs is the Secretary of State of Texas and is named as a Defendant in her official capacity. She is the State's chief elections officer and, as such, is responsible for the administration and implementation of election laws in Texas, including the Ballot Order Statute. *See* Tex. Elec. Code § 31.001(a). Among many other duties, the Secretary is specifically responsible for prescribing "the form of the ballot." Tex. Elec. Code § 105.002(c). The Secretary acted under color of state law at all times relevant to this action.

### STATEMENT OF FACTS AND LAW

19.     It is well-established that the candidate whose name is listed first on the ballot receives the advantage of additional votes solely due to her position on the ballot. *See* Nuri Kim et al., *Moderators of Candidate Name-Order Effects in Elections: An Experiment*, 36 Political Psychology 525, 526 (2015) ("The body of research on name-order effects indicates that candidates often received more votes when their names were listed first than when their names were listed after the names of one or more candidates with whom they competed."); *see also* Josh Pasek et al., *Prevalence and Moderators of the Candidate Name-Order Effect*, 78 Public Opinion Quarterly 416, 417 (2014) ("Most studies reported evidence of primacy effects, whereby candidates received more votes when listed first than when listed later."); *Holtzman*, 62 Misc. 2d at 1023 (recognizing "there is a distinct advantage to the candidate whose name appears first on a ballot" and this phenomenon is "so widespread and so universally accepted as to make it almost a matter of public knowledge"); *McLain*, 637 F.2d at 1166 (affirming "finding of ballot advantage in the first position"); *Sangmeister*, 565 F.2d at 468 ("[T]he trial court's conclusion that 'top placement on the ballot would be an advantage to the plaintiff' is supported by substantial evidence[.]"); *Graves*, 946 F. Supp. at 1576 (finding "some measure of position bias exists in Oklahoma's" elections); *Akins v. Sec'y of State*, 154 N.H. 67, 71 (N.H. 2006) (affirming finding that "the primacy effect confers an advantage in elections"); *Gould*, 14 Cal. 3d at 664 (describing finding of position bias as "consistent with parallel findings rendered in similar litigation

throughout the country"); *State ex rel. Roof v. Bd. of Comm'rs*, 39 Ohio St. 2d 130, 136 (Ohio 1974) (recognizing "it is generally agreed" that "candidates whose names appear at the beginning of the list receive some votes attributable solely to the positioning of their names"); *Kautenburger v. Jackson*, 85 Ariz. 128, 130-131 (Ariz. 1958) ("[I]t is a commonly known and accepted fact that where there are a number of candidates for the same office, the names appearing at the head of the list have a distinct advantage.").

20.     Indeed, even the Republican Party of Texas agrees that "[s]cientific studies have shown those candidates listed first tend to receive more votes." Republican Party of Texas, *Candidate Certification & Ballot Drawing* (Dec. 15, 2015), https://www.texasgop.org/wp-content/uploads/2013/11/2016-Ballot-Drawing-FINAL-updated-12.15.15.pdf.

21.     Texas's Ballot Order Statute mandates that, for every single partisan election listed on a general election ballot in the state, the candidates who share their political party with that of the last-elected Governor must be listed first. *See* Tex. Elec. Code § 52.091(b). Candidates of any other party have no chance of being listed first.[3]

22.     Thus, the Ballot Order Statute, on its face, treats even similarly situated major political parties differently, to the consistent detriment of the candidates who do not share their political party affiliation with the last-elected Governor.

23.     Candidates who share their political party affiliation with the last-elected Governor enjoy a systemic, arbitrary, and artificial advantage over their otherwise similarly situated rivals,

---

[3] The provision that Plaintiffs challenge here mandates that candidates from parties which had a candidate in the most recent gubernatorial election are ordered based on the results of that gubernatorial election. Plaintiffs do not challenge either the state's decision to place candidates from parties which previously fielded a gubernatorial candidate before candidates from parties which did not, or to order the latter through a drawing conducted by the Secretary of State. *See* Tex. Elec. Code § 52.091(b); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997) (allowing states to "enact reasonable election regulations that may, in practice, favor the traditional two-party system"). Nor do Plaintiffs challenge the state's decision to place independent candidates and write-in candidates after candidates nominated by a political party. *See* Tex. Elec. Code § 12.082(a); *Meyer v. Texas*, No. H-10-3860, 2011 WL 1806524, at *6 (S.D. Tex. May 11, 2011) (granting motion to dismiss write-in candidate's challenge to Texas ballot order statute because "[a write-in candidate] is not similarly situated to party candidates").

