**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DEMOCRATIC NATIONAL COMMITTEE d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC, | Civil Action No. 1:19-cv-01071-LY |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| RUTH HUGHS, in her official capacity as the Texas Secretary of State, | |
| Defendant. | |

**<u>PLAINTIFFS' OPPOSED APPLICATION FOR A PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

**PAGE**

**I.   INTRODUCTION** ................................................................................................ 1

**II.   BACKGROUND** ................................................................................................ 2

   A.   The Ballot Order Statute will require that all Republican candidates be listed first on  all ballots distributed in Texas's 2020 general election. ........................................................ 2

   B.   It is well-accepted and has now been empirically affirmed that the first-listed  candidate on a ballot enjoys an electoral advantage simply due to ballot order. ................................ 2

   C.   As in virtually every other jurisdiction where the question has been studied, there is a proven primacy effect that gives the first-listed candidate an advantage in Texas's elections. ............................................................................................................... 6

   D.   In recent years, Texas has had a significant number of elections decided within the margins of advantage conferred on Republican candidates by the Ballot Order Statute. ... 7

**III.   ARGUMENT** ................................................................................................ 8

   A.   Plaintiffs are highly likely to succeed on the merits. ........................................................ 8

     1.   Legal Standard ................................................................................................ 9

     2.   The Ballot Order Statute unconstitutionally burdens Plaintiffs' fundamental rights. ...... 9

     3.   The burdens the Ballot Order Statute imposes cannot be justified by any legitimate state interest. ........................................................................................................ 14

   B.   Plaintiffs will suffer irreparable injury absent an injunction. ........................................... 16

   C.   The balance of the equities and the public interest favor an injunction ............................ 18

**IV.  CONCLUSION** ................................................................................................ 19

i

## TABLE OF AUTHORITIES

CASES                                                                                                    PAGE

*Akins v. Secretary of State*,
   904 A.2d 702 (N.H. 2006) ................................................................................................12

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
   No. 03-CV-502, 2003 WL 21524820 (N.D.N.Y. July 7, 2003) ............................................17

*Burdick v. Takushi*,
   504 U.S. 428 (1992).............................................................................................................9

*Byrum v. Landreth*,
   566 F.3d 442 (5th Cir. 2009) ...............................................................................................8

*Crawford v. Marion Cty. Election Bd.*,
   553 U.S. 181 (2008)......................................................................................................9, 15

*Cunningham v. Adams*,
   808 F.2d 815 (11th Cir. 1987) ...........................................................................................16

*Day v. Robinwood W. Cmty. Improvement Dist.*,
   No. 4:08CV01888 ERW, 2009 WL 1161655 (E.D. Mo. Apr. 28, 2009) ..............................17

*Fla. Democratic Party v. Detzner*,
   No. 4:16-cv-607, 2016 WL 6090943 (N.D. Fla. Oct. 16, 2016)...........................................16

*Gould v. Grubb*,
   14 Cal. 3d 661 (1975) ........................................................................................... passim

*Graves v. McElderry*,
   946 F. Supp. 1569 (W.D. Okla. 1996) .......................................................................... passim

*Hicks v. Miranda*,
   422 U.S. 332 (1975)...........................................................................................................11

*Holtzman v. Power*,
   62 Misc. 2d 1020 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (1970)..............4, 10, 14, 15

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
   88 F.3d 274 (5th Cir. 1996) ...............................................................................................17

*Jacobson v. Lee*,
   No. 4:18-cv-262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov. 15, 2019).................. passim

*League of Women Voters of N.C. v. North Carolina*,
   769 F.3d 224 (4th Cir. 2014) ...................................................................................16, 17, 18

*Mann v. Powell*,
   314 F. Supp. 677 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970).................................2, 5, 10, 11

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE

*Mann v. Powell*,
    333 F. Supp. 1261 (N.D. Ill. 1969) ...........................................................11, 16, 17

*McLain v. Meier*,
    637 F.2d 1159 (8th Cir. 1980) ...................................................................... passim

*Netsch v. Lewis*,
    344 F. Supp. 1280 (N.D. Ill. 1972) ..........................................................10, 16, 17

*Norman v. Reed*,
    502 U.S. 279 (1992).......................................................................................9

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2010) ...................................................................16, 17

*Patino v. City of Pasadena*,
    229 F. Supp. 3d 582 (S.D. Tex. 2017) ...........................................................17

*Reynolds v. Sims*,
    377 U.S. 533 (1964)......................................................................................12

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
    411 U.S. 1 (1973)..........................................................................................12

*Sangmeister v. Woodard*,
    565 F.2d 460 (7th Cir. 1977) ...............................................................4, 10, 14

*Texas Indep. Party v. Kirk*,
    84 F.3d 178 (5th Cir. 1996) ............................................................................9

STATUTES

Tex. Elec. Code § 52.091...........................................................................................2

Tex. Elec. Code § 52.091(b) ...............................................................................1, 2, 3

