# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>Plaintiffs,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>Defendant. | Civil Action No. 1:19-cv-01071 |

**DECLARATION OF LUCINDA GUINN IN SUPPORT OF PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION**

I, Lucinda Guinn, according to 28 U.S.C. § 1746, hereby state:

1. My name is Lucinda Guinn. I am over 18 years of age, am competent to testify, and declare the following facts based on my own personal knowledge.

2. I am employed by DCCC, which is the national congressional campaign committee of the Democratic Party. DCCC's mission is electing Democratic candidates to the U.S. House of Representatives, including from Texas's 36 congressional districts. DCCC works to accomplish its mission by, among other things, making expenditures for and contributions to Democratic candidates for the U.S. House of Representatives and assisting state parties throughout the country, including in Texas. DCCC also supports and participates in what is commonly referred to as the "coordinated campaign," in which it works collaboratively with the state party committee and other national Democratic committees to elect Democrats within the state up and down the ticket. In a past recent election cycle, DCCC's expenditures in Texas exceeded six million dollars.

3. I have been working in or around campaign politics since 2002. I currently serve as the Executive Director of DCCC, a position that I have held since early September of this year. I

1

previously worked at DCCC during the 2008 and 2012 election cycles and I also recently served as the Vice President of Campaigns at EMILY's List, where I oversaw that group's efforts to elect pro-choice Democratic women to local, state, and federal office. In these positions, I worked on campaigns up and down the ballot, including multiple campaigns specifically in Texas, where I am from. My duties in these positions have required me to become knowledgeable about political strategy related to congressional elections generally and in Texas specifically.

4. In the time that I have been involved in politics, I have often heard (and had my own suspicions) that it is advantageous for a candidate to have the first position on the ballot. I specifically remember being involved in campaigns in states that use a lottery-type system to determine which candidate will be listed first on the ballot. Winning that lottery, and securing the first position, is reason to celebrate because of the commonly held assumption that candidates who are in the first ballot slot are easier for voters to find, and it is less likely that a voter will make an error and choose a candidate other than the one that they meant to vote for when their preferred candidate is in the first slot. Simply put, it is widely believed that the first-listed candidate is more likely to win, and particularly in a close election it is common knowledge in politics that being in the first position may very well make the difference in the election.

5. However, DCCC was not aware that the ballot order effect had been or could be proved by empirical evidence until 2018, when DCCC staff reviewed recent studies that detailed the effect in elections. I became aware shortly after starting as Executive Director of DCCC in September 2019.

6. Now that the research has established that ballot order has a substantial impact on elections, it is clear to me and DCCC that Texas's ballot order statute, Tex. Elec. Code § 52.091(b) (the "Ballot Order Statute"), puts DCCC and the Democratic candidates it supports for the U.S. House of Representatives from Texas (as well as the Texas voters who support them) at a severe disadvantage.

7. The Statute requires that, in every general election, all candidates who share their political association with that of the last-elected Governor must be listed first. Because a

Republican has held the governorship in Texas for the last 24 years, Democrats have been systemically and arbitrarily disadvantaged by the preferential treatment that the Ballot Order Statute has consistently given Republicans for decades.

8. Elections present constant and largely unique problems of resource management. In any given election cycle DCCC has a certain amount of money to spend to support Democrats in races across the country. Allocation decisions must be made quickly and their consequences are monumental. Because elections take place on a date certain, if a decision is made not to spend money to support a candidate in any given race, that is not a decision that can be done over at any point in the future. At the same time, because DCCC supports candidates all over the country, a decision to spend more money to support candidates in Texas, has ramifications for what DCCC can do to support candidates in congressional districts elsewhere.

9. The same is true of allocating resources to combat an elections law, like Texas's Ballot Order Statute, that sets an unlevel playing field from the outset. Although DCCC was aware of research establishing the significance of ballot order in elections in 2018, it had to make certain decisions about how to allocate its resources in advance of that election.

10. In 2018 several races for the U.S. House of Representatives were decided by extremely slim vote margins in Texas. For example, in the 23rd Congressional District, Republican Will Hurd held onto his seat over Democratic challenger Gina Ortiz Jones by obtaining a vote share that exceeded Ortiz Jones' by only 0.4 percentage points—a total of only 926 votes. This is the second time that Representative Hurd retained his congressional seat by an extremely slim margin. In 2016, he beat his Democratic challenger by a mere 1.3 percentage point advantage.

11. In 2018 Republicans won five other U.S. House races by margins within 5 percentage points from their Democratic opponents, including the 21st Congressional District (2.6), 31st Congressional District (2.9), 24th Congressional District (3.0), 10th Congressional District (4.3), and 22nd Congressional District (4.9).

12. In 2020, DCCC again intends to support Democrats running to represent Texans in the U.S. House of Representatives. Already, elections for several of Texas's congressional seats

3

are expected to be competitive, including the races to represent Congressional Districts 7, 10, 21, 22, 23, 24, 31, and 32. DCCC has identified a number of these races as competitive races, in which it intends to expend significant resources to support the Democratic candidates. In fact, DCCC already has staffers on the ground in Texas, and three physical offices in the State, all to support its efforts to elect Democrats in Texas in 2020.

13. Because of Texas's Ballot Order Statute, DCCC will have to commit even more resources to races in Texas than it would otherwise have to, to combat the ballot order effect that will give a systemic and arbitrary advantage to every single Republican candidate who runs for those seats. This is because the Ballot Order Statute mandates that every Republican candidate be listed first on every ballot that Texas voters will be presented in the general election, for no other reason than that a different Republican candidate (here, Greg Abbott) won the election for Texas Governor two years earlier.

14. None of the Democratic candidates that DCCC will support for election to the U.S. House of Representatives from Texas will have any opportunity to be listed first on even a single ballot that will be presented to Texas's millions of voters.

15. DCCC will have to allocate significant additional resources to the Texas races to combat (with the hopes of overcoming) the state-mandated advantage that the Ballot Order Statute confers on all of their Republican opponents. But if DCCC diverts those additional resources to Texas, it will have less resources to support other Democratic congressional candidates in races all across the country. No matter what choice DCCC makes, its mission is compromised and severely injured by Texas's Ballot Order Statute.

16. To address the injury to DCCC, and to ensure that Texas's elections are not skewed from the outset in favor of the last-elected governor's political party, Texas should be required to use a ballot order system that gives similarly situated major-party candidates an equal opportunity to be listed first on the ballot. The optimal way to do this would be to rotate the Republican and Democratic candidates' names so that each appears in the first position on an equal number of ballots. But, in any event, Texas should be required to use a system that makes it so that candidates

from similarly situated parties have an equal opportunity to be listed first on the ballot in any given election, and not a system—like the one imposed by the Ballot Order Statute—that puts a state-mandated thumb on the scale in favor of the last-elected governor's political party in every contest, based arbitrarily on the election results of a single race, perpetuating and entrenching the dominance of the advantaged political party, in entirely unrelated elections across the state and up and down the ticket, for years.

17. Texas appears to be aware of the impacts of ballot order, because in its primary elections, it employs a system that, at the very least, makes the assignment of the first position on the ballot in any given race random, by deciding it through a lottery. Although this lottery does not create a level playing field in every election, because it still means the ballot order is set county-wide so that the candidate lucky enough to "win" the ballot order lottery benefits exclusively from ballot order effects (at least across all the ballots in that county), it is still a substantially better system than the unrelenting preference that the Ballot Order Statute establishes for a single political party—for over two decades now, the Republican Party—in the general election.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on November 15, 2019.

DocuSigned by:
*Lucinda Guinn*
AE9B817C33C2465...

Lucinda Guinn