# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>Plaintiffs,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>Defendant. | Civil Action No. 1:19-cv-01071 |

### DECLARATION OF TOMMY GLEN MAXEY IN SUPPORT OF PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

I, Tommy Glen Maxey, according to 28 U.S.C. § 1746, hereby state:

1. My name is Tommy Glen Maxey. I am over 18 years of age, am competent to testify, and declare the following facts based on my own personal knowledge.

2. I am employed by the Texas Democratic Party ("TDP"). The TDP is the state committee of the Democratic Party. Its mission is to elect local, state, and national candidates of the Democratic Party to public office in and from Texas. The TDP works to accomplish its mission by, among other things, working closely with Democratic candidates, providing Get Out the Vote assistance, and actively supporting the development of programs benefiting Democratic Party candidates in Texas, including by running what is often referred to as the "coordinated campaign" to boost turnout for voters to support candidates from the top of the ticket, all the way down the Democratic ticket.

3. The TDP has a State Executive Committee of five party officers (Chair, Vice Chair, Vice Chair for Finance, Secretary, and Treasurer), 62 district representatives, 26 representatives of 13 constituency organizations (Texas House Caucus, Texas Senate Caucus, Texas Democratic

1

7. I have worked in the TDP as a senior advisor to Chairman Gilberto Hinojosa since 2013. Prior to 2013, I served as an employee of the TDP during coordinated campaigns going back to 1982. I was an elected member of the Texas House of Representatives from 1991 to 2002, serving for six terms. I was an unsuccessful candidate for Travis County Tax Assessor Collector in the 2008 Democratic Primary. Since 1970, I have worked as a volunteer, campaign staffer or manager, and party coordinated campaign chair or staff in over 150 campaigns at all levels, from local races to presidential campaigns, all in Texas. I have served as the Legislative Director of the TDP for the past four legislative sessions, specifically drafting and lobbying for passage of several hundred election code bills. My duties in these positions have required me to become knowledgeable about political strategy related to local, state, and federal elections in Texas.

8. In the time that I have been involved in politics, I have often heard and had my own suspicions that it is advantageous for a candidate to have the first position on the ballot because of the so-called "ballot order effect." In fact, I know that Texas Statutes require a random order draw for local non-partisan races and for candidates in party primaries because it has long been acknowledged that the candidate with the first position ballot placement has an electoral advantage.

9. I also noticed this phenomenon in personal experience, when I was on the ballot in the 1976 Democratic Presidential primary as a delegate candidate for Jimmy Carter. In that primary in Texas, each presidential candidate had the ability to field three delegate candidates. Candidates in Senate District 5 were Jimmy Carter, Lloyd Bentsen, and George Wallace. Although most voters voted for all three delegates for a particular presidential candidate, when the election concluded it was obvious in my district (and the other 30 Senate districts) that the first of the three Carter delegates received more votes than the second Carter delegate, and the second Carter delegate received more votes than the third Carter delegate. That vote count pattern was similar for candidates for Bentsen, and delegate candidates for Wallace. The actual delegate candidates (myself included) had almost no name identification and were unable to effectively educate voters about ourselves other than our pledge to the presidential candidate we were affiliated with on the

3

ballot. It seemed that the delegates who were in the first ballot position received the most votes simply because their names were first on the ballot.

10. The drawing for primaries currently occurs as follows. Texas Statute requires each County Chair to post notice of the time and place where the Chair and the County Executive Committee will meet to draw for primary ballot order. Candidates must also be notified so that they may witness the ballot order drawing. These drawings are held ten days after the close of the primary filing period. Upon completion of the drawing the County Chair posts the ballot order on the website of the Texas Secretary of State. County Clerks or Election Administrators then order candidates on ballots in the drawn order.

11. It is only in the last few years that the Texas Legislature has required the ballot order of candidates to be posted on the Secretary of State's website after the ballot order drawing. This change in the law was actually the result of legislation that I drafted and was successful in getting passed in 2013. The legislation was intended to promote transparency and accountability in each county's practice of generating the ballot.

12. After the change in the law was enacted, requiring the Secretary of State to post the ballot order, a professor at Sam Houston State University, Dr. Darren Grant, notified me of his research on ballot order effect in the primary elections to that date. In the time before the public could see the ballot order on the Secretary of State's website, Dr. Grant concluded that many counties actually failed to do the ballot order draws required by law and County Clerks simply posted ballot position in the order sent by the Secretary of State: alphabetical order. He claimed that the failure of randomizing ballot order was statistically shown to have affected many local and state primary elections.

13. Neither I nor the TDP were aware that the ballot order effect had been or could be proved by empirical evidence until I became aware of Dr. Grant's study on ballot order effect in primary elections.

