# EXHIBIT H

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>Plaintiffs,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>Defendant. | Civil Action No. 1:19-cv-01071 |

**DECLARATION OF JUSTIN BARASKY IN SUPPORT OF PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION**

I, Justin Barasky, according to 28 U.S.C. § 1746, hereby state:

1. My name is Justin Barasky. I am over 18 years of age, am competent to testify, and declare the following facts based on my own personal knowledge.

2. I currently hold the title of Senior Advisor at the DSCC. I previously worked for the DSCC in 2014 and 2016 as its Communications Director and Press Secretary. Immediately prior to my return to the DSCC earlier this year, I served as the Campaign Manager for U.S. Senator Sherrod Brown's most recent re-election campaign. I also served as Senator Brown's Communications Director in 2011 and 2012. In total, I have worked in political campaigns for a decade and a half, and have more than a decade's worth of experience working with high-level U.S. Senate races. In recent months, that work has included work in Texas specifically, in anticipation of the 2020 election. My duties in these positions have required me to become knowledgeable about political strategy related to U.S. Senate elections generally and in Texas specifically.

1

3. I am employed by the DSCC, which is the national senatorial committee of the Democratic Party. Its mission is to elect candidates of the Democratic Party to the U.S. Senate, including in and from Texas. The DSCC works to accomplish its mission by, among other things, making expenditures for and contributions to Democratic candidates for U.S. Senate and assisting state parties throughout the country, including in Texas. The DSCC also supports and participates in what is commonly referred to as the "coordinated campaign," in which it works collaboratively with the state party committee and other national Democratic committees to elect Democrats within the state up and down the ticket.

4. I am aware of the widespread belief that the first-listed candidate on a ballot gains an advantage simply because they are listed first. However, neither I nor the DSCC were aware that the ballot order effect had been or could be proven by empirical evidence until 2018, when DSCC staff reviewed recent studies that detailed the effect in elections.

5. Now that the research has established that ballot order has a substantial impact on elections, it is clear to me and the DSCC that Texas's ballot order statute, Tex. Elec. Code § 52.091(b) (the "Ballot Order Statute"), puts the DSCC and the Democratic candidates it supports in Texas (as well as the Texas voters who support them) at a severe disadvantage.

6. The Statute requires that, in every general election, all candidates who share their political association with that of the last-elected Governor must be listed first. Because a Republican has held the governorship in Texas for the last 24 years, Democrats have been systemically and arbitrarily disadvantaged by the preferential treatment that the Ballot Order Statute has consistently given Republicans for decades.

7. Elections present constant and largely unique problems of resource management. In any given election cycle the DSCC has a certain amount of money to spend to support Democrats in races across the country. Allocation decisions have to be made quickly and their consequences are monumental. Because elections take place on a date certain, if a decision is made not to spend money to support a candidate in any given race, that is not a decision that can be done over at any point in the future. At the same time, because the DSCC supports candidates all over

the country, a decision to spend more money to support, say, a candidate in Texas, has real consequences for what the DSCC can do to support candidates elsewhere. These decisions are often even harder to make in Texas, which is a notoriously expensive state in which to support political activity.

8. The same is true of allocating resources to combat an elections law, like Texas's Ballot Order Statute, that sets an unlevel playing field from the outset. Although the DSCC was aware of research establishing the significance of ballot order in elections in 2018, the DSCC had to make certain decisions about how to allocate its resources in advance of that election.

9. However, in 2018, Senator Ted Cruz won re-election against his Democratic challenger, Beto O'Rourke, by only 2.6 percentage points. Thus, not only has the research made it abundantly clear that the Ballot Order Statute not only makes it harder for the candidates that the DSCC supports to be elected in Texas, it quite possibly has been outcome-determinative in a recent U.S. Senate race.

10. In 2020, the DSCC intends to support the Democrat running to represent Texas in the U.S. Senate. In fact, the DSCC anticipates that it will ultimately have staff on the ground in Texas, for the purpose of supporting the Democrat's bid for election.

11. In 2020, the seat up for election is the one that Republican John Cornyn has held since 2002. Unless enjoined, the Ballot Order Statute will give Senator Cornyn a pre-determined and meaningful advantage in that election before the first ballot is even distributed. That is because the law mandates that Senator Cornyn be listed first on every ballot that Texas voters will be presented in the general election, for no other reason than that a different Republican candidate won the election for Texas Governor two years earlier.

12. Senator Cornyn's Democratic challenger will have no opportunity to be listed first on even a single ballot that will be presented to Texas's millions of voters. And the DSCC's spending decisions will have to consider whether to allocate significant additional resources to the Texas race to combat (with the hopes of overcoming) that state-mandated and arbitrary advantage.

13. The difficult resource decisions that the DSCC must make as a result will mean either that it does not put enough resources in to combat the advantage that the Ballot Order Statute gives Republicans, or that it takes money away from other competitive races elsewhere in order to accomplish that. Either way, the DSCC suffers a severe and irreparable injury that can never be made whole once the ballots are cast in the 2020 election.

14. To address the injury to the DSCC, and to ensure that Texas's elections are not skewed from the outset in favor of the last-elected governor's political party, Texas should be required to use a ballot order system that gives similarly situated major-party candidates an equal opportunity to be listed first on the ballot. The optimal way to do this would be to rotate the Republican and Democratic candidates' names so that each appears in the first position on an equal number of ballots. But, in any event, Texas should be required to use a system that makes it so that candidates from similarly situated parties have an equal opportunity to be listed first on the ballot in any given election, and not one—like that imposed by the Ballot Order Statute—that puts not just a state-approved but state-required thumb on the scale in favor of the last-elected governor's political party in every contest, based arbitrarily on the election results of a single race, perpetuating and entrenching the dominance of the advantaged political party, in entirely unrelated elections across the state and up and down the ticket, for years.

15. Texas appears to be aware of the impacts of ballot order, because in its primary elections, it employs a system that, at the very least, makes the assignment of the first position on the ballot in any given race random, by deciding it through a lottery. While this does not create a level playing field in every election, because it still means the ballot order is set county-wide so that the candidate lucky enough to "win" the ballot order lottery benefits exclusively from ballot order effects (at least across all the ballots in that county), it is still a substantially better system than the unrelenting preference that the Ballot Order Statute establishes for a single political party—for over two decades now, the Republican Party—in the general election.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 14, 2019

                                                                                                *DocuSigned by:*

                                                                                               *Justin Barasky*

                                                                                      9B9092A19968499...

                                                                             Justin Barasky