# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC, | Civil Action No. 1:19-cv-01071-LY |
| Plaintiffs, | |
| v. | |
| RUTH HUGHS, in her official capacity as the Texas Secretary of State, | |
| Defendant. | |

# PLAINTIFFS' RESPONSE IN OPPOSITION TO
# DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD ........................................................................................ 2

III.  ARGUMENT .................................................................................................... 2

      A.    No legally recognized equitable doctrine prohibits this action. ............................ 2

            1.   Recent developments underscore the Statute's impact. ................................. 3

            2.   Laches does not bar this action. ...................................................................... 5

            3.   Constitutional estoppel does not bar relief. .................................................... 7

            4.   The doctrines of unclean hands and *in pari delicto* are not applicable. ........... 8

      B.    The Secretary is the correct defendant, and *Ex Parte Young* permits this suit. ...... 9

            1.   The Secretary is the State's chief elections officer and the proper defendant.  9

            2.   *Ex Parte Young* permits Plaintiffs' suit. ......................................................... 10

      C.    Plaintiffs have standing to challenge the Ballot Order Statute. ........................... 12

            1.   Plaintiff Rachel Miller has standing. .............................................................. 12

            2.   The TDP, DNC, DSCC, and DCCC have standing. ....................................... 14

            3.   The Secretary's "statutory standing" argument has no merit. ........................ 17

      D.    This case is justiciable, and *Rucho* does not counsel otherwise. .......................... 18

      E.    Plaintiffs state claims upon which relief may be granted. ................................... 20

            1.   Plaintiffs sufficiently plead a burden on their right to vote. ........................... 21

            2.   Plaintiffs sufficiently plead an equal protection violation. ............................. 24

IV.   CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

CASES                                                                              PAGES

*Akins v. Sec'y of State*,
   904 A.2d 702 (N.H. 2006) ...............................................................................20

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983)...........................................................................21, 22, 24

*Ariz. Green Party v. Reagan*,
   838 F.3d 983 (9th Cir. 2016) ..........................................................................22

*Bay Cty. Democratic Party v. Land*,
   347 F. Supp. 2d 404 (E.D. Mich. 2004)..........................................................16

*Baylor Univ. Med. Ctr. v. Heckler*,
   758 F.2d 1052 (5th Cir. 1985) ..........................................................................7

*Bd. of Election Comm'rs of Chi. v. Libertarian Party of Ill.*,
   591 F.2d 22 (7th Cir. 1979) ............................................................................23

*Bein v. Heath*,
   47 U.S. 228 (1848)............................................................................................8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................2

*Brown v. Board of Education*,
   347 U.S. 483 (1954)..........................................................................................5

*Burdick v. Takushi*,
   504 U.S. 428 (1992)...........................................................................21, 22, 24

*Bush v. Gore*,
   531 U.S. 98 (2000)..........................................................................................13

*Carrington v. Rash*,
   380 U.S. 89 (1965)..........................................................................................19

*Cicalese v. Univ. of Texas Med. Branch*,
   924 F.3d 762 (5th Cir. 2019) ..........................................................................24

*City of Austin v. Paxton*,
   943 F.3d 993 (5th Cir. 2019) ...................................................................10, 11

*City of Cleburne v. Cleburne Living Center*,
   473 U.S. 432 (1985)........................................................................................25

*City of El Paso, Tex. v. El Paso Entm't, Inc.*,
    382 F. App'x 361 (5th Cir. 2010) ......................................................................6, 7

*Clements v. Fashing*,
    457 U.S. 957 (1982)..........................................................................................25

*Clough v. Guzzi*,
    416 F. Supp (D. Mass. 1976) ...........................................................................24

*Cook v. Gralike*,
    531 U.S. 510 (2001)..........................................................................................21

*Crawford v. Marion Cty. Election Bd.*,
    553 U.S. 181 (2008)........................................................................19, 22, 23

*Culliton v. Bd. of Election Com'rs of DuPage Cty.*,
    419 F. Supp. 126 (N.D. Ill. 1976) ...................................................................12

*Danos v. Jones*,
    652 F.3d 577 (5th Cir. 2011) .....................................................................17, 18

*Democratic Exec. Comm. of Fla. v. Lee*,
    915 F.3d 1312 (11th Cir. 2019) .........................................................................4

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
    241 F.3d 420 (5th Cir. 2001) .............................................................................2

*Envtl. Def. Fund v. Marsh*,
    651 F.2d 983 (5th Cir. 1981) .............................................................................5

*Fahey v. Mallonee*,
    332 U.S. 245 (1947)............................................................................................8

*Fla. Democratic Party v. Scott*,
    215 F. Supp. 3d 1250 (N.D. Fla. 2016)...........................................................16

*Garza v. Cty. of L.A.*,
    918 F.2d 763 (9th Cir. 1990) .............................................................................6

*Gould v. Grubb*,
    14 Cal. 3d 661 (1975) .........................................................................4, 14, 20

*Graves v. McElderry*,
    946 F. Supp. 1569 (W.D. Okla. 1996).......................................4, 14, 20, 23

*Griswold v. Connecticut*,
    381 U.S. 479 (1965)............................................................................................5

*Hancock Cty. Bd. of Supervisors v. Ruhr*,
  487 F. App'x 189 (5th Cir. 2012) ........................................................16

*Harper v. Va. State Bd. of Elections*,
  383 U.S. 663 (1966)......................................................................4, 19

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982).........................................................................14

*Herron v. Herron*,
  255 F.2d 589 (5th Cir. 1958) ..............................................................3

*Holtzman v. Power*,
  313 N.Y.S.2d 904 (N.Y. Sup. Ct. 1970) ..............................................20

*Hotze v. Burwell*,
  784 F.3d 984 (5th Cir. 2015) ...............................................................2

*Jacobson v. Lee*,
  No. 4:18CV262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov. 15, 2019).................. passim

*Kadrmas v. Dickinson Pub. Sch.*,
  487 U.S. 450 (1988)...........................................................................8

*Kautenburger v. Jackson*,
  333 P.2d 293 (Ariz. 1958)..................................................................20

*Keystone Driller Co. v. Gen. Excavator Co.*,
  290 U.S. 240 (1933)............................................................................8

*Larson v. Domestic & Foreign Commerce Corp.*,
  337 U.S. 682 (1949).........................................................................12

*Lawrence v. Texas*,
  539 U.S. 558 (2003)............................................................................4

*Lee v. Virginia State Bd. of Elections*,
  155 F. Supp. 3d 572 (E.D. Va. 2015) ..................................................14

*Libertarian Party of Va. v. Alcorn*,
  826 F.3d 708 (4th Cir. 2016) .........................................................20, 21

*Loving v. Virginia*,
  388 U.S. 1 (1967)................................................................................4

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)........................................................................2, 15

*Mann v. Powell*,
　314 F. Supp. 677, 679 (N.D. Ill. 1969), *aff'd*, 398 U.S. 988 (1970)............................1, 20, 23

*Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*,
　369 F.3d 464 (5th Cir. 2004) ..........................................................................................2, 22

*McCarthy ex rel. Travis v. Hawkins*,
　381 F.3d 407 (5th Cir. 2004) ................................................................................................12

*McLain v. Meier*,
　637 F.2d 1159 (8th Cir. 1980) ....................................................................................... passim

