# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>*Defendant*. | CIVIL ACTION NO. 1:19-cv-01071 |

**THE TEXAS SECRETARY OF STATE'S REPLY
IN SUPPORT OF HER MOTION TO DISMISS**

TABLE OF CONTENTS

Table of Contents .................................................................................................................................. ii
I.      The Secretary of State Is Not a Proper Defendant ......................................................... 1
II.     Plaintiffs Lack Standing to Challenge the Ballot Order Statute ..................................... 3
        A.      Miller Has Not Alleged an Injury in Fact ............................................................ 3
        B.      The Committee Plaintiffs Lack Article III Standing ......................................... 5
        C.      The Committee Plaintiffs Lack Statutory Standing ........................................... 6
III.    The Political Question Doctrine Bars Consideration of Plaintiffs' Claims ................... 7
IV.    The Ballot Order Statute Is Constitutional ....................................................................... 8
V.     Plaintiffs Are Not Entitled to Relief .................................................................................. 10
Conclusion ............................................................................................................................................ 10

I.      **The Secretary of State Is Not a Proper Defendant**

Plaintiffs cannot sue the Secretary without identifying what she does to cause their asserted injuries and what she could do differently to redress them. MTD 3–8. Their Response fails to do so.

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019), applied sovereign immunity because, although the defendant could enforce the challenged statute, *id.* at 998, he was not "likely to do" so, *id.* at 1002. Here, the Secretary is not only unlikely but also unable to enforce the Ballot Order Statute. MTD 3–4. Plaintiffs offer four responses. First, they focus on the Secretary's role as "chief election officer," Resp. 10, but that title is not "a delegation of authority to care for any breakdown in the election process." *Bullock v. Calvert*, 480 S.W.2d 367, 372 (Tex. 1972) (narrowly interpreting "chief election officer"). Second, Plaintiffs highlight the Election Code provision for "obtain[ing] and maintain[ing] uniformity." Resp. 11. But that establishes the goal the Secretary pursues, not the powers she has to do so. MTD 4–5. Third, Plaintiffs cite one of the Secretary's Election Advisories, Resp. 11, but it merely points local officials to the Ballot Order Statute: "The order of statewide, district, county, and precinct offices on the ballot and the order of parties on the ballot are governed by Sections 52.091 and 52.092 of the Code." Election Advisory No. 2018-26, https://www.sos.state.tx.us/elections/laws/advisory2018-26.shtml. Fourth, they cite *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017), but "[s]overeign immunity ha[d] no role to play" there because of abrogation.

But even if the Secretary did enforce the Ballot Order Statute, *Ex parte Young* would only allow this Court to prohibit such enforcement. It would not authorize an injunction requiring the Secretary to affirmatively use her authority as a State officer. MTD 6. In response, Plaintiffs cite cases that did not consider the argument made here. Thus, they are not precedent for Plaintiffs' position. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011).[1]

---

[1] That those cases do not discuss this issue is not surprising. *Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Parish*, 756. F.3d 380 (5th Cir. 2014), and *Culliton v. Bd. of Election Comm'rs of DuPage Cty.*, 419 F. Supp.

Plaintiffs' standing argument also fails. Offering no limiting principle, Plaintiffs read *OCA-Greater Houston* to grant standing to any plaintiff to sue the Secretary over any Election Code provision merely because she is the "chief elections officer." Resp. 9. Such a broad rule would contradict other Fifth Circuit precedent. In *City of Austin*, for example, the district court relied on the Attorney General's status as "the chief law enforcement officer of the state." 325 F. Supp. 3d 749, 755 (W.D. Tex. 2018). But the Fifth Circuit reversed. Giving the title no weight, the court instead analyzed the likelihood of enforcement. *See* 943 F.3d at 1003 (finding "it's unlikely the City had standing" because there was no "significant possibility" of future enforcement). And in *Okpalobi v. Foster*, the panel relied on the Governor's role as "chief executive officer," 190 F.3d 337, 346 (5th Cir. 1999), but the en banc court gave that title no weight when it reached the opposite result. 244 F.3d 405, 426–27 (5th Cir. 2001) (en banc); *see also LULAC v. Edwards Aquifer Auth.*, No. 5:12-cv-620, 2014 WL 12495605, at *5–6 (W.D. Tex. Mar. 31, 2014) (finding plaintiffs lacked standing to sue the Secretary of State, despite her status as the "chief election officer," for voting-rights claims).

