| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>*Defendant*. | CIVIL ACTION NO. 1:19-cv-01071 |

### THE TEXAS SECRETARY OF STATE'S RESPONSE TO PLAINTIFFS' OPPOSED MOTION FOR A LIMITED PROTECTIVE ORDER

Plaintiffs seek an advisory opinion about a discovery dispute that may never materialize. Given the accelerated schedule Plaintiffs successfully sought in this case, Defendant noticed a deposition of one of Plaintiffs' experts. Plaintiffs admit they "have no objection to" that deposition. *See* Pls.' Mot. for Limited Prot. Order 1, ECF No. 45. The parties disagree only about a hypothetical and contingent question: Are there any circumstances under which Defendant would be entitled to a second deposition of that expert?

Defendant does not currently plan to seek a second deposition. But Plaintiffs asked Defendant to expressly waive the right to seek a second deposition under *any* circumstances, including if the expert improperly provides "additional opinions" in his rebuttal report. Whether this hypothetical disagreement will ever ripen into an actual discovery dispute is speculative and cannot be properly resolved in this posture. Defendant respectfully requests that Plaintiffs' motion be denied.

### BACKGROUND

This lawsuit challenges Texas's Ballot Order Statute, which has been used in every Texas

general election since 1963, when a Democratic Legislature passed it. *See* Mot. Dismiss 2–3, ECF No. 33. Plaintiffs filed their case on November 1, 2019, and immediately sought to force a hurried trial schedule. Plaintiffs' early machinations included the filing of an Application for a Preliminary Injunction just seventeen days after their complaint, which they seemingly abandoned and offered to withdraw in exchange for a compressed four-month trial schedule. When Defendant declined their requests, the Court entered a more manageable, though compressed, discovery period and set the trial of this case in late July.[1] *See* Order, ECF No. 30.

Plaintiffs' efforts to rush these proceedings are not without purpose. Though this lawsuit was only recently filed in Texas, this case is not new to Plaintiffs. In fact, the same law firm, and many of the same attorneys, who filed this case on November 1, 2019, also litigated *Jacobson v. Lee*, No. 4:18-cv-262-MW/CAS, a case involving a similar Florida statute. The *Jacobson* litigation lasted eighteen months in the trial court from its filing to the decision issued by the court in November of 2019. Notably, the *Jacobson* case is on appeal, and the Eleventh Circuit heard oral argument last week.[2]

As the discovery in this case has progressed, Plaintiffs have indicated that they intend to rely

---

[1] Plaintiffs assert in their motion that they withdrew their preliminary injunction motion and assented to a scheduling order "based on confirmation by the Secretary's counsel that there was sufficient time to implement a remedy for the election if the Court had a trial in or before July." Mot. 3, ECF No. 45. Instead, at the November 22, 2019 hearing, the Court advised the parties it did not believe that it needed to conduct a hearing on a request for preliminary injunction, as the case could be disposed of within six months, and proposed that the "Plaintiff either withdraw the request for preliminary injunction, or I dismiss it without prejudice, and that you-all agree and prepare a proposed scheduling order that has the case ending no later than June the 30th of 2020." Hr'g Tr. 7:23–8:8. Plaintiffs' assertion also misstates what counsel conveyed to the Court at the November 22, 2019 hearing. In fact, counsel for Defendant stated that "late August is probably the – the best guess that we have right now" of when counties would print ballots for the 2020 election. *Id.* at 7:7–13. Further, counsel for Defendant advised the Court that the Secretary of State does not "direct the counties on how to prepare the ballots other than by citing the statute in this case." *Id.* at 6:13–15. Finally, as made clear by Defendant's Motion to Dismiss, filed on December 12, 2019, the Secretary of State does not enforce the Ballot Order Statute nor print the ballots at issue. ECF No. 33 at 4 ("Under Texas law, various local officials are charged with preparing ballots, depending on the type of election. *See* Tex. Elec. Code § 52.002. As a result, local officials implement the Ballot Order Statute. The Secretary does not.").
[2] *Jacobson v. Fla. Sec'y of State*, No. 19-14552 (Feb. 12, 2020), http://www.ca11.uscourts.gov/system/files_force/oral_argument_recordings/19-14552.mp3?download=1.

on five experts at trial. In turn, pursuant to the Scheduling Order entered by the Court, Defendant must serve her expert reports on April 3, 2020, and any rebuttal reports from Plaintiffs are due on April 24, 2020. ECF No. 30 at 2. The discovery deadline is May 15, 2020. *Id.* Thus, if Defendant were to wait to depose Plaintiffs' experts until all rebuttal reports have been submitted, she would have only three weeks to depose five experts located throughout the United States.