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9**

directly and solely as a result of the Ballot Order Statute, which boosts their electoral prospects for no other reason than a single member of their party out-performed other candidates in a different election, which in many cases occurred years before the elections in which they continue to enjoy and maintain this state-mandated advantage.

24.     This mandated and perpetual preference for the candidates of a single political party in Texas's general elections stands in stark contrast to the ballot order system that the State employs in other contexts.

25.     For example, Texas employs a county-by-county lottery system to determine candidate name order in primary elections. *See* Tex. Elec. Code § 172.082(a) ("The order of the candidates' names on the general primary election ballot for each county shall be determined by a drawing.").

26.     A previous version of this statute made it clear that the purpose of the lottery ballot order system was "*so no preference shall be given to any candidate*." Terrell Law Acts § 113, 29th Leg. (1905) (emphasis added).

27.     A lottery system is also currently used to determine the order of independent candidates in Texas, as well as in general or special elections in which a party nominee is not running. *See* Tex. Elec. Code § 52.094(a) ("Except as otherwise provided by law, for an election at which the names of more than one candidate for the same office are to appear on the ballot in an independent column or are to appear on a general or special election ballot that does not contain a party nominee, the order of the candidates' names shall be determined by a drawing.").

28.     The systemic and arbitrary injury to Plaintiffs that follows from the operation of the Ballot Order Statute has grown more severe in recent years, as the Texas electorate has become more diverse and support for Democratic candidates has grown significantly, resulting in more competitive elections even in seats traditionally held by Republican Party affiliates.

29.     In the most recent mid-term election cycle in 2018, multiple statewide elections were decided by thin margins. The elections for Lieutenant Governor, Attorney General, and U.S. Senator were won by Republicans with margins within five percentage points. In the race for U.S.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10**

Senator, incumbent Republican Senator Ted Cruz won his race against Democratic challenger Beto O'Rourke by only 2.6 percentage points, and in the races for Attorney General and Lieutenant Governor, Republicans Ken Paxson and Dan Patrick won by only 3.56 percentage points and 4.81 percentage points, respectively.

30.     The 2018 election cycle also saw numerous elections for federal and state representatives decided by small margins. In the 23rd Congressional District, Republican Will Hurd held onto his seat over Democratic challenger Gina Ortiz Jones by only 0.44% of the vote, a total of only 926 votes. Republicans also won five other U.S. House races by margins within 5 percentage points, including the 21st Congressional District (2.61%), 31st Congressional District (2.91%), 24th Congressional District (3.07%), 10th Congressional District (4.27%), and 22nd Congressional District (4.91%).

31.     Numerous races for state senate and state representative were equally close, with seven races for state representative and two for state senate decided by margins within 5 points, including the races for State Representative District 138 (0.1%), State Representative District 108 (0.28%), State Representative District 66 (0.58%), State Representative District 112 (2.08%), State Representative District 67 (2.30%), State Senator, District 8 (2.36%), State Representative District 92 (2.39%), State Senator, District 17 (4.64%), and State Representative District 26 (4.82%).

32.     These figures demonstrate that the Ballot Order Statute undermines the integrity of elections for national, statewide, and local offices alike.

33.     There are likely to be even more highly competitive races in Texas in 2020.

34.     As of the date of this filing, the Cook Political Report was rating one congressional seat currently held by a Republican in Texas as leaning Democratic (Congressional District 23), two more as toss ups (Congressional District 22 and Congressional District 24), and three more as competitive (Congressional District 10, Congressional District 21, and Congressional District 31).

35.     The Washington Post has identified Senator Cornyn's seat as competitive and among the ten Senate seats most likely to flip in 2020.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11**

36.     At the state level, Democrats flipped 12 seats in the Texas State House in 2018, leaving them only nine seats short of a majority. Because Republicans carried 17 districts by single digits in 2018, this opens up the very real prospect of majority control of the Texas State House being up for grabs in the 2020 election.

37.     Unless the Ballot Order Statute is enjoined, in every single one of these races the Republican candidate will enter the election with a state-mandated thumb on the scale in favor of their election, for no other reason than a different Republican candidate won the Governor's race in an unrelated election in 2018.

38.     The result will be severe and irreparable harm to the Committee Plaintiffs, the candidates that they support, and the voters who support them, including Ms. Miller.

39.     That injury will repeat itself in each election that follows, unless and until a Republican fails in their bid to win a Governor's race in Texas.