Tex. Elec. Code § 172.082(a) ...............................................................................6, 15

## I.   INTRODUCTION

This case concerns the constitutionality of Tex. Elec. Code § 52.091(b) (the "Ballot Order Statute"), which puts a thumb on the scale in favor of a single political party in all partisan contests. Plaintiffs seek a preliminary injunction to level the playing field in advance of the 2020 general election. The arbitrary advantage conveyed by the Ballot Order Statute is the result of a phenomenon known as "position bias" or the "primacy effect," whereby the candidate listed first receives an electoral advantage solely due to ballot position. In order to diffuse the impact of this long-suspected, and now proven, effect, many states rotate the order of candidates in elections. In fact, it is for this very reason that Texas itself utilizes a lottery system to determine candidate name order in primary elections. But in general elections, when the candidates from different political parties face off against each other for the opportunity to represent the people of Texas, the Ballot Order Statute requires that the candidate who shares her political party with the last-elected Governor is always listed first in every partisan race up and down the ticket. The result is a state-mandated, systemic, and entirely arbitrary advantage that has inured to Republican Party candidates in election after election. The losers are not only the Democratic Party and their candidates who must run against both their opponent *and* a significant disadvantage built into the ballot itself, but also Texas voters whose voting power is directly diluted by the Ballot Order Statute's operation. There is a long line of precedent invalidating similar laws, including, most recently, a decision issued just this past Friday by a federal district court in Florida, permanently enjoining Florida's ballot order law, which like Texas's, favored the last-elected governor's party in all partisan general elections. *See generally Jacobson v. Lee*, No. 4:18-cv-262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov. 15, 2019). There is no reason that the Court should come to any different conclusion here. In sum, because all of the relevant factors strongly favor Plaintiffs' application, the Court should issue an order enjoining the Ballot Order Statute in advance of the

2020 general election and require the State to use a ballot ordering system that gives similarly-situated candidates an equal opportunity to be listed first on the ballot. This is exactly the remedy approved of by the U.S. Supreme Court when it summarily affirmed the lower court's decision in *Mann v. Powell*, 314 F. Supp. 677 (N.D. Ill. 1969) ("*Mann I*"), *aff'd*, 398 U.S. 955 (1970)—the only case in which the Supreme Court has considered a challenge to a ballot order statute that, like this one, systemically favored a certain type of candidate over others similarly situated.

## II.     BACKGROUND

**A.     The Ballot Order Statute will require that all Republican candidates be listed first on all ballots distributed in Texas's 2020 general election.**

The Ballot Order Statute mandates that candidates of the political party that won the last election for Governor be listed first on the ballot in every partisan general election that follows. *See* Tex. Elec. Code § 52.091(B).[1] Thus, because Republican Greg Abbott was elected Governor in 2018, all Republican candidates will be listed first on every general election ballot in Texas until at least 2023. No candidate associated with any other party—including the Democratic Party, which is similarly situated in every meaningful way—has any opportunity to be listed first.

**B.     It is well-accepted and has now been empirically affirmed that the first-listed candidate on a ballot enjoys an electoral advantage simply due to ballot order.**

The Ballot Order Statute's approach to ordering the names of major party candidates on the ballot is meaningful and notable for several reasons. Persons involved in politics have long suspected—and many have intuitively concluded—that ballot order matters. Thus, in jurisdictions (such as Texas, albeit only in its primary elections) that choose ballot order using some type of a

---

[1] The provision that Plaintiffs challenge mandates that candidates from parties that had a candidate in the last gubernatorial election are ordered based on the results of that specific race. Plaintiffs do not challenge the Ballot Order Statute's tiered approach to ballot order, placing candidates from parties that previously fielded a gubernatorial candidate (the first tier) before those from parties that did not (the second tier), nor do Plaintiffs challenge the ordering of candidates in the second tier by a drawing conducted by the Secretary. *See* Tex. Elec. Code § 52.091.

lottery or drawing system, when a candidate draws the first position it is reason for celebration. Ex. A, Decl. of Lucinda Guinn ("Guinn Decl."), ¶ 4.  This is because "it is widely believed that the first-listed candidate is more likely to win"; indeed, in a close election, political veterans have long believed that ballot position could very well be the factor that decides the race. *See id.*; *see also* Ex. B, Decl. of Tommy Glen Maxey ("Maxey Decl."), ¶ 9 (describing personal experience in Texas Democratic primary election witnessing the impact of the primacy effect).[2]