14. Based on both that empirical research, additional research I have since seen reaching the same conclusion about ballot order in general elections, and my own personal

4

experience, I have no doubt that Texas's ballot order statute, Tex. Elec. Code § 52.091(b) (the "Ballot Order Statute"), puts the TDP and the Democratic candidates it supports, as well as its membership and voters, at a severe disadvantage.

15. The Ballot Order Statute requires that, in every general election, all candidates who share their political association with that of the last-elected Governor must be listed first. Because a Republican has held the governorship in Texas for the last 24 years, Democrats and Democratic voters have been systemically and arbitrarily disadvantaged by the preferential treatment that the Ballot Order Statute has consistently given Republicans for decades.

16. The impacts of the effects of the Ballot Order Statute seem to only be increasing and becoming all the more pivotal in Texas. This is the clear lesson of the 2018 election, in which several races up and down the ticket were decided by extremely slim vote margins in Texas.

17. For example, there was only a difference of 2.6 percentage points between Ted Cruz, who won the election for U.S. Senate with 50.9% of the vote, and Beto O'Rourke, who lost the election with 48.3% of the vote. In the 23rd Congressional District, Republican Will Hurd held onto his seat over Democratic challenger Gina Ortiz Jones by obtaining a vote share that exceeded Ortiz Jones's by only 0.44 percentage points—a total of only 926 votes. Republicans also won five other U.S. House races by margins within 5 percentage points from their Democratic opponents, including the 21st Congressional District (2.61), 31st Congressional District (2.91), 24th Congressional District (3.07), 10th Congressional District (4.27), and 22nd Congressional District (4.91). Numerous races for state senate and state representative were similarly close, with seven races for state representative and two for state senate decided by margins within 5 percentage points, including for State Representative District 138 (0.1), State Representative District 108 (0.28), State Representative District 66 (0.58), State Representative District 112 (2.08), State Representative District 67 (2.30), State Senator, District 8 (2.36), State Representative District 92 (2.39), State Senator, District 17 (4.64), and State Representative District 26 (4.82).

18. I understand that research consistently shows that ballot order has an impact on all types of elections, but that state legislative races and other races found further down on the ticket

tend to be even more susceptible to ballot order effects. This puts the incredibly close margins by which the above races were decided in even sharper perspective and threatens severe and irreparable consequences in 2020. This is because in 2018, Democrats managed, despite the impact of the Ballot Order Statute, to flip 12 seats in the Texas State House, leaving them only nine seats short of a majority. Republicans carried 17 Texas State House districts by single digits in that same election. Thus, control of the Texas House is realistically in reach for Democrats in 2020, if they are allowed to compete on an even playing field.

19. It has become unavoidably clear that the Ballot Order Statute not only skews the playing field to the significant advantage of Republicans in Texas, in several recent races it very well could have been outcome determinative. That Texas will have multiple close elections is highly likely to be true again in 2020. Thus, the TDP has become convinced that it must act to attempt to require Texas to hold its future elections, including most immediately in 2020, in a manner that gives similarly situated major party candidates an equal opportunity to be elected.

20. The TDP's voter members are also severely harmed by the Ballot Order Statute. This is because the Ballot Order Statute effectively gives Republican voters more voting power, and dilutes the relative strength of Democratic voters, because of the built-in advantage to the first-listed party. This uneven treatment of voters and candidates in Texas elections broadly undermines the integrity of Texas's elections.

21. To negate the ballot order effect and its injury to the TDP, its voters, and the candidates it supports and with whom it associates, the Texas Secretary of State should be required to use a ballot order system that gives similarly situated major-party candidates an equal opportunity to be listed first on the ballot. Ideally, it would do this by rotating the Republican and Democratic candidates' names so that each appears in the first position on an equal number of ballots. But short of that, Texas should be required to use some system that makes it so that candidates from similarly situated parties have an equal opportunity to be listed first on the ballot in any given election, and not a system—like the one imposed by the Ballot Order Statute—that puts not just a state-approved but state-required thumb on the scale in favor of a single political

party in every contest, based arbitrarily on the election results of a single race, perpetuating and entrenching the dominance of the advantaged political party, in entirely unrelated elections across the state and up and down the ticket, for years.

22. Notably, Texas appears to be aware of the impacts of ballot order, because in its primary elections, it employs a system that, at the very least, makes the assignment of the first position on the ballot in any given race random, by deciding it through a lottery. While this does not create a level playing field in every election because it still means the ballot order is set county-wide so that the candidate lucky enough to "win" the ballot order lottery benefits exclusively from ballot order effects at least across all the ballots in that county, it is still a substantially better system than the unrelenting preference that the Ballot Order Statute establishes for a single political party—for over two decades now, the Republican Party—in the general election.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 15, 2019.

_____
Tommy Glen Maxey