*Meyer v. Texas*,
　No. H-10-cv-3860, 2011 WL 1806524 (S.D. Tex. May 11, 2011) ........................................23

*Milliken v. Bradley*,
　433 U.S. 267 (1977)................................................................................................................11

*Mills v. Green*,
　159 U.S. 651 (1895)................................................................................................................17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
　473 U.S. 614 (1985)..................................................................................................................9

*N.A.A.C.P. v. City of Kyle, Tex.*,
　626 F.3d 233 (5th Cir. 2010) ................................................................................................15

*Nader 2000 Primary Comm., Inc. v. Hechler*,
　112 F. Supp. 2d 575 (S.D.W.Va. 2000) ..................................................................................6

*Nader v. Connor*,
　332 F. Supp. 2d 982 (W.D. Tex. 2004)..................................................................................11

*Nat'l Treasury Employees Union v. U.S. Dep't of Treasury*,
　25 F.3d 237 (5th Cir. 1994) ..................................................................................................18

*Netsch v. Lewis*,
　344 F. Supp. 1280 (N.D. Ill. 1972) ......................................................................................20

*New Alliance Party v. New York State Board of Elections*,
　861 F. Supp. 282 (S.D.N.Y. 1994)........................................................................................21

*Obama for Am. v. Husted*,
　697 F.3d 423 (6th Cir. 2016) ................................................................................................25

*OCA-Greater Houston v. Texas*,
　867 F.3d 604 (5th Cir. 2017) ......................................................................................9, 10, 11

*Rogers v. McDorman*,
  521 F.3d 381 (5th Cir. 2008) ....................................................................................8

*Rucho v. Common Cause*,
  139 S. Ct. 2484 (2019) ..................................................................18, 19, 20, 21

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
  547 U.S. 47 (2006) ...................................................................................................12

*Sandusky Cty. Democratic Party v. Blackwell*,
  387 F.3d 565 (6th Cir. 2004) ...............................................................................16

*Sangmeister v. Woodard*,
  565 F.2d 460 (7th Cir. 1977) ...............................................................................20

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ................................................................................................18

*Smith v. Clinton*,
  687 F. Supp. 1310 (E.D. Ark. 1988) ....................................................................6

*TDP v. Benkiser*,
  459 F.3d 582 (5th Cir. 2006) ........................................................................15, 17

*Teladoc, Inc. v. Texas Med. Bd.*,
  No. 1-15-CV-343, 2015 WL 8773509 (W.D. Tex. Dec. 14, 2015)...........................5

*Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Parish*,
  756. F.3d 380, 387-88 (5th Cir. 2014) ...............................................................12

*Thomas v. Bryant*,
  938 F.3d 134 (5th Cir. 2019) ..................................................................................6

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997)..........................................................................................19, 23

*Turner v. Pleasant*,
  663 F.3d 770 (5th Cir. 2011) .................................................................................2

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996)................................................................................................18

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
  412 U.S. 669 (1973)................................................................................................12

*United States v. Texas*,
  422 F. Supp. 917 (S.D. Tex. 1976) .......................................................................9

*Veasey v. Perry*,
    29 F. Supp. 3d 896 (S.D. Tex. 2014) ........................................................................ 18

*Warth v. Seldin*,
    422 U.S. 490 (1975) ......................................................................................... 16, 18

*Weinberger v. Wiesenfeld*,
    420 U.S. 636 (1975) .................................................................................................. 4

*White v. Daniels*,
    909 F.2d 99 (4th Cir. 1990) ...................................................................................... 6

*Wilkinson v. Legal Servs. Corp.*,
    80 F.3d 535 (D.C. Cir. 1996) .................................................................................... 8

*Zapata v. Smith*,
    437 F.2d 1024 (5th Cir. 1971) ................................................................................ 12

## STATUTES

28 U.S.C. § 752 ................................................................................................................ 17

52 U.S.C. § 20981(a) ....................................................................................................... 19

52 U.S.C. §§ 30101(14)-(15) ........................................................................................... 16

Tex. Elec. Code § 31.003 ................................................................................................. 11

Tex. Elec. Code § 52.091(b) .............................................................................................. 1

## OTHER AUTHORITIES

Fed. R. Civ. P. Rule 12(d) ................................................................................................. 3

Fed. R. Civ. P. Rule 65(d)(2) ........................................................................................... 10

Fed. R. Civ. P. Rule 12(b) ............................................................................................ 1, 16

## I.      INTRODUCTION

This case poses a simple question: Does the Constitution permit the State to confer upon a single political party a systemic head start in its elections? Texas's Ballot Order Statute, Tex. Elec. Code § 52.091(b), does just that. By mandating that candidates who share their party with the last elected Governor be listed first in every race on general election ballots, it conveys a built-in and meaningful advantage up and down the ticket upon all candidates of that party. This is because of a phenomenon known as "position bias," or the "primacy effect," which causes people to manifest a bias toward the first-listed option in a visually presented list. Those involved in politics have long believed that this phenomenon carries over into the voting booth, but the recent and now extensive studies on this question erase all reasonable doubt: the order that candidates appear on the ballot has an impact on electoral success. Because of the Ballot Order Statute, that advantage has accrued, consistently and without interruption, to the Republican Party since 1994.

Plaintiffs include a Texas voter who consistently supports Democratic candidates, the Texas Democratic Party ("TDP"), and three national Democratic committees (collectively, "Plaintiffs"). Together, they challenge the constitutionality of the Ballot Order Statute, arguing that its built-in favoritism for the Governor's party constitutes both an unconstitutional burden on the right to vote and a violation of equal protection. As a result of the Statute, Plaintiffs have suffered irreparable injury each elections cycle for the last 25 years, and will continue to suffer in the 2020 general election absent a ruling from this Court that the Statute is unconstitutional. Plaintiffs' claims echo those that have been adjudicated through the merits in over a dozen other cases, including one in which the U.S. Supreme Court affirmed a preliminary injunction requiring the state to impose a more equitable ballot ordering system. *See Mann v. Powell*, 314. F. Supp. 677, 679 (N.D. Ill. 1969), *aff'd*, 398 U.S. 988 (1970).

Nevertheless, in a motion to dismiss that reads like a laundry list of all the legal doctrines a litigant might possibly use to avoid the merits, the Secretary moves this Court to dismiss Plaintiffs' Complaint. *See* ECF No. 33 ("Mot."). None of these arguments provides a sound legal basis for this Court to refuse to adjudicate Plaintiffs' claims to a final resolution on the merits.

## II.      LEGAL STANDARD

The Secretary makes arguments that arise under 12(b)(1) and 12(b)(6) of the Federal Rules. Under both, the Court must accept all factual allegations in the Complaint as true. *See Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (12(b)(6)); *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (12(b)(1)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct" ordinarily suffice to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Hotze v. Burwell*, 784 F.3d 984, 992 (5th Cir. 2015) (courts may "not dismiss for lack of standing if [they] reasonably can infer [standing] from the plaintiffs' general allegations"). A Rule 12(b)(6) motion, meanwhile, should only be granted when a court determines that it is "beyond doubt" that the claimant cannot prove a plausible set of facts that support the claim and would justify relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such motions are generally disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

## III.      ARGUMENT

### A.      No legally recognized equitable doctrine prohibits this action.

The Secretary attempts to invoke several different equitable doctrines to convince the Court that it need not adjudicate the merits in this action, but none bar Plaintiffs' claims.