Fortunately, *OCA-Greater Houston* provides its own limiting principle: It applies, at most, when there is "no private right of action." 867 F.3d at 613 (distinguishing *Okpalobi*); MTD 7 n.3. Local officials implement the Ballot Order Statute, and it is enforced against them only through a private right of action. MTD 4. That Plaintiffs cannot bring an election contest is irrelevant. Resp. 9.

In the end, Plaintiffs are not interested in preventing the Secretary's "enforcement." They need a judgment binding local officials, but their suggestion that a judgment against the Secretary would

---

126 (N.D. Ill. 1976), did not involve sovereign immunity because the defendants were local officials. Resp. 11. Other cases involved mandatory injunctions that could have been easily restated as prohibitory injunctions, meaning there was little reason to litigate the issue. For example, if a defendant had an independent obligation to prepare ballots, an injunction mandating the preparation of permissible ballots would be very similar to an injunction prohibiting the preparation of impermissible ballots. The formal distinction might have little, if any, practical effect. Here, by contrast, the Secretary is not otherwise obligated to prepare ballots, so an injunction mandating official action would *not* be practically equivalent to a prohibitory injunction.

2

accomplish that indirectly is ill founded. Resp. 10. Local officials are not "in active concert or participation with" the Secretary. FED. R. CIV. P. 65(d)(2). They are elected or appointed locally and are not "subject to [the Secretary's] control." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945). Regardless, a plaintiff cannot use non-parties within the scope of Rule 65 to satisfy *Ex parte Young* or standing requirements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring traceability to "the defendant"); *Ex parte Young*, 209 U.S. 123, 157 (1908) (requiring that the "party defendant . . . have some connection with the enforcement of the act").

## II. Plaintiffs Lack Standing to Challenge the Ballot Order Statute

### A. Miller Has Not Alleged an Injury in Fact

Plaintiffs disclaim any effort to establish standing through election outcomes. Resp. 12–13. Instead, they argue Miller is injured by (1) vote dilution and (2) election-related expenditures. *Id.*

Vote Dilution: The Secretary previously explained that "Miller's vote is neither devalued nor wasted." MTD 10. Plaintiffs argue they "allege[d] otherwise" by "stating that the Ballot Order Statute results in Republican candidates receiving an arbitrary bump." Resp. 13. According to Plaintiffs, "[t]hat translates to an arbitrary bump in the value of each vote cast for that candidate," which "means the arbitrary dilution of each vote cast for his or her Democratic opponent." *Id.*

Plaintiffs' theory fails as a matter of law. Vote dilution makes one vote less valuable than another. It would occur if a State gave "the votes of citizens in one part of the State . . . two times, or five times, or 10 times the weight of votes of citizens in another part of the State"—or if a State achieved the same "effect" by "giv[ing] the same number of representatives to unequal numbers of constituents." *Reynolds v. Sims*, 377 U.S. 533, 562–63 (1964). But Plaintiffs do not allege facts showing vote devaluation. Each vote counts exactly the same. There is no "bump in the value of each vote cast for" any candidate or party. Resp. 13. Allegations that ballot order affects voter choices are irrelevant to vote dilution. All votes are counted equally, including the votes of people supposedly swayed by

3

ballot order. Plaintiffs object to the choices other voters make, not the value their votes are given.