Mindful of the compressed deadlines and the need to conduct expeditious discovery, Defendant requested the deposition of *one* of Plaintiffs' five disclosed experts, Dr. Darren Grant, a Professor of Political Science at Sam Houston State University, for a date in mid-February. *See* Exhibit A at 10. Defendant's informal request for one deposition sparked multiple email exchanges between counsel. In those exchanges, the parties conferred about Dr. Grant's availability, deposition dates and locations, and the parties' respective positions about the propriety of a future deposition in the event that Dr. Grant were to add additional opinions that exceed the scope of a rebuttal expert. *See id.* During those email exchanges—exchanges that addressed future events that have not yet materialized—Defendant specifically advised Plaintiffs that:

- o "Rule 26(a)(2)(B)(1) places specific demands on a party including that an initial expert report should contain a 'complete statement of all opinions this witness will express and the basis and reasons for them.'" *Id.* at 1, 4.

- o "It is impossible for us to predict what Dr. Grant will convey in his report. Whether we will notice a second deposition of Dr. Grant depends on whether his previously-served report contains 'a complete statement of all opinions the witness will express and the basis and reasons for them.' Fed. R. Civ. P. 26(a)(2)(B)(i). But we do not intend to notice a deposition based on the filing of a rebuttal report 'alone.'" *Id.* at 1.

- o "A rebuttal deadline is not intended to provide an extension of deadline or serve as de facto bolstering of an original expert disclosure" *Id.* at 6.

- o "Our intention is to take Dr. Grant's deposition regarding 'all opinions this witness will express and the basis and reasons for them.'" *Id.*

- o "[I]f Dr. Grant later adds 'additional opinions,' as your email of January 29 suggested he might ("[i]t is entirely predictable (indeed, the court's scheduling order expressly contemplates) that Dr. Grant might have some additional opinions (and basis and reasons for them) in response to those reports, which he is entitled to lay out in a

3

rebuttal report."), then we would reserve the right to depose him on new opinions." *Id.* at 4.

Through those email exchanges, the parties agreed that Dr. Grant's deposition will take place on March 16 in Huntsville, Texas, a location requested by the Plaintiffs. *See id.* at 1.

Based wholly on the parties' email exchanges, Plaintiffs now request "that the Court clarify that under the instant circumstances, the Secretary may not conduct discovery so as to depose Plaintiffs' experts twice based on the timely production of rebuttal reports." Mot. 2, ECF No. 45. But whether such an order would be proper (and whether Defendant would even seek a second deposition) depend on what Dr. Grant includes in any rebuttal report. If he complies with Rule 26, the hypothetical Plaintiffs now ask this Court to decide, based on email exchanges between the parties, will never ripen.

## ARGUMENT

The issue Plaintiffs raise in their motion for protective order—whether Dr. Grant should be preemptively shielded from the possibility of having to provide a second deposition several months from now—is both premature and speculative. Plaintiffs base their motion on the fact that the parties have discussed the conceivable possibility of a second deposition of Dr. Grant, which may or may not ultimately be necessary. *See generally* Ex. A.

As Defendant has already conveyed to Plaintiffs, it is impossible to predict what opinions Dr. Grant will include in any potential rebuttal report. Of course, Defendant does not intend to issue a second notice of deposition based on the mere filing of a rebuttal report "alone," a point Defendant expressly conveyed to counsel. Ex. A at 1, 4. But what Defendant has explained is that "Rule 26(a)(2)(B)(1) places specific demands on a party including that an initial expert report should contain a 'complete statement of all opinions this witness will express and the basis and reasons for them.'" *Id.* at 4 (quoting Fed. R. Civ. P. 26(a)(2)(B)(1)). Should Dr. Grant use his rebuttal report to improperly

4

bolster his initial report, Defendant may, at that time, seek leave to obtain a second deposition of Dr. Grant. And if, at that time, Plaintiffs object, the ensuing discovery dispute would be governed by Federal Rule of Civil Procedure 30, which requires a party to obtain leave of court prior to the second deposition of a witness. *See* Fed. R. Civ. P. 30(a)(2).