40.     Neither political favoritism of one political party (here, the political party of the Governor) and its voters, nor purported election administration concerns, can sustain the Ballot Order Statute against legal challenge. *See Obama for Am. v. Husted*, 697 F.3d 423, 434 (6th Cir. 2012) (finding state interest in "smooth election administration" insufficient to justify disparate burden on voters); *see also Graves*, 946 F. Supp. at 1569 (finding no legitimate state interest in always placing one major political party first on the ballot).

41.     Nor can the State justify its arbitrary and unfair treatment of one similarly situated major political party, its candidates and voters over the other by a claim of administrative necessity. As discussed, Texas itself already employs a county-by-county rotational lottery system in primary elections, Tex. Elec. Code § 172.082(a). This system was put in place precisely so that "no preference shall be given to any candidate." Terrell Law Acts § 113, 29th Leg. (1905). The use of a rotational system in the general election would similarly alleviate the burdens imposed by the current Ballot Order Statute, as well as the arbitrary differential treatment that it presently mandates.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12**

42.     This has been the conclusion of several courts that have considered challenges to similarly flawed ballot order statutes. *See, e.g.*, *McLain*, 637 F.2d at 1169 ("[T]he fairest remedy for a constitutionally defective placement of candidates would appear to be some form of ballot rotation whereby 'first position' votes are shared equitably by all candidates," and "[o]ur preliminary research suggests that the most effective rotation system is one which rotates names from one ballot to the next."); *Gould*, 14 Cal. 3d at 676 (stating "a number of state courts have specifically ordered election officials to implement a ballot rotation method, thereby largely eliminating the potential distorting effect of positional preference"); *Kautenburger*, 85 Ariz. at 130 (ordering rotation to remedy constitutional harm); *Elliott v. Sec'y of State*, 295 Mich. 245, 250 (1940) (same).

43.     Even if using a system in the general election to ensure fair ballot ordering would impose some administrative burden, it cannot justify the disparate treatment that the current Ballot Order Statute mandates, or outweigh the burden that it imposes on the rights of political parties, candidates, and the voters who support them. *See, e.g.*, *Mann*, 333 F. Supp. at 1261; *Meier*, 637 F.2d at 1166; *Sangmeister*, 565 F.2d at 468; *Graves*, 946 F. Supp. at 1580; *Netsch*, 344 F. Supp. at 1280; *Gould*, 14 Cal. 3d at 664; *Holtzman*, 63 Misc.2d at 1025.

## CLAIMS FOR RELIEF

### COUNT I

**First and Fourteenth Amendments**
**U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202**
**Undue Burden on the Right to Vote**

44.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 443, as though fully set forth herein.

45.     A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the State for the burdens imposed by

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13**

the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

46.     "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted); *see also Gould*, 14 Cal. 3d at 670 (applying "close scrutiny" standard of review, because ballot order system "impose[d] a very 'real and appreciable impact' on the equality, fairness and integrity of the electoral system"); *Akins*, 154 N.H. at 67 (applying strict scrutiny to determining state constitutionality of ballot order system that prioritized candidate names alphabetically).

47.     Texas's Ballot Order Statute, which provides an unfair, arbitrary, and artificial advantage to all candidates whose political party won the last gubernatorial election, burdens the right to vote of those voters—including Ms. Miller and the members and constituents of the Committee Plaintiffs—who support candidates of the major political party whose candidates are not listed first on the ballot, because it dilutes their vote relative to the votes for the favored political party candidate that the Statute requires be listed first on the ballot. *See McLain*, 637 F.2d at 1163 (describing system of listing first candidates of party that received the most votes in last North Dakota congressional election as "burden[ing] the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the *fourteenth amendment*"); *see also Gould*, 14 Cal. 3d at 670 (describing statute that prioritized ballot order by incumbency as "inevitably dilut[ing] the weight of the vote of all those electors who cast their ballots for a candidate who is not included within the favored class").

48.     The weight and impact of Ms. Millers' vote (as well as the votes of the Committee Plaintiffs' membership and constituencies) are consistently and arbitrarily decreased—and the weight and impact of the votes for the statutorily favored party's candidates, increased—by the votes accruing to the first-listed candidates solely due to their first position on the ballot as mandated by the Ballot Order Statute.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14**

49.     The Ballot Order Statute is not justified by any legitimate state interest, let alone a compelling state interest, that is sufficiently weighty to justify the burden on the right to vote. *See McLain*, 637 F.2d at 1167 (holding state's asserted interest in "making the ballot as convenient and intelligible as possible for the great majority of voters" was not a legitimate state interest to justify listing first on the ballot candidates of the political party that received the most votes in the last congressional election and constituted "favoritism"); *Gould*, 14 Cal. 3d at 675 (rejecting argument that asserted state interests in promoting "efficient, unconfused voting" justified an incumbent-first ballot order system and holding that interest "in promoting speed in the voting booth" was not a "compelling" state interest); *Holtzman*, 62 Misc. 2d at 1024 (holding no rational basis for "favoritism to a candidate merely on the basis of his having been successful at a prior election" in terms of ballot order).