In recent years, this particular piece of political mythology has become increasingly indisputable as a matter of fact. Researchers have long understood that individuals manifest bias toward selecting the first in a set of visually-presented options. Ex. C, Expert Rpt. of Dr. Jonathan Rodden ("Rodden Rpt.") at 8. This phenomenon is referred to in the literature by many names, including the "primacy effect" and "position bias." *Id.* at 9. There was a time when there was arguably legitimate debate as to whether this phenomenon would carry over into the decisions made in the voting booth, but the recent (and extensive) studies on this question are in agreement: the order in which candidates are listed on the ballot has an impact on their electoral success in virtually every jurisdiction in which the question has been studied. *See Jacobson*, 2019 WL 6044035, at *12 (summarizing how 84% of 1,086 unique tests across 70 years of social science revealed primacy effects in elections); Rodden Rpt. at 9 (noting that more recent studies in Ohio, North Dakota, New Hampshire, Texas, and California have confirmed bias in favor of first-listed candidates); *id.* at 17-22 (describing how North Carolina Republicans changed a law similar to the Ballot Order Statute after losing the governorship, and after the effect of that change demonstrates effects of position bias); *see also* Ex. D, Expert Rpt. of Dr. Jon A. Krosnick ("Krosnick Rpt.") at

---

[2] All Exhibits cited are to the Declaration of Elisabeth C. Frost in Support of Plaintiffs' Opposed Application for Preliminary Injunction ("Frost Decl.").

9-19 (detailing studies of position bias in elections in United States); Ex. E, Expert Rpt. of Dr. Darren Grant ("Grant Rpt.") at 5-6 (describing modern ballot order studies since 1998 finding position bias that was statistically significant and favorable to first-listed candidate).[3] The effect has been observed in other countries, too. *See* Krosnick Rpt. at 19-22; *see also* Grant Rpt. at 6 n.9. In fact, the only modern study to have *not* found a statistically significant ballot order effect appears to be a study of elections in Afghanistan. *See Jacobson*, 2019 WL 6044035, at *11 n.15; *see also* Krosnick Rpt. at 22.

Even without the advantage of the robust body of empirical research that now overwhelmingly supports this proposition, there is a long history of cases finding that the primacy effect has a real and meaningful impact on elections. *See*, *e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980) (affirming "finding of ballot advantage in the first position"); *Sangmeister v. Woodard*, 565 F.2d 460, 465 (7th Cir. 1977) (finding district court's conclusion "top placement on the ballot would be an advantage . . . is supported by substantial evidence"); *Graves v. McElderry*, 946 F. Supp. 1569, 1576 (W.D. Okla. 1996) (finding position bias in Oklahoma's elections); *Gould v. Grubb*, 14 Cal. 3d 661, 664 (1975) ("[T]he superior court's finding that placement in a top ballot position affords a candidate a substantial advantage over lower-placed candidates is supported by abundant expert testimony introduced at trial and is consistent with parallel findings rendered in similar litigation throughout the country."); *Holtzman v. Power*, 62 Misc. 2d 1020, 1023 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (1970) ("It was found herein

---

[3] Among the recent research to demonstrate the reasons for the advantages that accrue from being listed first on the ballot are studies demonstrating that the candidate listed first is least harmed by proximity errors, which occur when voters fail to accurately translate their voting intentions and mistakenly select the choice before or after their intentioned choice. *Jacobson*, 2019 WL 6044035, at *16-17 (discussing evidence that "voters intending to vote for the first-listed candidate make fewer 'proximity errors' than do voters intending to vote for candidates listed in lower positions within an office block").

as a matter of fact that there is a distinct advantage to the candidate whose name appears first on a ballot. Aside from the factual determination, such a belief appears to be so widespread and so universally accepted as to make it almost a matter of public knowledge."). And in the only case in which the U.S. Supreme Court has considered a challenge to a state practice that similarly gave certain types of candidates the advantage of being placed first on the ballot, the Court summarily affirmed the lower court's preliminary injunction requiring the State to use a ballot order system that gave candidates an equal opportunity to be listed first on the ballot. *See Mann I*, 398 U.S. at 955.

The most recent in this parade of precedent came in the form of a permanent injunction issued by a federal district court just this past Friday, in which the court invalidated a ballot order law that, just like Texas's, required that in all partisan general elections, the candidate who shares their party affiliation with the last-elected Governor must be listed first. *Jacobson*, 2019 WL 6044035, at *1-2. The difference, the court noted, between it and the raft of cases listed above was that *Jacobson* represented "the first time" that a court had "a fully developed evidentiary record upon which to evaluate a ballot order claim." *Id*. at *11. The defendants raised a "hodgepodge" of arguments in opposition, but most, the court noted, were designed to convince the court to avoid reaching the merits. *Id*. at *2. When those arguments were disposed of, the court observed that, "the issues presented in this case are not novel"; in fact, "[i]n a jurisprudential sense, they are not even particularly challenging." *Id*. at *4. In the end, the court easily found that the Constitution could not sustain the ballot order statute at issue, through which the state "put its thumb on the scale and award[ed] an electoral advantage to the party in power." *Id*. at *1; *see also id*. at *23.