### 1.      Recent developments underscore the Statute's impact.

All of the Secretary's equitable arguments are grounded, in one way or another, in the fact that the Ballot Order Statute was originally enacted in 1963. The Secretary's emphasis on this point is likely directed at the Court's stated interest in "the historical background of how long we've been doing it this way and why it has only now become a problem." Tr. of Telephone Conf. (Nov. 22, 2019) ("11-22-19 Tr.") at 10:6-8. To answer the Court's question directly: Texas has been ordering ballots this way for a long time, and it has very likely always been a problem to at least some degree. But there have been at least two significant developments in recent years.

*First*, the Ballot Order Statute's impact on elections is now demonstrable by empirical methods. *See Jacobson v. Lee*, No. 4:18CV262-MW/CAS, 2019 WL 6044035, at *12 (N.D. Fla. Nov. 15, 2019) (describing how, in a recent review of 1086 studies of elections, 84% demonstrated primary effects, a result which had "a less than one one-thousandth of a percent chance (in fact, a 0.0001% chance) of occurring" for some reason other than the effects of position bias).[1] This is important, because plaintiffs in elections cases often find themselves in a Catch-22: Bring a case too early, based on nascent statistical evidence, and the state will argue plaintiffs cannot prove their case. *See, e.g.*, *id.* at *9 ("[I]t is unclear whether Plaintiffs would have been able to prosecute their claims without substantial data on the primacy effect collected over time—a fact which would

---

[1] In making equitable arguments, the Secretary relies on facts outside of the Complaint. *See* Mot. at 22-25. Affirmative defenses may be made on a motion to dismiss "provided that the complaint shows affirmatively that the claim is barred." *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958). But if "the movant goes outside the pleadings," the motion to dismiss must be treated as one for summary judgment. *Id.*; *see also* Fed. R. Civ. P. Rule 12(d). Plaintiffs rely on the pleadings and on case law in this response, but request the opportunity to present additional material outside the pleadings should the Court consider the extraneous material the Secretary relies upon, converting the motion to one for summary judgment. For example, the expert reports that Plaintiffs submitted in support of their application for a preliminary injunction explain the evolution in the research on position bias in election and the demographic changes that are making Texas's elections more competitive.

arguably excuse at least some delay."); *cf. Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1326 (11th Cir. 2019) (holding plaintiff need not "search and destroy every conceivable potential unconstitutional deprivation, but could catch its breath, take stock of its resources, and study the result of its efforts") (citation omitted). But bring a case after the science has solidified and ample elections demonstrate a consistent pattern, and the state will argue plaintiffs have sat on their rights. Indeed, that is exactly what is happening here.

*Second*, close elections in Texas are becoming more common. Compl. ¶¶ 28-36. This trend is at least in part due to recent changes in Texas's demographics, and is likely to continue. *Id.* ¶¶ 28, 33-36. Although Plaintiffs need not show that elections were or will be flipped as a result of the Ballot Order Statute's impact, *see McLain v. Meier*, 637 F.2d 1159, 1159 (8th Cir. 1980) (holding ballot order system unconstitutional where plaintiff candidate received only 1.5% of the vote); *see also Graves v. McElderry*, 946 F. Supp. 1569, 1579-81 (W.D. Okla. 1996); *Gould v. Grubb*, 14 Cal. 3d 661, 668 (1975), the fact that more elections are now being decided by increasingly thin margins, Compl. ¶¶ 29-31, makes the injury to Plaintiffs all the more severe.

Thus, while an argument of delay might be viscerally appealing, it does not hold up to close examination, either factually or legally. There is no doctrine that says that plaintiffs must sue when an action by the state first injures their fundamental rights, or else forever suffer that injury without judicial redress. To the contrary, the Supreme Court's constitutional jurisprudence is rife with decisions striking down laws passed decades before. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 578-79 (2003) (holding unconstitutional 1974 Texas law criminalizing intercourse with someone of the same sex); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638-39 (1975) (holding portion of Social Security Act of 1935 unconstitutional); *Loving v. Virginia*, 388 U.S. 1 , 2 (1967) (holding 1924 anti-miscegenation law unconstitutional); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663,

664-66 (1966) (holding poll tax added in Virginia constitution of 1902 unconstitutional); *Griswold v. Connecticut*, 381 U.S. 479, 480, 485-86 (1965) (holding anti-contraception law passed in 1873 unconstitutional).

A particularly good illustration of this principle is *Brown v. Board of Education*, 347 U.S. 483 (1954), where in 1954 the Supreme Court struck down an 1879 Kansas school segregation law as unconstitutional. While there had been a widespread understanding that separate facilities held the mark of inequality, pioneering research allowed plaintiffs to concretely prove the psychological effects segregation had on African-American children. *See id.* at 494 & n.11 ("Whatever may have been the extent of psychological knowledge at the time of *Plessy v. Ferguson*, this finding [of detrimental effect] is amply supported by modern authority.") (citing studies from the prior decade). In that way, science built upon common understanding and led to developments in law.

2.      **Laches does not bar this action.**

The Secretary's laches defense fails at the outset because laches does not apply to claims for prospective injunctive relief. The Fifth Circuit has held that laches "may not be used as a shield for future, independent violations of the law." *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1005 n.32 (5th Cir. 1981). Plaintiffs seek relief to protect their rights in *future* elections. *See* Compl. at 17-18. The Secretary cites no authority that would justify a departure from the well-established rule that "[t]he concept of undue prejudice, an essential element in a defense of laches, is normally inapplicable when the relief is prospective." *Marsh*, 651 F.2d at 1005; *see also Teladoc, Inc. v. Texas Med. Bd.*, No. 1-15-CV-343, 2015 WL 8773509, at *5 (W.D. Tex. Dec. 14, 2015) (rejecting laches where plaintiffs sought injunctive relief against enforcement of state administrative rule).

Even if laches could apply, the Secretary cannot establish the requisite elements. Laches may bar relief *only* when the defendant affirmatively establishes (1) a delay in asserting a claim,

which (2) was not excusable, and (3) caused undue prejudice to the defendant's ability to present a defense. *City of El Paso, Tex. v. El Paso Entm't, Inc.*, 382 F. App'x 361, 366 (5th Cir. 2010).