Election-Related Expenditures: The Ballot Order Statute allegedly causes Miller to spend "more time and resources to achieve her mission"—"to elect Democratic Party candidates." Compl. ¶ 13; *see also* Resp. 13 (arguing Miller's "allegation of diversion of resources is itself an injury that establishes standing"). But "a self-inflicted budgetary choice . . . cannot qualify as an injury in fact." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) (quotation omitted). That is why the Supreme Court has held that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). The expenditure of resources to avoid a non-injury is itself a non-injury.

Plaintiffs admit that they have not alleged an injury in fact based on the Ballot Order Statute's supposed effect on electoral outcomes. Resp. 12–13. Thus, Miller's efforts to offset that effect—whatever it may be—cannot be an injury in fact. In *National Treasury Employees Union v. United States*, 101 F.3d 1423 (D.C. Cir. 1996), a union challenged the Line Item Veto Act. Because of the Act, the union "increased expenditure of funds . . . to achieve [its] organizational mission of improving the terms of employment for government workers." *Id.* at 1430. According to the union, the Act gave the President increased influence and required it to "expend[] more money lobbying the President." *Id.* But the court found no standing. Because the union could not establish whether the President would ever use such increased influence to affect its mission, the court was "unsure whether [the union's] additional expenditure of funds is truly necessary to improve the working conditions of government workers or rather is unnecessary alarmism constituting a self-inflicted injury." *Id.*

Here, Plaintiffs have not plausibly alleged that the Ballot Order Statute would cause any Democratic candidate to lose an election. MTD 13. Indeed, they disclaim any effort to establish such a fact. Resp. 12–13. Thus, their expenditures are self inflicted.

4

## B. The Committee Plaintiffs Lack Article III Standing

The Secretary's motion to dismiss argued that the Committee Plaintiffs cannot establish associational standing without "identify[ing] members who have suffered the requisite harm." MTD 11 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)). Plaintiffs do not dispute their failure to identify members. They consider "such identification unnecessary." Resp. 15.

Binding precedent says otherwise. In *Summers*, the Supreme Court "required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm." 555 U.S. at 499. The dissent would have "accept[ed] the organization's self-description of the activities of its members" and "a statistical probability that some of those members are threatened with concrete injury." *Id.* at 497. But the majority rejected that approach because the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities." *Id.* at 498–99. Even when "it is certainly possible—perhaps even likely—that one" member would have standing, "that speculation does not suffice." *Id.* at 499. Similarly, in *NAACP v. City of Kyle*, the Fifth Circuit found no associational standing because the NAACP had not established that "a specific member of the NAACP has been" injured. 626 F.3d 233, 237 (5th Cir. 2010). "[E]vidence suggesting, in the abstract, that some minority members may be" injured was "insufficient." *Id.*

Contrary to Plaintiffs' suggestion, these cases apply "in the voting rights context." Resp. 15; *see N.C. State Conference of NAACP v. N.C. State Bd. of Elections*, 283 F. Supp. 3d 393, 402 n.6 (M.D.N.C. 2017). They also apply at the pleading stage. MTD 11.

Plaintiffs do not allege Miller, the only voter identified in the Complaint, is a member of the other Plaintiffs. MTD 11–12. In response, Plaintiffs argue only that Miller is a "voter[] who intend[s] to support Democratic candidates in 2020." Resp. 16. That is not "indicia of membership." MTD 11.[2]

---

[2] *Texas Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006), found associational standing based on an identified candidate who "step[ped] into the shoes of" the TDP "after the primary election." *Id.* at

5

The Committee Plaintiffs also lack organizational standing. MTD 12–13. Worried that "[t]he Ballot Order Statute frustrates their missions to elect" Democrats, Plaintiffs "divert[] resources to combat the Ballot Order Statute's effect." Resp. 14 (quotation omitted). This argument fails.