The parties are still many steps away from the filing of a motion for leave under Rule 30, which explicitly governs requests for follow-up depositions. Dr. Grant would need to provide a rebuttal report; that report would have to contain additional opinions outside the scope of rebuttal testimony; Defendant would need to determine that a follow-up deposition is actually desired and necessary; and finally, the parties would be required to meet and confer to attempt to resolve that dispute prior to seeking court intervention. *See* Local Court Rule CV-7(i). Whether any or all of these events will transpire is entirely speculative.

As one district court recognized when it declined to preemptively delineate the appropriate scope of a party's requests for production, prior to the filing of any motion to compel, the "practical goal of facilitating the discovery process" cannot "allow the court to jettison the traditional role of the court and the restraints on its jurisdiction." *In re Blue Cross Blue Shield Antitrust Litigation*, 2015 WL 13755436, at *1 (N.D. Ala. Aug. 4, 2015). Beyond doctrinal restraints, other considerations counsel against the issuance of advisory opinions: "Are the parties bound by the previous advice? Is the court bound by it? Once the court expresses a view of a subject, it becomes difficult to ignore that advice in relation to real controversies coming before the court." *Id.*

Those same concerns are present here. Plaintiffs seek a protective order "stating that a party will not be permitted leave to take a second deposition of an expert in these proceedings based on the entirely predictable fact that the expert files a rebuttal report, as contemplated by the Court's Scheduling Order." Mot. 9, ECF No. 45. But what if the rebuttal report goes well beyond merely responding to Defendant's expert? *Cf. Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546,

5

571 (5th Cir. 1996) (noting that the "purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement."). What if the motion for leave is based on factors other than "the entirely predictable fact that the expert files a rebuttal report"? Adoption of Plaintiffs' proposed order might foreclose Defendant from seeking a warranted deposition and thereby prejudice her defense at trial. By contrast, Plaintiffs will not incur any harm in the denial of their unripe motion for protective order because they will be allowed to respond to Defendant's motion for leave to seek a second deposition if and when that motion is ever filed.

In sum, Plaintiffs' objections to a hypothetical, contingent deposition are not properly before the Court and should not be resolved at this juncture. Just as other courts have declined the invitation to decide discovery matters that might never ripen, this Court should, too. *See, e.g.*, *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 86 (D.D.C. 2009) (holding that in the absence of a specific objection to a discovery request, "there is no concrete discovery dispute upon which to rule. [Plaintiff's] generic question is in essence a request for an advisory opinion, something federal courts are not empowered to render."); *Khaliel v. Norton Healthcare, Inc. Retirement Plan*, 2012 WL 6554714, at *9 (W.D. Ky. Nov. 20, 2012) (declining to rule on damage-related discovery disputes because such discovery "is at this point entirely premature."); *Becker v. Wells Fargo Bank, NA, Inc.*, 2013 WL 3367306, at *2 (E.D. Cal. July 5, 2013) ("Absent extraordinary circumstances, the undersigned declines to waste judicial resources on discovery disagreements that the parties themselves have not yet made a complete and exhaustive effort to resolve."); *OrthoArm, Inc. v. Am. Orthodontics Corp.*, 2009 WL 10677059, at *3 (E.D. Wisc. Feb. 9, 2009) ("[T]he court will not issue a blanket protection against deposition based simply on speculation that some inappropriate questions may be asked, and the court will not render an advisory opinion regarding what questions may be permissible.").

## Conclusion

Plaintiffs' motion for a limited protective order should be denied.

Date: February 18, 2020

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

/s/ *Patrick K. Sweeten*
PATRICK K. SWEETEN
Associate Deputy for Special Litigation

MATTHEW H. FREDERICK
Deputy Solicitor General

WILLIAM T. THOMPSON
Special Counsel for Civil Litigation

MICHAEL R. ABRAMS
Assistant Attorney General

DOMINIQUE G. STAFFORD
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-076)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
patrick.sweeten@oag.texas.gov
matthew.frederick@oag.texas.gov
will.thompson@oag.texas.gov
michael.abrams@oag.texas.gov
dominique.stafford@oag.texas.gov

**COUNSEL FOR THE TEXAS SECRETARY OF STATE**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 18, 2020, and that all counsel of record were served by CM/ECF.

/s/ *Patrick K. Sweeten*
PATRICK K. SWEETEN