50.     Thus, the burdens imposed by the Ballot Order Statute on the fundamental right to vote outweigh any alleged benefits of the law.

51.     Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between the Secretary of State and Plaintiffs, who have adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries to their fundamental right to vote, including, most immediately, in the upcoming general election to be held in November 2020.

## COUNT II

**Fourteenth Amendment**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202**
**Disparate Treatment in Violation of the Right to Equal Protection**

52.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 51, as though fully set forth herein.

53.     The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

54.     This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Center*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

55.     Texas's Ballot Order Statute treats one of the two major (and similarly situated) political parties—and its candidates, members, constituencies, and the voters and organizations who support it—differently from the other major political party, giving one an unfair and arbitrary electoral advantage based solely on the performance of that party's candidate in the last gubernatorial election, in violation of the Equal Protection Clause. *See McLain*, 637 F.2d at 1166 (holding statute requiring political party of candidate who received most votes in prior North Dakota congressional election to be listed first on ballots unconstitutional, in violation of Equal Protection Clause); *see also Mann*, 333 F. Supp. at 1267 (enjoining ballot order system of placing candidates at top of ballot based on prior electoral success—due to "seniority" or "incumbency"—and stating "[t]he Fourteenth Amendment requires all candidates, newcomers and incumbents alike, to be treated equally"), *aff'd*, 398 U.S. 955 (1970); *Netsch v. Lewis*, 344 F. Supp. 1280, 1281 (N.D. Ill. 1972) (holding statute prescribing ballot order by past electoral success violated Fourteenth Amendment because it denied "the right to equal protection"); *Holtzman*, 62 Misc. 2d at 1024 (holding system requiring placement of incumbent at top of ballot unconstitutional because it violated Equal Protection Clause); *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977) ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party.") (citation omitted).

56.     Texas's Ballot Order Statute is not even rationally related to a legitimate state interest—much less narrowly tailored to advance a compelling state interest—to justify favoring the political party of the last-elected Governor (and the serious and irreparable injury that results to the Plaintiffs because of that favoritism), by ensuring that all candidates running in future elections under the auspices of the same party are listed first on the ballot and thus receive an

unfair electoral advantage solely resulting from their position of primacy. *See, e.g.*, *McLain*, 637 F.2d at 1167 (holding state's asserted interest in "making the ballot as convenient and intelligible as possible for the great majority of voters" did not justify statute listing first on the ballot candidates of the political party that won last congressional race); *Holtzman*, 62 Misc. 2d at 1024 (holding no rational basis for "such favoritism to a candidate merely on the basis of his having been successful at a prior election" in terms of ballot order).

57.     Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between the Secretary of State and Plaintiffs, who have adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries due to disparate treatment in violation of the Equal Protection Clause, including, most immediately, in the upcoming 2020 general election.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

a)  declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Ballot Order Statute violates the First and Fourteenth Amendments to the United States Constitution;

b)  preliminarily and permanently enjoining the Secretary of State, her respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Ballot Order Statute under the authority granted to this Court by Federal Rule of Civil Procedure 65(a) and 28 U.S.C. § 2202;

c)  awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d)  granting such other and further relief as the Court deems just and proper, including requiring the Secretary of State to use a ballot order system that gives similarly situated major-party candidates an equal opportunity to be listed first on the ballot.

Dated this 1st day of November 2019.

Respectfully submitted,

*/s/ Skyler M. Howton*
Skyler M. Howton, TX# 24077907
PERKINS COIE LLP

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 17**

500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
showton@perkinscoie.com

Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jgeise@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

Gillian Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA  90067-1721
Telephone: (310) 788-3245
Facsimile: (310) 843-1244
gkuhlmann@perkinscoie.com

*Counsel for the Plaintiffs*
  **Motions for Pro Hac Vice Forthcoming*

Chad W. Dunn, TX# 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Plaintiff Texas Democratic Party*

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18**