There is an additional feature of Texas's law that was not present in the Florida case that is also worth noting. Specifically, other provisions in Texas law have long acknowledged the

advantage conferred on the first-listed candidate as a result of ballot order. It is for this very reason that Texas has long required that, in primary elections, ballot order must be decided based on a county-by-county lottery system. *See* Tex. Elec. Code § 172.082(a). *See* Grant Rpt. at 6-7; *see also* Maxey Decl., ¶¶ 8, 10. That system was put into place expressly "so [that] no preference shall be given to any candidate." Section 113, Terrell Law Acts, 29th Leg., 1905, 1st C.S. at 521, et seq. In a recent presentation explaining the primary process to candidates, the Texas Republican Party noted specifically that "[s]cientific studies have shown candidates listed first tend to receive more votes." Ex. F, *Candidate Certification & Ballot Drawing 2016 Primary*.

**C.     As in virtually every other jurisdiction where the question has been studied, there is a proven primacy effect that gives the first-listed candidate an advantage in Texas's elections.**

Dr. Darren Grant, a professor of economics at Sam Houston State University, conducted a careful study of Texas's 2014 primary and primary runoff elections, and concluded both that there is a ballot order effect in Texas's elections, and that it is statistically (and electorally) significant. Grant Rpt. at 13. Specifically, he determined that the advantage a first-listed candidate received owing solely to being placed first on the ballot in Texas's primary elections was between 1 percentage point (observed in the highest-profile elections with the most well-known candidates) and as much as 8 percentage points (in the lowest-profile elections), with a median effect of 4 percentage points. Grant Rpt. at 8.

Dr. Jonathan Rodden, a professor of political science at Stanford University who was qualified as an expert on the issues of position bias in *Jacobson v. Lee*, confirms that, in Texas general elections, too, ballot order matters. Rodden Rpt. at 22; *see also Jacobson*, 2019 WL 6044035, at *5 (finding Dr. Rodden's methods and analysis "reasonable, reliable, and credible"). Specifically, Dr. Rodden finds that, on average, Republicans have enjoyed a 3.7 percentage point advantage in vote share as a result of being listed first on Texas general election ballots under the

Ballot Order Statute. *Id.* at 3. The advantage is even higher in down-ballot statewide races, where it averages 4.6 percentage points. *Id.* And the advantage persists even in high profile top-of-the-ballot races for U.S. Senate, Governor, and President, in which Republican candidates enjoyed an average advantage of 2.9 percentage points, simply as a result of their position on the ballot. *Id.* at 17.

**D.     In recent years, Texas has had a significant number of elections decided within the margins of advantage conferred on Republican candidates by the Ballot Order Statute.**

Close elections are becoming increasingly common in Texas. *See* Ex. G, Expert Rpt. of Drs. James Henson and Joshua Blank ("Henson Rpt.") at 2-3 (concluding that there is "increased competition as the composition of the electorate includes more Democratic voters"). In 2018 alone, 18 races across Texas were won by a margin within five percentage points.[4] Several were decided by less than a single point, including the election for the 23rd Congressional District ("CD-23"), which was decided by a mere 0.44 percentage point difference, and several State House Districts, including State District 138 ("SD-138") (0.1 points), SD-108 (0.28 points), and SD-66 (0.58 percentage points). Other notably close races included the race for U.S. Senator (2.6 points), CD-21 (2.61 points), CD-31 (2.91 points), CD-24 (3.07 points), SD-112 (2.08 points), SD-67 (2.30 points), SD-92 (2.39 points), and SD-8 (2.36 points). *See* Maxey Decl., ¶ 17; *see also* Guinn Decl., ¶¶ 10-11; Ex. H, Decl. of Justin Barasky ("Barasky Decl."), ¶ 9; Ex. I, Decl. of Rachana Desai Martin ("Martin Decl."), ¶¶ 12-13.

There is no reason to expect that 2020 will be any different. To the contrary, Texas voters will cast ballots in not only the presidential election, but another race for U.S. Senate, a full 36

---

[4] All election results cited in this application are publicly available at the Election Results Archive page of the Texas Secretary of State's website, https://www.sos.state.tx.us/elections/historical/elections-results-archive.shtml.

seats in the U.S. House of Representatives, every seat in the Texas House of Representatives, and half of the seats in the Texas Senate, not to mention countless other races up and down the ticket. *See* Maxey Decl., ¶¶ 18-19; *see also* Guinn Decl., ¶ 12; Barasky Decl., ¶¶ 11-13; Martin Decl., ¶¶ 14-15, 18. Many of these races are already predicted to be competitive, and political party committees have started marshaling resources to support their party's candidates. *See* Maxey Decl., ¶¶ 18-19; *see also* Guinn Decl., ¶ 12; Barasky Decl., ¶¶ 11-13; Martin Decl., ¶¶ 14-15, 18. Yet, under the Ballot Order Statute, the Republican candidate will enter all of those races with a significant head start over their Democratic opponent, for no other reason than a Republican won Texas's last gubernatorial race in 2018.

## III.   ARGUMENT

Plaintiffs are entitled to preliminary relief because: (1) they are highly likely to succeed on the merits; (2) there is a substantial threat of irreparable injury if a permanent injunction is not issued; (3) the harm outweighs any injury to the Secretary because of an injunction; and (4) an injunction is in the public interest. *See, e.g.*, *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009); *see also Jacobson*, 2019 WL 6044035, at *23 (listing same criteria for permanent injunction and finding all satisfied).