Plaintiffs filed this lawsuit more than one year in advance of the next general election. *See* 11-22-19 Tr. at 7:18-22 ("I applaud [Plaintiffs]" for filing suit "early to where we have time to deal with it."); *see also Thomas v. Bryant*, 938 F.3d 134, 150 (5th Cir. 2019), *reh'g en banc granted*, 939 F.3d 629 (5th Cir. 2019) ("[N]o circuit court has disturbed a district court's denial of a laches defense in any case where the suit was filed more than eight months before the election."); *Jacobson*, 2019 WL 6044035 at *9 ("Plaintiffs have not inexcusably delayed bringing their claims because the event chiefly complained of—the 2020 election—has not happened yet."). Regardless of whether Plaintiffs could have made similar claims about an earlier election, each election held under the Statute constitutes injury anew. *Garza v. Cty. of L.A.*, 918 F.2d 763, 772 (9th Cir. 1990) (holding voting rights action not barred by laches "[b]ecause of the ongoing nature of the violation"); *see also Smith v. Clinton*, 687 F. Supp. 1310, 1312-13 (E.D. Ark. 1988) (same).[2]

It is also worth emphasizing that the Secretary's only argument on inexcusable delay—that the organizational Plaintiffs are "sophisticated parties represented by sophisticated counsel," Mot. at 23—makes no mention of Plaintiff Miller; the Court may not impute knowledge of voting rights violations from one plaintiff to another. *See Nader 2000 Primary Comm., Inc. v. Hechler*, 112 F. Supp. 2d 575, 579 n.2 (S.D.W.Va. 2000) (holding candidate's and political party's delay in asserting challenge to ballot access laws did not apply to registered-voter co-plaintiffs, who "should not be forced to anticipate and predict possible constitutional violations").

---

[2] The Secretary's reliance on *White v. Daniels*, 909 F.2d 99 (4th Cir. 1990), is wholly misplaced. In *White*, the plaintiffs filed suit only "*after* the last election under the [challenged redistricting] plan." *Id.* at 103-04 (emphasis added). As a result, court-ordered injunctive relief "would be completely gratuitous" and would "make[] no sense." *Id.* at 104. Unlike the law at issue in *White*, the Ballot Order Statute has not and will not expire before the next election.

Finally, the Secretary fails to establish prejudice of any kind due to any delay. She first claims she *may* be prejudiced because of the *possibility* that Plaintiffs "will rely on evidence of the Legislature's intent when it enacted the Ballot Order Statute." Mot. at 24. But none of Plaintiffs' claims turn or rely on legislative intent. As the Secretary herself concedes, this claim of prejudice is viable only "[t]o the extent the intent of the 1963 Legislature is relevant." *Id.* It is not.

The argument that prejudice will result if Texas is forced to change its ballot ordering system, *id.*, is also misplaced. Any such costs would be the routine consequence of an adverse merits ruling, insufficient to establish laches. *See Baylor Univ. Med. Ctr. v. Heckler*, 758 F.2d 1052, 1058 (5th Cir. 1985) (holding laches not applicable where defendant did not establish prejudice "from anything other than an adverse decision on the merits"); *see also Jacobson*, 2019 WL 6044035, at *9. The Secretary does not even affirmatively contend that changing Texas's ballot ordering will be more costly, much less that any additional cost can be traced to Plaintiffs' purported delay. Her unsupported assertions that elections officials and voters may have become "accustomed" to the current ballot ordering system does not prove these hypothetical "costs," Mot. at 24, let alone establish her burden on laches. *See City of El Paso, Tex.*, 382 F. App'x at 366-67.

### 3. Constitutional estoppel does not bar relief.

The Secretary also argues that Plaintiffs' suit is barred because Democrats in general benefitted from the Ballot Order Statute in certain elections prior to 1994, Mot. at 24, but she fails to identify a legal justification for dismissing this case on that basis. While the Secretary vaguely alludes to "[m]ultiple doctrines" for the principle she urges this Court to follow, *id.* at 25, she only cites cases concerning constitutional estoppel, a doctrine that has no applicability here.

"In general, constitutional estoppel applies to prevent a party from enjoying the benefits of a government action while simultaneously challenging the constitutionality of that government action." *Jacobson*, 2019 WL 6044035, at *10 (quoting *Robertson v. Fed. Election Comm'n*, 45

7

F.3d 486, 489–90 (D.C. Cir. 1995)). In both of the cases upon which the Secretary relies, the plaintiffs sought to preserve the benefits that accrued to them due to the statutes they sought to challenge. *Fahey v. Mallonee*, 332 U.S. 245, 255 (1947); *Wilkinson v. Legal Servs. Corp.*, 80 F.3d 535, 537 (D.C. Cir. 1996). Here, by contrast, Plaintiffs do not seek to maintain any advantage they may receive from the Statute while avoiding its disadvantages. *See Jacobson,* 2019 WL 6044035, at *10. Accordingly, "[t]he doctrine [of constitutional estoppel] does not apply here at all." *Id*.[3]

### 4. The doctrines of unclean hands and *in pari delicto* are not applicable.

The Secretary's attempt to invoke unclean hands and *in pari delicto* is also misplaced. The Secretary cherry-picks language from cases involving contract law, *Bein v. Heath*, 47 U.S. 228, 247 (1848), patent claims, *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933), and civil RICO claims, *Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008), to patch together her argument that these doctrines somehow preclude relief in this entirely distinguishable action. *See* Mot. at 25. The Secretary fails to cite a single case that even suggests that either doctrine has ever been applied in a case challenging the constitutionality of a state law. Not only is her approach novel, it runs contrary to a long line of precedent in which the Supreme Court has "often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 654 (1985). Surely a constitutional challenge to an election law "serves important public purposes," *id*., precluding the invocation of either doctrine.

---

[3] *See also Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 456–57 (1988) (suggesting constitutional estoppel is limited to situations in which plaintiff itself is "creature[] of [the] statute" being challenged and expressing "doubt that plaintiffs are generally forbidden to challenge a statute simply because they are deriving some benefit from it"). Of course, none of the Plaintiffs to this action exist because of the Ballot Order Statute, nor can the same be said of the constitutional rights they seek to vindicate.

**B.     The Secretary is the correct defendant, and *Ex Parte Young* permits this suit.**

Having exhausted her discussion of the above parade of equitable doctrines, the Secretary next attempts to disclaim responsibility for enforcing the Ballot Order Statute and argues that the suit, in any event, is barred by *Ex Parte Young*. Neither argument can be sustained.

**1.     The Secretary is the State's chief elections officer and the proper defendant.**

The Secretary broadly disclaims responsibility for Texas's elections laws. *See* Mot. at 3-7. But the Fifth Circuit has already rejected this argument, finding that "[t]he facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State itself and its Secretary of State, who serves as the 'chief election officer of the state.'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017) (quoting Tex. Elec. Code § 31.001(a)); *see also United States v. Texas*, 422 F. Supp. 917, 921 (S.D. Tex. 1976) (rejecting motion to dismiss challenge to Texas election law, noting Secretary's duty to maintain uniformity of election laws).

The Secretary's attempt to avoid the clear conclusion of *OCA-Greater Houston* in a footnote, Mot. at 7 n.3, fails to distinguish this binding authority. Contrary to the Secretary's suggestion, the Ballot Order Statute is not enforced through a private right of action; "[b]y its own terms, it applies to every election held in the state of Texas." *OCA-Greater Houston*, 867 F.3d at 613. Further, the so-called "private right of action" the Secretary highlights under Texas election law would merely allow a candidate to challenge a ballot that does not order candidate names in compliance with the Statute, which is the opposite of what Plaintiffs seek here.

In *OCA-Greater Houston*, the Fifth Circuit also rejected the Secretary's assertion that, because she herself does not prepare ballots pursuant to the Ballot Order Statute, and because she is powerless to control local officials' adherence to the law, she is not the proper defendant. *See id.* at 613 ("That circular argument misses the mark."). As the Fifth Circuit made clear, the question of how the Statute is applied by local officials is irrelevant in considering whether Plaintiffs have

standing to challenge the Statute's facial validity. *Id.* Indeed, it is absurd to suggest, as the Secretary does, that local officials would go rogue and continue to apply the Ballot Order Statute in the face of federal court decision finding it unconstitutional. *See, e.g.*, Fed. R. Civ. P. 65(d)(2) (binding all entities in active concert or participation with defendant).