First, Plaintiffs have not established that the Ballot Order Statute impairs their mission because they have not plausibly alleged that the law would cause any Democratic candidate to lose an election. MTD 12–13; *see also supra* Part II.A. Plaintiffs argue that other cases have recognized standing without requiring a voter to "predict the loss of an upcoming election." Resp. 16. Of course, many plaintiffs would have such standing insofar as the right to vote is a cognizable interest regardless of whether a voter's preferred candidate wins. But the Committee Plaintiffs do not have voting rights. MTD 14. That is why they rely on their interest in electing Democrats. Resp. 14. When a plaintiff claims to be protecting an interest in electing Democrats, a plausible allegation that the challenged statute would prevent the election of at least one Democrat is not too much to ask.

Second, Plaintiffs do not explain how they can satisfy the *City of Kyle* requirements for organizational standing. They have neither alleged that their reactions to the Ballot Order Statute "differ from [their] routine [political] activities" nor "identified any specific projects" put on hold. MTD 13 (quoting *City of Kyle*, 626 F.3d at 238). General references to activities "such as facilitation of Get Out The Vote Programs" and "supporting candidates in other states" do not suffice. Resp. 14–15.

C.     **The Committee Plaintiffs Lack Statutory Standing**

The Secretary previously argued the Committee Plaintiffs cannot rely on the rights of third parties to support their claims under § 1983. MTD 14–15. Plaintiffs do not dispute that their claims rely on the voting rights of third parties. Instead, they argue that § 1983 allows plaintiffs to assert the

---

588. Plaintiffs here have not identified any candidates, much less one who has won a primary election. Although their Response refers to "the candidates they support," Resp. 16, Plaintiffs' Complaint does not identify any, or even allege that Plaintiffs are currently supporting any 2020 candidates in Texas.

rights of third parties. Resp. 17 n.4. Binding precedent holds otherwise. *See Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999); *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986). Section 1983 "incorporates, but without exceptions, the Court's 'prudential' principle that the plaintiff may not assert the rights of third parties." David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45.

The Committee Plaintiffs also argue that the third-party doctrine does not apply because they "have established direct and associational standing." Resp. 17. The Committee Plaintiffs have not established either. But even if they had properly alleged their own *injuries* in fact to establish direct organizational standing under Article III, they would still lack statutory standing because they rely on the *rights* of third parties. To be sure, an organizational plaintiff does not trigger the bar on third-party claims when it relies on its own injury *and* its own rights. But here, the Committee Plaintiffs rely on third parties' rights.

A plaintiff relying on third parties' rights necessarily brings a third-party claim, even if the plaintiff can establish its own injury in fact. *See Conn*, 526 U.S. at 292–93; *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011). After all, the exceptions to the prudential version of the rule require, among other things, that the organization "have suffered an injury in fact." *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (quotation omitted). That would be nonsensical if a plaintiff asserting direct organizational injury were already categorically exempted from the rule against third-party claims.

### III.    The Political Question Doctrine Bars Consideration of Plaintiffs' Claims

Plaintiffs argue their claims are justiciable because the Court need not "decide how much of an arbitrary advantage . . . is constitutionally permissible, but rather whether the award of such an arbitrary advantage is constitutional at all." Resp. 19. That contradicts binding precedent: "To hold that legislators cannot take partisan interests into account when drawing district lines would essentially countermand the Framers' decision to entrust districting to political entities." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2497 (2019). The same is true for control over the ballot. The Framers gave that

power to political entities, and this Court cannot countermand that decision. Of course, no one argues "that *all* elections-related claims with political ramifications are suddenly nonjusticiable." Resp. 18. But this case is very similar to *Rucho*, even on Plaintiffs' own theory. If, as Plaintiffs argue, this is a vote-dilution case about partisan effects, it is equivalent to partisan gerrymandering.[3]