### A.   Plaintiffs are highly likely to succeed on the merits.

Plaintiffs are not just substantially but highly likely to prevail on their claims that the Ballot Order Statute is unconstitutional. As in *Jacobson*, on its face Texas's Ballot Order Statute treats similarly situated major political parties, their candidates, and the voters who support them differently, while also burdening the fundamental constitutional rights of these voters. The resulting harm to the Plaintiffs is irreparable and cannot be justified by any legitimate state interest.

1.      **Legal Standard**

When an election law's classification of candidates or burden on voting rights is challenged on constitutional grounds, courts apply the "*Anderson-Burdick*" standard. *See Jacobson*, 2019 WL 6044035, at \*22 (applying *Anderson-Burdick* to challenge to Florida ballot order statute functionally identical to Texas's Ballot Order Statute); *Graves*, 946 F. Supp. at 1578-79 (applying *Anderson-Burdick* to ballot order statute that favored Democrats and finding it unconstitutional); *see also Texas Indep. Party v. Kirk*, 84 F.3d 178, 182-83 (5th Cir. 1996). That standard requires the Court to "weigh the character and magnitude of the asserted injury to [voting rights] against the precise interests put forward by the State as justifications for the burden imposed by its rule," *Texas Indep. Party*, 84 F.3d at 182, "taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). It is a "flexible" sliding scale, where "the rigorousness of [the court's] inquiry depends upon the extent to which [the challenged law] burdens [voting rights]." *Id*. When a challenged law subjects voting rights to a "severe" restriction, it "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992). Less severe burdens remain subject to balancing: "[h]owever slight" the burden on voting rights "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd*., 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman*, 502 U.S. at 288–89).

2.      **The Ballot Order Statute unconstitutionally burdens Plaintiffs' fundamental rights.**

On its face, the Ballot Order Statute treats the candidates of the favored party—i.e., that whose candidate received the most votes in the last gubernatorial election—differently from the candidates of all other political parties, even those who affiliate with the similarly-situated major

political party that received the second highest vote for Governor. That differential treatment operates to the systemic and significant disadvantage of the latter. Courts that have considered challenges to similar schemes have easily and consistently found them unconstitutional.

This was the case, most recently, in Friday's decision in *Jacobson*, where the Court invalidated a statute that is identical to Texas's in all meaningful ways. *Jacobson*, 2019 WL 6044035, at *23. It was true, as well, in *McLain v. Meier*, when the Eighth Circuit invalidated a statute that reserved the first position on the ballot for the party that received the most votes in the last congressional election. 637 F.2d at 1166. It was also the case in *Graves v. McElderry*, where a federal district court applied *Anderson-Burdick* to strike down an Oklahoma law that mandated that Democrats be listed first in each race on every general election ballot. 946 F. Supp. at 1569; *see also id*. at 1580 (finding "no legitimate State interest . . . can possibly be served by the selection of one particular party's candidates for priority position on every General Election ballot") (citing *Rutan v. Republican Party of Ill*., 497 U.S. 62, 69–70 (1990)).

None of these cases are outliers. They are consistent with every decision that has analyzed analogous challenges. *See, e.g.*, *Sangmeister*, 565 F.2d at 468 ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party.") (citation omitted); *Netsch v. Lewis*, 344 F. Supp. 1280 (N.D. Ill. 1972) (holding statute prescribing ballot order by past electoral success violated equal protection); *Gould*, 14 Cal. 3d at 664 (explaining how "any procedure which allocates such advantages positions to a particular class of candidates inevitably discriminates against voters supporting all other candidates"); *Holtzman*, 62 Misc. 2d at 1024-25 (holding system requiring incumbent at top of ballot unconstitutional).

And all of these cases are consistent with *Mann v. Powell*, the only opportunity that the U.S. Supreme Court has had to consider the constitutionality of a ballot ordering system that gave

one category of candidates a systemic advantage. In those proceedings, the district court issued a preliminary injunction suspending an Illinois practice that ordered candidates on the ballot based on the order in which their nominating petition were received and, when two nominating petitions were received simultaneously, favored incumbents. *Mann I*, 314 F. Supp. at 679. The district court found the systemic favoring of incumbents—even when only to break a tie—unconstitutional, and issued a preliminary injunction requiring that the ballot order in the upcoming election be determined by "nondiscriminatory means by which each" similarly-situated candidate (i.e., those whose petitions were received at the same time) must "have an equal opportunity to be placed first on the ballot." *Id*.[5] The Supreme Court summarily affirmed that ruling, which remains binding precedent upon this court. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (holding "that the lower courts are bound by summary decisions by this Court until such time as this Court informs them that they are not") (quotation marks omitted); *see also Jacobson*, 2019 WL 6044035, at *3. *Mann*'s reasoning applies equally here: like the Illinois law, Texas's ballot order statute arbitrarily grants top ballot placement, and thus electoral advantage, to one class of candidates, burdening the candidates of another similarly-situated political party.