### 2.   *Ex Parte Young* permits Plaintiffs' suit.

The Secretary's argument that sovereign immunity bars Plaintiffs' suit is similarly based on the ill-considered premise that the Secretary does not enforce Texas election law. *See* Mot. at 5-6. As discussed above, the Fifth Circuit has rejected this assertion. And Plaintiffs' suit against the Secretary, named in her official capacity as Texas's chief elections officer, fits perfectly within *Ex Parte Young*'s exception to sovereign immunity.

*Ex Parte Young* provides an exception to sovereign immunity when the defendant enforces the challenged statute "by virtue of his office." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). If the named defendant is proper, *Ex Parte Young* requires two analyses: first, "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," and second, whether the official in question "has a 'sufficient connection [to] the enforcement' of the challenged act." *Id.* at 998 (citations and quotations omitted). The first element is plainly satisfied here, *see* Compl. ¶¶ 51, 57, and the Secretary does not contend otherwise.

The second hurdle is also easily cleared. Indeed, the *Paxton* decision, on which the Secretary herself relies, Mot. at 6, dooms the Secretary's argument for at least three reasons. *First*, *Paxton* emphasized that a mere "scintilla of 'enforcement'" fulfills this prong of *Ex Parte Young*. 943 F.3d at 1002. As the Fifth Circuit's decision in *OCA-Greater Houston* establishes, the Secretary has significantly more than a "scintilla" of power to enforce Texas's election laws. *See* 867 F.3d at 613-614; *see also Nader v. Connor*, 332 F. Supp. 2d 982 (W.D. Tex. 2004). *Second*, *Paxton* recognized that "it may be the case that an official's 'connection to [] enforcement' is

satisfied when standing has been established," 943 F.3d at 1002, as Plaintiffs have in this case, *see infra* at Section III.C. *Third*, even if *Paxton* did require Plaintiffs to show that the Secretary is likely to enforce the statute, *but see Paxton*, 943 F.3d at 999-1000 (noting that it is unclear "[w]hat constitutes a sufficient 'connection to [] enforcement'" and concluding only that Attorney General's "habit" of bringing suits to enforce supremacy of state law was insufficient), that fact is easily established here, both by the Election Code itself, Tex. Elec. Code § 31.003 ("The secretary of state shall obtain and maintain uniformity in the application, operation, and interpretation of this code . . . ."), and by Election Advisories issued by the Secretary regarding candidate ballot order, *see, e.g.*, Texas Secretary of State, Election Advisory No. 2018-26, https://www.sos.state.tx.us/elections/laws/advisory2018-26.shtml.

Finally, the Secretary is simply wrong to suggest that the doctrine embodied in *Ex Parte Young* does not apply when a plaintiff seeks a mandatory injunction. *See, e.g.*, *Milliken v. Bradley*, 433 U.S. 267, 288-90 (1977) (rejecting assertion of sovereign immunity concerning requirement that state pay for future educational components of relief to remedy harms caused by state's constitutional violations); *Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Parish*, 756. F.3d 380, 387-88 (5th Cir. 2014) (noting school board "remained subject to affirmative obligations" by permanent injunction issued by court in 1974 to remedy constitutional harms); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) ("Under *Ex Parte Young*, 'a federal court . . . may enjoin state officials to conform their future conduct to the requirements of federal law.'" (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979))); *Culliton v. Bd. of Election Com'rs of DuPage Cty.*, 419 F. Supp. 126, 129 (N.D. Ill. 1976) (finding ballot ordering system unconstitutional and ordering use of lottery for upcoming election). The Secretary cites nothing that actually supports her position, instead cherry-picking language from cases that did not involve

11

the application of *Ex Parte Young*. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 705 (1949); *Zapata v. Smith*, 437 F.2d 1024, 1025-26 (5th Cir. 1971).

**C.     Plaintiffs have standing to challenge the Ballot Order Statute.**

It is well established that only one plaintiff need have standing for a case to proceed. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006). Here, *all five* Plaintiffs allege concrete and particularized injuries-in-fact and otherwise satisfy the pleading requirements as to standing to defeat a motion to dismiss on those grounds.

**1.     Plaintiff Rachel Miller has standing.**

The Secretary's argument that Plaintiff Miller lacks standing because she does not allege an actual injury ignores both the law and the allegations in the Complaint itself. The actual-injury element of standing is meant "to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). The Complaint establishes Miller's direct stake: she "will suffer serious, irreparable injury" as a result of the Ballot Order Statute, as her vote for Democratic candidates in the 2020 election "will be diluted relative to the votes for Republican Party candidates" and her efforts "to help elect Democratic Party candidates in Texas" will be made more difficult. Compl. ¶ 13.

The Secretary attempts to reframe the Complaint as alleging that Miller's preferred candidates are less likely to be elected, a harm the Secretary argues is insufficient to confer standing. *See* Mot. at 8-9. This ignores that vote dilution is an actual injury by itself. *See Bush v. Gore*, 531 U.S. 98, 104-05 (2000) ("It must be remembered that the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."). The fact that Miller's preferred candidates are less likely to be elected is merely a *result* of that injury. The Secretary also argues that, regardless, vote

dilution does not apply because Miller's vote was "neither devalued nor wasted." Mot. at 10. But the Complaint sufficiently alleges otherwise, stating that the Ballot Order Statute results in Republican candidates receiving an arbitrary bump in each election. *See, e.g.*, Compl. ¶ 55. That translates to an arbitrary bump in the value of each vote cast for that candidate. And an arbitrary bump in each vote cast for a Republican candidate means the arbitrary dilution of each vote cast for his or her Democratic opponent. Because Miller sufficiently alleges vote dilution, she sufficiently alleges an actual injury to establish standing.

The Secretary also challenges Miller's allegation that she is injured by the need to expend additional resources and effort as a result of the Ballot Order Statute, claiming that she is simply "manufactur[ing]" standing by expending resources tied to "an alleged harm that does not itself qualify as an injury in fact." Mot. at 9. But, as established above, the underlying harm of vote dilution itself qualifies as an injury in fact, so Miller has no reason to manufacture any additional harm. And even if she had not alleged vote dilution, her allegation of diversion of resources is itself an injury that establishes standing at this stage in the litigation. *See Lee v. Va. State Bd. of Elections*, 155 F. Supp. 3d 572, 579 (E.D. Va. 2015), *on reconsideration*, No. 3:15CV357-HEH, 2016 WL 6921611 (E.D. Va. Feb. 2, 2016) (finding plaintiffs' allegation "that as a result of Virginia's voter ID law and the long wait times to vote, they will be required to expend additional resources and effort" sufficient to overcome motion to dismiss for lack of standing).