## IV. The Ballot Order Statute Is Constitutional

Plaintiffs seem to believe that at least eighteen States have unconstitutional ballot order laws. Like Texas, many States key ballot order to which party won the previous election for Governor or Secretary of State.[4] Others rely on which party received the most votes for a federal office or holds the majority in the state legislature.[5] One looks to the party that won the *fewest* votes in the preceding election, MINN. STAT. § 204D.13, and another always puts Democrats before Republicans, DEL. CODE tit. 15, § 4502(a)(5). States have had similar laws since the beginning of the modern ballot system.[6]

"[T]he formatting local officials use in preparing ballots" does not trigger *Anderson-Burdick* scrutiny. MTD 17. Plaintiffs respond that "[e]ach provision of a[n election] code . . . inevitably affects—at least to some degree—the individual's right to vote and his right to associate . . . ." Resp. 21 (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). That does not help them here.

Even if every election law is subject to the *Anderson-Burdick* framework in an appropriate case, not every claim triggers it. Whether *Anderson-Burdick* applies depends on the type of injury that

---

[3] The Secretary addresses partisan interests because, though she "believes the Ballot Order Statute is justified by non-partisan interests, . . . Plaintiffs argue otherwise." MTD 16; *see* Compl. ¶¶ 40–41; Resp. 19 n.5.
[4] ARIZ. REV. STAT. § 16-502(E); CONN. GEN. STAT. § 9-249a(a)(1); GA. CODE § 21-2-285(c); IND. CODE § 3-11-2-6(a)(1); MD. CODE ELEC. LAW §§ 1-101(dd), 9-210(j)(2); MICH. COMP. LAWS § 168.703; MO. REV. STAT. § 115.239(1); NEB. REV. STAT. § 32-815(1); N.Y. ELEC. LAW § 7-116(1); 25 PA. CONS. STAT. § 2963(b); TEX. ELEC. CODE § 52.091(b).
[5] TENN. CODE §§ 2-1-104(11)-(12), 2-5-208(d)(1); WASH. REV. CODE § 29A.36.161(4); W. VA. CODE § 3-6-2(c)(3); WIS. STAT. § 5.64(1)(b); WYO. STAT. § 22-6-121(a).
[6] Eldon Cobb Evans, *The History of the Australian Ballot System in the United States* 36 (1917), https://books.google.com/books?id=gWtDAAAAIAAJ (explaining that "[t]he model of the party-column type was the Indiana statute of 1889," which listed Democrats before Republicans).

Plaintiffs allege. For example, consider a law regulating the font used on ballots. A plaintiff alleging that the font is illegible might be able to bring an *Anderson-Burdick* claim on the theory that the illegible font makes it difficult to vote for his preferred candidate. But a claim alleging that the font is aesthetically displeasing would not trigger *Anderson-Burdick* scrutiny because the alleged injury has nothing to do with the ability to vote.

So too here. If Plaintiffs were complaining that the ballot order makes it difficult to vote for Democrats, then *Anderson-Burdick* scrutiny might be appropriate (though the claim would lose). But that is not Plaintiffs' theory. Plaintiffs complain ballot order convinces voters to associate with other candidates, not that it bars voters from associating with their preferred candidates. MTD 18.

Even under *Anderson-Burdick*, the Ballot Order Statute is constitutional. MTD 18–22. Instead of rebutting the State's interests in its Ballot Order Statute, Plaintiffs contend that the Secretary's arguments cannot be considered at the pleading stage. Resp. 21–24. The Fourth Circuit has explicitly rejected Plaintiffs' argument that the court "may not weigh [the State's] interests without discovery." *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 719 (4th Cir. 2016). That makes sense because the Secretary need not provide "elaborate, empirical verification of the weightiness of the State's asserted justifications." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997). Thus, courts in this Circuit frequently grant motions to dismiss *Anderson-Burdick* claims. *See, e.g.*, *LULAC v. Abbott*, 369 F. Supp. 3d 768, 781–84 (W.D. Tex. 2019); *Kennedy v. Pablos*, 2017 WL 2223056, at *3–5 (W.D. Tex. May 18, 2017); *Faas v. Cascos*, 225 F. Supp. 3d 604, 607 (S.D. Tex. 2016); *Meyer v. Texas*, 2011 WL 1806524, at *3–7 (S.D. Tex. May 11, 2011).