The heavy weight of precedent recognizes not only the advantage the primacy effects bestows on first-listed candidates, but also the heavy burden on the rights of voters whose preferred candidates appear later. For instance, in *Gould v. Grubb*, the court relied on U.S. Supreme Court precedent to find that a statute that placed the incumbent first on the ballot operated to "substantially" and unconstitutionally "dilute[] the weight of votes of those supporting nonincumbent candidates." 14 Cal.3d at 672. In *Graves*, the court similarly found that, "the

---

[5] The lower court would later issue a permanent injunction. *Mann v. Powell*, 333 F. Supp. 1261, 1267 (N.D. Ill. 1969) ("*Mann II*"); *see also id*. (rejecting argument that "favoring certain candidates on the basis of 'incumbency' or 'seniority' is constitutionally permissible").

existence of position bias arising from ballot configuration" infringes upon voters' constitutional rights "by negating the weight or impact" of their votes. 946 F. Supp. at 1579. And, in *McLain*, the Eighth Circuit found that a system that placed candidates of the party that received the most votes in the last North Dakota congressional election first unconstitutionally "burden[ed] the fundamental right to vote possessed by supporters of the last-listed candidates." 637 F.2d at 1167. These authorities are consistent with long-standing Supreme Court authority recognizing that voters have the right, "implicit in our constitutional system, to participate in state elections on an equal basis with other qualified voters." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 n.78 (1973). "[A]n individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of [other] citizens." *Reynolds v. Sims*, 377 U.S. 533, 568 (1964). The practical effect of the Ballot Order Statute directly infringes upon that right. Because more Democratic voters must turn out and support their candidates to counteract the state-mandated advantage that the Ballot Order Statute confers on Republicans, the power of voters supporting Republican candidates is enhanced, such that one Republican voter has effectively more voting power than one Democratic voter. *See* Decl. of Rachel Miller ("Miller Decl."), ¶¶ 6-7; Martin Decl., ¶ 20; Maxey Decl., ¶ 20.

Given the Ballot Order Statute's persistent and blanket favoritism of candidates who belong to the Governor's party over all others, including those similarly situated, the Court could and should find it unconstitutional even if Texas had never had a close election that had come within the margin of advantage conferred on first-listed candidates under the Statute. *See McLain*, 637 F.2d at 1159 (holding ballot order system unconstitutional where plaintiff candidate received only 1.5% of the vote); *Graves*, 946 F. Supp. at 1579–81 (finding ballot order system unconstitutional, based on "some measure of position bias exists in Oklahoma's General

Election"); *Akins v. Secretary of State*, 904 A.2d 702, 705 (N.H. 2006) (striking down statute on finding "that the primacy effect influences, even to a small degree, the outcome of New Hampshire elections"); *Gould*, 14 Cal. 3d at 668 (finding "significant," but unquantified, advantage accrued to candidates even in high-visibility elections); *see also Jacobson*, 2019 WL 6044035, at *18. But it is all the more troubling because, as Texas sees more and increasingly close elections, the dangers posed by the Ballot Order Statute become all the more severe.  *See Jacobson*, 2019 WL 6044035, at *18 (noting that, given the closeness of Florida elections, "the practical burden" of Florida's ballot order statute is "severe indeed").

Indeed, Texas *has* had a significant number of elections decided well within the margin of advantage that is conferred by the Ballot Order Statute—in fact, this was true several times over just looking at elections data from 2018 alone. *See supra* at II.D. Looking forward, multiple competitive elections are projected for Texas in 2020, including in the Texas House of Representatives, where the Democrats may have an opportunity, for the first time in 17 years to take control of that chamber. *See* Maxey Decl., ¶ 18; *see also* Martin Decl., ¶ 16. Those chances will be artificially depressed, however, if the 2020 election is conducted on the unlevel playing field that the Ballot Order Statute mandates.

Demographic and partisan data indicate that the number of close elections in 2018 are likely to become the rule rather than the exception in Texas. *See* Henson Rpt. at 2, 16. The analysis of Drs. James Henson and Joshua Blank, Directors of the Texas Politics Project at the University of Austin, demonstrates that recent rapid population growth in Texas has been distinguished by the steady increase in the non-white share of the population, *id.* at 4-7, approximately 60% of whom identify with the Democratic Party. *Id.* at 8. Taken together, these trends lead Drs. Henson and Blank to conclude that "[a]s the relative shares of non-Hispanic whites in the electorate has

decreased while that of Hispanics has increased due to ongoing demographic change, we find signs of increased competition as the composition of the electorate includes more Democratic voters." *Id.* at 16. The Ballot Order Statute, however, disadvantages those voters from the start.

For all these reasons, Plaintiffs are highly likely to be able to prove that the Ballot Order Statute significantly injures their fundamental rights. Accordingly, under *Anderson-Burdick*, the Statute is subject to heightened scrutiny and may only be maintained if the Secretary can demonstrate legitimate and relevant interests justify the imposition of the burden. *Jacobson*, 2019 WL 6044035, at *22 (subjecting Florida's ballot ordering law to heightened scrutiny under *Anderson-Burdick*). She cannot do so.

### 3. The burdens the Ballot Order Statute imposes cannot be justified by any legitimate state interest.

The burdens imposed on Plaintiffs' fundamental rights are substantial, requiring that the Court apply heightened scrutiny to their claims. *See id.*; *see also Gould*, 14 Cal. 3d at 675. But even if the Ballot Order Statute were subject to a less stringent level of scrutiny, it would still not survive challenge. *See Jacobson*, 2019 WL 6044035, at *22 ("Florida's current ballot order scheme cannot satisfy even the extremely deferential rational-basis standard under the *Anderson/Burdick* framework."); *Graves*, 946 F. Supp. at 1580 (finding no legitimate state interest in always placing one major political party first on the ballot); *Holtzman*, 62 Misc. 2d at 1024 (holding no rational basis for "such favoritism to a candidate merely on the basis of his having been successful at a prior election"); *Sangmeister*, 565 F.2d at 467 (holding ballot order system did not further "any substantial state interest").

The Ballot Order Statute is, in essence, a political patronage statute. *See Jacobson*, 2019 WL 6044035, at *23 ("[I]t is difficult to imagine what other purpose [ballot order statute] could possibly serve than as a thumb on the scale in favor of the party in power."). But as courts before

have correctly found, "[p]olitical patronage is not a legitimate state interest which may be served by a state's decision to classify or discriminate in the manner in which election ballots are configured as to the position of candidates on the ballot," *Graves*, 946 F. Supp. at 1580-81; *see also McLain*, 637 F.2d at 1167 (finding state's "favoritism" of the political party that received the most votes in the last congressional election failed rational basis review); *Holtzman*, 62 Misc. 2d at 1024 (finding no rational basis for ordering statute "affording . . . favoritism to a candidate merely on the basis of his having been successful at a prior election").

*Anderson-Burdick* requires that in balancing the burdens against the state's interest in imposing those burdens, the Court must analyze the *specific* justifications given by the State in the particular case before it. *See Crawford*, 553 U.S. at 190 ("Rather than applying any 'litmus test' that would neatly separate valid from invalid restrictions . . . a court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the 'hard judgment' that our adversary system demands."); *Jacobson*, 2019 WL 6044035, at *19 (noting that state's identified interests for its ballot ordering law were "not quite on point with the *Anderson/Burdick* standard" because they were not interests in the specific law at issue). It remains to be seen how the Secretary might attempt to justify the Ballot Order Statute's favoritism of the last-elected governor's party, but in other cases, defendants have claimed that similar statutes were important to avoid voter confusion or minimize administrative burdens. Courts have repeatedly rejected such arguments as constitutionally inadequate. *See, e.g.*, *McLain*, 637 F.2d at 1167 (rejecting voter confusion/convenience justification for ballot ordering decisions); *Jacobson*, 2019 WL 6044035, at *20-21 (rejecting voter confusion and administrative burden justifications for ballot ordering decision); *Graves*, 946 F. Supp. at 1580 (same). But they would be particularly

ill-founded here, where Texas law already recognizes and addresses the burdens imposed by position bias in its primary elections. *See* Tex. Elec. Code § 172.082(a).

If a fixed ballot order is inappropriate at the primary level, because it would render those elections unfair, it cannot be that those same concerns do not persist into the general election. If anything, those concerns are all the more momentous when the candidates of different political parties face off against each other; the current system serves only to raise concerns about the integrity of Texas's elections process. *See* Miller Decl., ¶ 8; *see also* Maxey Decl., ¶ 20; *Jacobson*, 2019 WL 6044035, at \*21 (noting that "voter confidence in the integrity of Florida's elections process would actually be undermined by Florida's present ballot order scheme").

In sum, because the Ballot Order Statute imposes significant burdens without legitimate state interests, Plaintiffs are substantially likely to succeed on their claims.

**B.      Plaintiffs will suffer irreparable injury absent an injunction.**

The heavy thumb that the Ballot Order Statute puts on the scale in every single partisan general election in favor of the last-elected Governor's party causes substantial and irreparable injury to Plaintiffs. The Democratic National Committee ("DNC"), DSCC, DCCC, and Texas Democratic Party all intend to commit significant resources to support the election of Democrats up and down the ticket in Texas in the 2020 election. *See* Barasky Decl., ¶¶ 8-9, 13; Martin Decl., ¶¶ 10-11, 18-19; Maxey Decl., ¶ 19. But unless the Ballot Order Statute is enjoined, it will severely hamper those efforts. *See* Martin Decl., ¶¶ 18-19; *see also* Barasky Decl., ¶ 13; Guinn Decl., ¶ 15; Maxey Decl., ¶¶ 19-20. Once the election has come and gone, those serious injuries to the Plaintiffs cannot be "undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987); *see also League of Women Voters of N.C. v. North Carolina* ("*The League*"), 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2010) ("*OFA*") ;

*Fla. Democratic Party v. Detzner*, No. 4:16-cv-607, 2016 WL 6090943, at *8 (N.D. Fla. Oct. 16, 2016); *Netsch*, 344 F. Supp. at 1280–81; *Mann II*, 333 F. Supp. at 1267.

In addition, the voter members of the DNC and Texas Democratic Party, as well as Ms. Miller, will also suffer irreparable harm through the systemic dilution of their voting power absent an injunction. Simply put, the Ballot Order Statute makes their votes count less and effectively gives Republican voters more voting power, another injury which no relief after the election can adequately remedy. Miller Decl., ¶¶ 6-7; Maxey Decl., ¶ 20; Martin Decl., ¶ 20. This is in sharp contrast to the Ballot Order Statute's impact on the voting power of Republican voters, which it substantially enhances, such that one Republican voter has effectively more voting power than one Democratic voter. Because these harms—which strike at the very heart of the functioning of a fair and democratic society—cannot be remedied post-election, they are also irreparable. *See Patino v. City of Pasadena*, 229 F. Supp. 3d 582, 590 (S.D. Tex. 2017) (finding irreparable harm and noting, in a vote dilution case, that "holding an election under the dilutive map undermines the integrity of the democratic system"); *Netsch*, 344 F. Supp. at 1280–81 (recognizing "[t]he constitutional rights of the plaintiffs, and all persons similarly situated, will be irreparably damaged unless the temporary order sought herein is granted" prohibiting "granting priority to candidates by reason of incumbency and seniority"); *Mann II*, 333 F. Supp. at 1267 (permanently enjoining ballot order system after recognizing "the difficulty of fashioning relief after ballots have been certified"); *Day v. Robinwood W. Cmty. Improvement Dist.*, No. 4:08CV01888 ERW, 2009 WL 1161655, at *3 (E.D. Mo. Apr. 28, 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, No. 03-CV-502 (NAM/DRH), 2003 WL 21524820, at *3 (N.D.N.Y. July 7, 2003); *see also The League*, 769 F.3d at 247 (finding harm irreparable because "once the election occurs, there can be no do-over and no redress"); *OFA*, 697 F.3d at 436.

**C.**     **The balance of the equities and the public interest favor an injunction.**

The public interest and the balance of the equities also weigh heavily in Plaintiffs' favor. First, as a general matter, a preliminary injunction preventing the enforcement of an unconstitutional law serves the public interest. *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996). Second, in weighing the equities, on one side of the scale are the significant burdens imposed on Plaintiffs, who must compete and vote on an uneven playing field under a system that delegitimizes the very premise of representational government, while on the other side is the State, which, if an injunction is issued, will face minimal administrative burdens in ordering names on a ballot using a more equitable system. Indeed, Texas already administers a fairer system in primary elections. *See* Guinn Decl., ¶ 17; *see also* Maxey Decl., ¶ 10; Barasky Decl., ¶ 15; Martin Decl., ¶ 22.

The public interest is particularly served by issuing an injunction in a case where voting rights are at issue because "[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" *The League*, 769 F.3d at 247 (citations omitted). If the Ballot Order Statute is not enjoined, it will directly interfere with the fundamental right to vote of thousands of Texas voters, including Plaintiffs, as well as the elections of the Democratic candidates running in 2020 who are members of and supported by the Plaintiffs. *See* Maxey Decl., ¶¶ 18-19; *see also* Guinn Decl., ¶ 12; Barasky Decl., ¶¶ 11-13; Martin Decl., ¶¶ 14-15, 18. Further, this is not an elections law that operates in some way to protect the integrity of Texas's elections. To the contrary, the continued implementation of the law, which systemically advantages one major political party over another, in races up and down the ticket and across the state, serves to damage the integrity of Texas's elections. *See* Miller Decl., ¶ 8; Maxey Decl., ¶ 20; *see also Jacobson*, 2019 WL 6044035, at *21. For all of these reasons, the public interest, too, strongly favors an injunction.

## IV.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction: (1) enjoining the Ballot Order Statute in advance of the 2020 general election, and (2) requiring the State to use a ballot ordering system that gives similarly-situated candidates an equal opportunity to be listed first on the ballot.

Dated this 18th day of November 2019.

Respectfully submitted,

*/s/ Skyler M. Howton*
Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
showton@perkinscoie.com

Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

Gillian Kuhlmann*
PERKINS COIE LLP

1888 Century Park East, Suite 1700
Los Angeles, CA  90067-1721
Telephone: (310) 788-3245
Facsimile: (310) 843-1244
gkuhlmann@perkinscoie.com

*Counsel for the Plaintiffs*
*\*Admitted Pro Hac Vice*

Chad W. Dunn, TX# 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Plaintiff Texas Democratic Party*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Skyler M. Howton*                              
Skyler M. Howton