Because both of Miller's injuries are caused by the arbitrary advantage the Ballot Order Statute gives Republican candidates, a decision finding the Statute unconstitutional would redress those injuries. Multiple other courts have explicitly recognized as much in the ballot order context in particular. *See, e.g.*, *McLain* 637 F.2d at 1167 (finding ballot order statute operated at "expense of . . . voters" who support candidates disadvantaged by statute); *Jacobson*, 2019 WL 6044035, at

*5 (finding individual plaintiffs had standing to challenge ballot order statute that unduly burdened their right to vote by giving arbitrary advantage to candidates of one political party); *Graves*, 946 F. Supp. at 1579 (finding ballot order statute's vote-dilution effect injured voters); *Gould*, 14 Cal. 3d at 672 (relying on Supreme Court precedent to find that incumbent-first statute "substantially dilutes the weight of votes of those supporting nonincumbent candidates").

**2.      The TDP, DNC, DSCC, and DCCC have standing.**

**a.      The Committee Plaintiffs have organizational standing.**

The TDP, Democratic National Committee ("DNC"), DSCC, and DCCC (together, the "Committee Plaintiffs") also satisfy each of the requirements for Article III standing, and the Secretary's argument that they, too, allege no cognizable injury is meritless. The Supreme Court has long recognized that a direct organizational injury is cognizable in two ways: (1) a diversion of organizational resources to identify or counteract the allegedly unlawful action, or (2) frustration of the organization's mission. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). And the Fifth Circuit has affirmed that "an organization may establish injury in fact by showing that that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its 'activities—with the consequent drain on the organization's resources." *N.A.A.C.P. v. City of Kyle, Tex*., 626 F.3d 233, 238 (5th Cir. 2010) (quoting *Havens Realty Corp*., 455 U.S. at 379).

Committee Plaintiffs allege *both* injuries. The Ballot Order Statute frustrates their missions "to elect local, state, and national candidates of the Democratic Party" to federal and state office in Texas. Compl. ¶¶ 14-17. Additionally, each has diverted resources to combat the Ballot Order Statute's effect. These funds would otherwise go to the mission-critical, "specific projects" identified in the Complaint, Mot. at 12, such as facilitation of Get Out The Vote Programs and, in

the case of DNC, DSCC, and DCCC, supporting candidates in other states. *Id.* ¶¶ 14-17. These allegations amply establish standing, and the Court must accept them as true at this stage. *See Lujan*, 504 U.S. at 561.

### b. The Committee Plaintiffs have associational standing.

Committee Plaintiffs also have associational standing to assert the interests of their members. Under well-settled precedent, an organization can bring suit on behalf of its members when "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *TDP v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

The Secretary argues that Committee Plaintiffs do not have standing because they have failed to identify a specific member who has been injured by the Ballot Order Statute, but this ignores the vast body of precedent finding such identification unnecessary. Each Plaintiff need only allege that "its members, or any one of them," have standing, *Warth v. Seldin*, 422 U.S. 490, 512 (1975), and in the voting rights context "political parties have standing to assert, at least, the rights of its members who will vote in an upcoming election." *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016) (citing *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1078-79 (N.D. Fla. 2004)). "That [i]s so even [when] the political party c[an] not identify specific voters that would be affected; it is sufficient that some inevitably would." *Id.*; *see also Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) ("We are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing."); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004)

15

(holding political party had associational standing to assert rights of supporters who will vote in coming election, despite failure to identify specific voter that would be harmed; that some would be harmed was "inevitable"); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 422 (E.D. Mich. 2004) ("[P]olitical parties and candidates have standing to represent the rights of voters.").

The Complaint establishes that TDP, DNC, DSCC, and DCCC are committees of the Democratic Party, as defined by 52 U.S.C. §§ 30101(14)-(15), and each has the mission of electing candidates of the Democratic Party, including specifically in races that will be on the 2020 general election ballot. Compl. ¶¶ 14-17. As the federally-recognized committees of the state and national Democratic Party, they have representational standing to sue in the place of their voters and supporters, which include all Texas voters who intend to support Democratic candidates in 2020. And while Plaintiffs are not required to identify a single individual who will be impacted, Rachel Miller is such a voter. *Id*. ¶ 13. Accordingly, Plaintiffs have exceeded their burden in pleading associational standing.

Committee Plaintiffs also have standing because the candidates they support have standing. In *Benkiser*, the Fifth Circuit held that because Democratic candidate Nick Lampson had standing to assert a claim, the State Party had associational standing on his behalf. 459 F.3d at 586-87; *see also id.* at 588 ("Lampson's interests are fully represented by the TDP; after the primary election, a candidate steps into the shoes of his party, and their interests are identical.").

Finally, the Secretary's assertion that Plaintiffs must show that the Ballot Order Statute "will be outcome determinative in any particular race" to satisfy Article III's injury-in-fact requirement, Mot. at 12, has no basis in law. Plaintiffs are not aware of a single case holding that a constitutional voting rights challenge must predict the loss of an upcoming election to sufficiently plead an injury in fact. Any such requirement would significantly limit the availability of injunctive

relief, forcing voting rights plaintiffs to suffer through and then attempt to undo past unconstitutional elections, which would, in the election context, cause "grievous and irreparable" injury. *See Mills v. Green*, 159 U.S. 651, 652 (1895). Such a requirement would also run contrary to *Ex Parte Young*, which permits prospective relief in this context. *See supra* at III.B.2.

### 3.    The Secretary's "statutory standing" argument has no merit.

The Secretary finally contends that Section 1983 does not permit Committee Plaintiffs to challenge the Ballot Order Statute as burdening the right to vote because organizations do not have the right to vote. This is decidedly not the law.

The Secretary relies on *Danos v. Jones*, 652 F.3d 577 (5th Cir. 2011), to support her position, but that case considers the standing of an *individual* seeking to assert third-party standing on behalf of a federal judge under 28 U.S.C. § 752, a statute governing the appointment of law clerks and secretaries. That holding has no application to this case, where the Committee Plaintiffs have established direct and associational standing. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996) (under associational standing, "an organization may sue to redress its members' injuries, even without a showing of injury to the association itself"); *Warth*, 422 U.S. at 511 ("Even in the absence of injury to itself, an association may have standing solely as the representative of its members."); *Nat'l Treasury Employees Union v. U.S. Dep't of Treasury*, 25 F.3d 237, 241 (5th Cir. 1994) ("[A]n association may have standing solely as the representative of its members, even in absence of injury to itself."); *Veasey v. Perry*, 29 F. Supp. 3d 896, 905 (S.D. Tex. 2014) ("Here, the successful assertion of associational standing (both organizational and representational) fulfills prudential standing concerns and obviates the need to apply concepts of third-party standing as to the associations.").[4]

---

[4] Even if *Danos* could stand for the point the Secretary suggests, its "statutory standing" limitation would only apply to the statute at issue there. *See Sierra Club v. Morton*, 405 U.S. 727, 732 (1972).

D.      **This case is justiciable, and *Rucho* does not counsel otherwise.**

The Secretary's argument that the Court should find this case nonjusticiable based on the

Supreme Court's decision in *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), must be rejected.

To find otherwise would ignore the clear language of *Rucho* itself, as well as over a half century

of case law adjudicating claims that are nearly identical to those Plaintiffs raise in this case.

*Rucho* held that partisan gerrymandering claims present political questions beyond the

reach of federal courts. *See id*. at 2491. It cannot be read to support the Secretary's expansive

suggestion that *all* elections-related claims with political ramifications are suddenly non-

justiciable. *See* Mot. at 16. This was hardly an oversight on the Supreme Court's part. The opinion

explicitly states that non-justiciability is the exception, not the rule, and that partisan

gerrymandering claims present the "rare circumstance" in which "the absence of a constitutional

directive or legal standards" to guide the courts rendered the claims non-justiciable. *Rucho*, 139 S.

Ct. at 2508.

As the *Rucho* Court explained, the "basic reason" claims of "excessive partisanship in

districting" have proven "difficult to adjudicate" is because federal law tolerates some amount of

partisanship in districting. *Id*. at 2491, 2497. Thus, the "'central problem'" presented by partisan

gerrymandering cases "is not determining whether a jurisdiction has engaged in partisan

gerrymandering" but rather "'determining when political gerrymandering has gone too far.'" *Id*.

at 2497 (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 296 (2004)).

The same cannot be said for ballot order laws. Any contention that the design of the ballot

is an inherently partisan activity would contradict federal law. *See, e.g.*, *Timmons v. Twin Cities

Area New Party*, 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as

forums for political expression."); 52 U.S.C. § 20981(a) ("Help America Vote Act") (noting "the

goal of promoting methods of voting and administering elections which . . . [are] nondiscriminatory and afford each registered and eligible voter an equal opportunity to vote and to have that vote counted").[5] Outside the redistricting context, states are generally forbidden from discriminating based on political views. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203 (2008) ("If [partisan] considerations had provided the only justification for a photo identification requirement, we may also assume that [the voter-identification law] would suffer the same fate as the poll tax at issue in *Harper*."); *Carrington v. Rash*, 380 U.S. 89, 94 (1965) ("'Fencing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible."). Contrary to the Secretary's suggestion, this case does not ask the Court to decide *how much* of an arbitrary advantage built into the ballot is constitutionally permissible, but rather whether the award of such an arbitrary advantage is constitutional at all.

While partisan gerrymandering claims have been in search of a manageable legal standard for decades, *see Rucho*, 139 S. Ct. at 2491, 2497, courts have ably adjudicated ballot order cases for even longer. *See, e.g.*, *McLain*, 637 F.2d 1159; *Sangmeister v. Woodard*, 565 F.2d 460 (7th Cir. 1977); *Graves*, 946 F. Supp. 1569; *Netsch v. Lewis*, 344 F. Supp. 1280 (N.D. Ill. 1972); *Kautenburger v. Jackson*, 333 P.2d 293 (Ariz. 1958); *Gould*, 536 P.2d 1337; *Akins v. Sec'y of State*, 904 A.2d 702 (N.H. 2006); *Holtzman v. Power*, 313 N.Y.S.2d 904 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (1970). For the past 30 years, federal courts have done so using the *Anderson-Burdick* test, without jurisprudential incident. *See, e.g.*, *Jacobson*, 2019 WL 6044035, at *11; *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 716 (4th Cir. 2016); *Graves*, 946 F. Supp. at 1578. Even the Supreme Court has ruled on a ballot order challenge, indicating it too was

---

[5] The Secretary implicitly recognizes this, noting that the Ballot Order Statute is justified by "non-partisan interests," Mot. at 16, rather than arguing that the State is entitled to advance partisan interests in designing the ballot.

19

unconcerned with federal courts' ability to evaluate the constitutionality of such laws. *See Mann*, 398 U.S. at 955 (summarily affirming ruling that ballot-ordering system giving one category of candidates a systemic advantage constituted "a purposeful and unlawful invasion of [the] plaintiffs' Fourteenth Amendment right to fair and evenhanded treatment"); *Jacobson*, 2019 WL 6044035, at *3 (finding *Mann's* summary affirmance "alone compel the conclusion that Plaintiffs' claims are justiciable."). Thus, unlike the partisan gerrymandering claims at issue in *Rucho*, the inquiry here does not require the creation of a new standard. *See Rucho*, 139 S. Ct. at 2505 (questions involving "matters of degree" are permissible so long as there are "constitutional . . . provisions" or "common law" decisions "confining and guiding the exercise of judicial discretion"); *Jacobson*, 2019 WL 6044035, at *4 ("This case asks this Court to apply nothing more than 'basic equal protection principles' . . . and is therefore justiciable under any fair reading of *Rucho*.").

Nothing in *Rucho* even hints that the Supreme Court had the intention of insulating from judicial review all elections laws that favor one political party over the other. If the Secretary is correct, then there is nothing to stop Texas from announcing, for example, that only Republican voters may cast their ballots early, or that the votes of Republican voters will count 1.5 times more than Democratic voters. This would be an absurd and plainly unconstitutional result. The Court should reject the Secretary's argument that this case presents a non-justiciable political question.

**E.      Plaintiffs state claims upon which relief may be granted.**

Plaintiffs have alleged sufficient facts, accepted as true, to demonstrate constitutional violations, and the Court should reject the Secretary's arguments to the contrary.

    **1.**       **Plaintiffs sufficiently plead a burden on their right to vote.**

      **a.**      **Plaintiffs' claims are evaluated under Anderson-Burdick.**

As an initial matter, the Secretary's assertion that Plaintiffs' claims should not be evaluated under the now-familiar *Anderson-Burdick* test is plainly wrong. *See* Mot. at 16-18. The Secretary cites no persuasive, much less controlling, support for this position. Indeed, the two ballot order cases the Secretary does cite, *Libertarian Party of Virginia*, 826 F.3d 708, and *New Alliance Party v. New York State Board of Elections*, 861 F. Supp. 282, 295 (S.D.N.Y. 1994), were both decided under *Anderson-Burdick*. *See Alcorn*, 826 F.3d at 716-17; *New All. Party*, 861 F. Supp. at 294-95. The same appears to be true of every federal case concerning ballot order since 1992, when the Supreme Court decided *Burdick v. Takushi*, 504 U.S. 428 (1992). The Secretary provides no basis for finding that all of these courts have used the wrong approach, nor could she: ballot order statutes, like "[e]ach provision of a[n election] code, 'whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends,'" *Id*. at 433 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). As such, *Anderson-Burdick* is the correct test to apply.

      **b.**      **Plaintiffs allege cognizable First and Fourteenth Amendment claims.**

The Secretary then makes two fundamental errors, both of which are fatal to her argument that the Court should dismiss the Complaint. First, the Secretary ignores that *Anderson-Burdick* is a balancing test, under which the court must first determine the severity of the burden imposed by the challenged law and then weigh that burden against the interests that the state asserts to justify the burden, *Crawford*, 553 U.S. at 191 (controlling op.), and that the first part of this inquiry is largely a factual question. *See, e.g.*, *Ariz. Green Party v. Reagan*, 838 F.3d 983, 989 (9th Cir. 2016). Rather, she proceeds as if Plaintiffs will be unable to prove that the Statute provides

anything more than a "*de minimis*" injury, requiring "relaxed scrutiny." Mot. at 18. This analysis flips the motion to dismiss standard on its head, viewing the facts in the light most favorable to *the Secretary* rather than *Plaintiffs*. *See Martin K. Eby Const. Co.*, 369 F.3d at 467.

The Secretary also ignores the Supreme Court's admonition that "[h]owever slight" the injury to a plaintiff's fundamental rights "may appear," to survive challenge a law must still "be justified by relevant and legitimate state interest 'sufficiently weighty to justify the limitation.'" *Crawford*, 553 U.S. at 191 (controlling op.) (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)). There is no "litmus" test under which certain types of laws are immune from scrutiny; courts must evaluate plaintiffs' specific injuries due to the challenged law, the specific justifications the State offers for the law, and whether the law advances those interests sufficiently to justify the injuries to the plaintiffs' rights. *Id.* at 190. In conducting this analysis when considering challenges to similar ballot order laws brought by similarly situated parties, courts have repeatedly found allegations such as Plaintiffs' sufficient, not only to overcome a motion to dismiss, but to establish a constitutional violation. *See*, *e.g.*, *Jacobson*, 2019 WL 6044035, at *24-25; *Graves*, 946 F. Supp. at 1582. Cases decided prior to the Supreme Court's development of the *Anderson-Burdick* test urge the same result. *See, e.g.*, *Mann*, 398 U.S. at 955; *McLain*, 637 F.2d at 1167. Indeed, Plaintiffs' counsel is not aware of a single challenge brought by a similarly situated party finding a law like Texas's either nonjusticiable from the outset, or constitutional.

The cases the Secretary cites are all distinguishable. In the first category are those in which minor party, independent, or write-in candidates brought challenges to tiered systems that put major party candidates at the top of the ballot and relegated non-similarly situated candidates to tiers printed lower down on the ballot. *See Meyer v. Texas*, No. H-10-cv-3860, 2011 WL 1806524 (S.D. Tex. May 11, 2011) (write-in candidate); *Bd. of Election Comm'rs of Chi. v. Libertarian*

*Party of Ill.*, 591 F.2d 22, 23 (7th Cir. 1979) (minor political party). A state's differential treatment of candidates who are not similarly situated to the major party candidates in order to facilitate election administration and minimize voter confusion is supported by Supreme Court precedent. *See Timmons*, 520 U.S. at 367 (allowing states to "enact reasonable election regulations that may, in practice, favor the traditional two-party system"). The same cannot be said about systemic differential treatment of the candidates of major political parties to the consistent advantage of one major political party, its candidates, and the voters who support it, and to the consistent prejudice of the other. The Secretary does not dispute that the Democratic Party or its candidates are similarly situated to Republicans, nor could it. These cases, therefore, have no application here.

  *Clough v. Guzzi*, 416 F. Supp, 1057 (D. Mass. 1976), is also inapposite, for at least three reasons. *First*, and most importantly, *Clough* was decided following a merits hearing, *id.* at 1060, and thus provides no support for rejecting Plaintiffs' claims on a motion to dismiss. *Second*, the statute in *Clough* involved a unique system that placed incumbents first and designated them as such, *id.* at 1068, and the *Clough* court found that the "plaintiff [had] not proved a substantial advantage inherent in first ballot position alone" because the evidence presented did not uncouple any benefit from being first position from the benefit of being designated an incumbent. *Id.* at 1066. Such concerns are not relevant here. *Cf. McLain*, 637 F.2d at 1167 (distinguishing *Clough* as "involv[ing] evidentiary considerations which do not apply here"). *Third*, Texas's Ballot Order Statute does not help voters identify any incumbents except perhaps, implicitly, the Governor, and even that is not always true. Thus, *Clough* provides no support for finding that the system here does not significantly burden Plaintiffs' rights, particularly at this stage in the proceedings.

  Finally, none of the interests the Secretary provides justify the Ballot Order Statute *as a matter of law*. The Secretary identifies the state's interests in (1) preventing gamesmanship; (2)

avoiding voter confusion; (3) making voting easier; and (4) ease of administration. Mot. at 19-21. Whatever the factual merit of these purported interests (and Plaintiffs submit that *none* will prove to justify the favoritism of the Ballot Order Statute), there is no world in which their mere invocation at the motion to dismiss stage requires dismissal of Plaintiffs' complaint. *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767-68 (5th Cir. 2019) (reversing district court that subjected plaintiff's allegations to "rigorous factual and evidentiary analysis" on motion dismiss because "[a]t this stage of the proceedings, a plaintiff need only plausibly allege facts going to the ultimate elements of the claim"). Arguing the merits of the state's interests is more appropriate in a motion for summary judgment, or at trial. *Id.* at 767.

### 2.    Plaintiffs sufficiently plead an equal protection violation.

Plaintiffs are not required to allege intentional discrimination for their equal protection claim, contrary to the Secretary's assertion. *See* Mot. at 22. The Equal Protection Clause mandates "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Plaintiffs plausibly allege arbitrary distinctions between similarly situated voters and parties. *See* Compl. ¶ 55 ("Texas's Ballot Order Statute treats one of the two major (and similarly situated) political parties—and its candidates, members, constituencies, and the voters and organizations who support it—differently from the other major political party, giving one an unfair and arbitrary electoral advantage . . . ."). These allegations require an examination of the State's justifications "to determine whether the challenged statutory scheme violates equal protection." *Obama for Am. v. Husted*, 697 F.3d 423, 432 (6th Cir. 2016).

While the Secretary incorrectly relies on the traditional rational basis test to evaluate Plaintiffs' equal protection claim, Mot. at 22, *Anderson-Burdick* also applies here. "When a plaintiff alleges that a state has burdened voting rights through the disparate treatment of voters, we review the claim using the 'flexible [*Anderson-Burdick*] standard.'" *Obama for Am.*, 697 F.3d

at 429-30 (rejecting the argument that a rational basis standard of review applies to an equal protection violation in the voting rights context); *see also Clements v. Fashing*, 457 U.S. 957, 965 (1982) (rejecting the assertion that traditional equal protection principles should automatically apply in the voting rights context "without first examining the nature of the interests that are affected and the extent of the burden"). As above, *see supra* at Section III.3.1.a, *Anderson-Burdick* is a largely factual inquiry inappropriate for resolution on a motion to dismiss.

## IV.   CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court deny the Secretary's motion to dismiss, ECF No. 33, as to all counts.


Dated: December 31, 2019.                    Respectfully submitted,

                                             /s/ *Skyler M. Howton*

                                             Skyler M. Howton
                                             PERKINS COIE LLP
                                             500 North Akard St., Suite 3300
                                             Dallas, TX 75201-3347
                                             Telephone: (214) 965-7700
                                             Facsimile: (214) 965-7799
                                             showton@perkinscoie.com

                                             Marc E. Elias*
                                             Elisabeth C. Frost*
                                             John M. Geise*
                                             PERKINS COIE LLP
                                             700 Thirteenth St., N.W., Suite 600
                                             Washington, D.C. 20005-3960
                                             Telephone: (202) 654-6200
                                             Facsimile: (202) 654-9959
                                             melias@perkinscoie.com
                                             efrost@perkinscoie.com
                                             jgeise@perkinscoie.com

                                             Abha Khanna*
                                             PERKINS COIE LLP

1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

Gillian Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA  90067-1721
Telephone: (310) 788-3245
Facsimile: (310) 843-1244
gkuhlmann@perkinscoie.com

*Counsel for the Plaintiffs*
*Admitted Pro Hac Vice*

Chad W. Dunn, TX# 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Plaintiff Texas Democratic Party*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 31, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/  *Skyler M. Howton*