Plaintiffs concede that States can distinguish "major"-party candidates from "minor"-party and independent candidates. Resp. 22–23; Compl. ¶ 21 n.3. But the defining difference between major and minor parties is how many voters support them. Having conceded that States can order other parties based on popularity, Plaintiffs cannot complain about ordering the Republican and Democratic

9

parties on the same basis. Although parties may be "similarly situated" for some purposes, Resp. 23, parties that receive different numbers of votes are not similarly situated for ballot order. MTD 20.[7]

## V. Plaintiffs Are Not Entitled to Relief

On Plaintiffs' theory, they benefited from the Ballot Order Statute and waited decades to challenge it. MTD 1. Plaintiffs argue that their claims rely on "[r]ecent developments" and new "empirical methods." Resp. 3. But they alleged that the ballot-order effect has been "commonly known and accepted" for decades. MTD 23. Plaintiffs cannot have it both ways. They also argue "laches does not apply to claims for prospective injunctive relief." Resp. 5. Not so. *See, e.g.*, *Ancient Egyptian Arabic Order of Nobles of the Mystic Shrine v. Michaux*, 279 U.S. 737, 748–49 (1929); *White v. Daniel*, 909 F.2d 99, 102–03 (4th Cir. 1990). Although "undue prejudice . . . is normally inapplicable when the relief is prospective," *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1005 n.32 (5th Cir. 1981), this is not a normal case. Plaintiffs' delay has been so long that a lesser showing of prejudice suffices. MTD 23.

Plaintiffs suggest Miller's delay is excusable because she is unsophisticated, Resp. 6, but she has served "as a campaign manager, precinct chair for the county party, and board member of the Tarrant County Democratic Women's Club." Compl. ¶ 13. An experienced political operative challenging a decades-old law is not an "[o]rdinary citizen" ignorant of new statutes taking "effect in the midst of the [then-current] election cycle." *Nader 2000 Primary Comm., Inc. v. Hechler*, 112 F. Supp. 2d 575, 577, 579 n.2 (S.D. W. Va. 2000).[8]

## CONCLUSION

The Secretary respectfully requests that the Court dismiss Plaintiffs' Complaint.

---

[7] Plaintiffs assert that the *Anderson-Burdick* test applies equally to both of their claims. Resp. 24–25. If so, Count II should be dismissed or struck as redundant. *See* FED. R. CIV. P. 12(f).

[8] Plaintiffs argue the Secretary improperly cites "facts outside of the Complaint," Resp. 3 n.1, but she relies on the pleadings and judicially noticeable facts, both of which are appropriate at this stage. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court should not convert the Secretary's motion into one for summary judgment.

| | |
|---|---|
| Date: January 10, 2020 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | /s/ Patrick K. Sweeten<br>PATRICK K. SWEETEN<br>Associate Deputy for Special Litigation |
| JEFFREY C. MATEER<br>First Assistant Attorney General | TODD LAWRENCE DISHER<br>Deputy Chief, Special Litigation Unit |
| RYAN L. BANGERT<br>Deputy Attorney General for Legal Counsel | MATTHEW H. FREDERICK<br>Deputy Solicitor General |
| | WILLIAM T. THOMPSON<br>Special Counsel for Civil Litigation |
| | MICHAEL R. ABRAMS<br>Assistant Attorney General |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-076)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1414<br>Fax: (512) 936-0545<br>patrick.sweeten@oag.texas.gov<br>todd.disher@oag.texas.gov<br>matthew.frederick@oag.texas.gov<br>will.thompson@oag.texas.gov<br>michael.abrams@oag.texas.gov |
| | **COUNSEL FOR THE TEXAS SECRETARY OF STATE** |

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on January 10, 2020, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN