# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>Plaintiffs,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>Defendant. | Civil Action No. 1:19-cv-01071-LY |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *NELSON V. WARNER*, NO. 3:19-0898 (S.D. W. VA. MAR. 17, 2020), AND *COMCAST CORP. V. NAT'L ASS'N OF AFRICAN AM.-OWNED MEDIA ET. AL.*, NO. 18-1171 (U.S. MAR. 23, 2020)**

Pursuant to the Court's request, Plaintiffs briefly discuss *Nelson v. Warner*, No. 3:19-0898, 2020 WL 1312882 (S.D. W. Va. Mar. 17, 2020), and *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media et. al.*, No. 18-1171, 2020 WL 1325816 (U.S. Mar. 23, 2020). *Nelson* denied a motion to dismiss in a case concerning a statute nearly identical to the one here, addressing the character and magnitude of the burden under *Anderson-Burdick*, the legitimacy of the state's asserted interests in the law, and the appropriate parties. By contrast, *Comcast* concerned racial discrimination in awarding contracts, has no relevance, and does not stand for the broad principles for which the Secretary offers it. This Court should follow *Nelson* and deny the Secretary's motion.

**ARGUMENT**

**A.** *Nelson* **demonstrates why the Court should deny the Secretary's Motion.**

In *Nelson*, the court denied a motion to dismiss a challenge to an almost identical statute. The plaintiffs, including the West Virginia Democratic Party, challenged a state law awarding first ballot position to the party that won the most votes in the last presidential election. *Nelson*, 2020 WL 1312882, at *1. As here, the *Nelson* plaintiffs argued that the statute imposed an undue burden on their First and Fourteenth Amendment rights and violated their right to equal protection. *Id*. The court directly addressed—and rejected—many of the arguments the Secretary raises here.

First, the court found "no deficiency in standing" among the plaintiffs, including the State Party. *Id*. at *4. Like the Secretary, *see* Motion to Dismiss, ECF No. 33 ("Mot.") at 13, the defense argued that the alleged harm was "too speculative to constitute any injury in fact." *Nelson*, 2020 WL 1312882, at *3. The court disagreed, finding it "unreasonable to infer West Virginia is exempt from the widespread phenomenon [of position bias]." *Id.*; *see also id.* at *4 (finding plaintiffs allege "imminent injury in fact"). The court also found the plaintiffs need not seek relief from every county election official. *Id.* at *5 ("[The Secretary's] suggestion that these clerks would

1

create liability by continuing to implement an unconstitutional law, and that he would permit them to do so as the state's chief elections official, defies reason.").

Second, *Nelson* applied the *Anderson-Burdick* framework the Secretary here argues "does not apply." Mot. at 16. There, the defendant similarly cited *Libertarian Party of Virginia v. Alcorn*, 826 F.3d 708 (4th Cir. 2014), to argue that ballot position "is not a constitutional concern." *Nelson*, 2020 WL 1312882, at *2 (quoting *Alcorn*, 826 F.3d at 719). The *Nelson* court correctly found *Alcorn* distinguishable. *See id.* at *2-3. In particular, it noted that, while the statute at issue in *Alcorn* "determined major parties' position by lot," West Virginia's statute (like Texas's) "awards the alleged benefit of the primacy effect to candidates based on their political affiliation," and thus "is *not* politically neutral or nondiscriminatory." *Id*. at *3; *compare* Mot. at 19 (arguing Texas's law "is neutral because it turns on gubernatorial elections, which either party can win"), *with Nelson*, 2020 WL 1312882, at *3 ("The party benefiting . . . may shift over time, but this does not mean the Statute is nonpartisan."). Thus, while the Secretary insists that any burden on Plaintiffs is "*de minimis*," Mot. at 18, the *Nelson* court found the plaintiffs "raise[d] a reasonable inference" that West Virginia's indistinguishable law "creates a constitutionally *significant* burden on the plaintiffs' First and Fourteenth Amendment rights," 2020 WL 1312882, at *3 (emphasis added).

Finally, *Nelson* found many of the same state interests that the Secretary asserts here lacked "obvious weight" when considering the similar statute before it. *Id.* at *3. For instance, the court found an interest in reducing voter confusion and speeding voting inapposite where "plaintiffs seek a system that would keep Democrats and Republicans in the top two ballot positions" rather than completely "random ballot ordering." *Id*.; *see* Compl. at 9 n.3 (noting Plaintiffs do not challenge Texas's tiered system). Similarly, it rejected the argument that the state has a legitimate interest in basing ballot placement on prior election results where the plaintiffs request "a system that only

gives Republican and Democratic candidates an equal opportunity to be listed first," as "[b]oth of these parties enjoy widespread public support and form the pillars of the country's stable two-party system." 2020 WL 1312882, at *3; *compare* Mot. at 20 (citing *Alcorn* to argue that "[o]rdering parties in terms of past popularity" makes voting easier), *with Nelson*, 2020 WL 1312882, at *3 (noting in *Alcorn* plaintiffs "sought to elevate minor parties and independent candidates with significantly less public support to higher positions" on the ballot); *see also Alcorn*, 826 F.3d at 720 (noting "structuring ballot order to prefer parties already strong enough to reach first-tier party status" furthers "political stability . . . through a healthy two-party system" (citation omitted)).

### B. *Comcast* is inapposite and has no relevance here.

Unlike *Nelson*, *Comcast* has no relevance here, and the Secretary's reading of it is not sustainable. *Comcast* was an employment discrimination suit brought under 42 U.S.C. § 1981, and it "resolve[s] the disagreement among the circuits over § 1981's causation requirement." 2020 WL 1325816, at *3. Specifically, *Comcast* held that a claim under §1981 must allege that race was the "but-for cause" of injury in such a case, not just a "motivating factor" in the challenged decision. *Id.* at *7. *This* case does *not* involve a claim under § 1981. Nevertheless, the Secretary urges the Court to find that, because *Comcast* refused to recognize a "motivating factor" pleading standard alongside a "but-for" standard of proof, *id.*, any burden on Plaintiffs is now identical at both the pleading and summary judgment phase. *See* Tr. of Mot. Hr'g, Mar. 24, 2020 ("Tr.") at 45:2-8 (arguing "after . . . *Comcast*" the fact that the cases relied upon by the Secretary were decided at summary judgment "makes no difference"). Thus, the Secretary argues, Plaintiffs "must identify an injured member" in their pleading to establish associational standing and survive a motion to dismiss on those grounds. *Id.* at 14:1-2. This argument cannot be sustained as a broad matter of law, much less successfully applied in this case to dismiss Plaintiffs' suit.

3

First, it would be inappropriate to conclude that, in a few lines concerning causation standards under § 1981, the Supreme Court broadly overturned decades of precedent establishing that different standards apply to a motion to dismiss and for summary judgment. *See, e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) (finding Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*"). The Secretary's overreach is evidenced not just by this common-sense doctrine, but by counsel's selective quotation of *Comcast* at oral argument. The Secretary's counsel quoted the case for the statement that "to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end," Tr. at 14:8-10 (quoting *Comcast*, 2020 WL 1325816, at *3), but did not mention the two preceding sentences: "Normally, too, the essential elements of a claim remain constant through the life of a lawsuit. *What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial*, but the legal elements themselves do not change." *Comcast*, 2020 WL 1325816, at *3 (emphasis added). *Comcast* thus reaffirmed the "general principle[]" that the legal standard remains the same even while standards of proof increase from pleading to the merits. *Id.* After *Comcast*, there remains "*no* precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing." *Hancock Cty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) (emphasis added).

In any event, Plaintiffs *have* identified specific people on whose behalf they assert standing. The Complaint alleges, for instance, that DSCC brings this suit based on its support of the Democratic candidate for the U.S. Senate seat "currently held by Republican Senator John Cornyn, up for election in 2020," while DCCC does the same on behalf of "Democratic candidates for the U.S. House of Representatives" in "Texas's 36 congressional districts, each of which will be on

4

the ballot in 2020." Compl. ¶ 4; *see also id.* ¶¶ 16, 17. Plaintiffs could not identify those candidates by name at filing because the primary had yet to take place. Indeed, the Democratic candidate for U.S. Senate will not be known until after the July 14, 2020 run-off election. *See* Tr. at 29:1-11. Nevertheless, those candidates are identified in the Complaint as specifically as they possibly could be, more than satisfying any requirement that they be specifically identified.

Finally, even if *Comcast* did somehow undermine Plaintiffs' claim to associational standing, it would make no difference here given Plaintiffs' multiple other grounds for standing, including: (1) "TDP's direct standing" based on "harm to its election prospects," *TDP v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006); *see also id.* at 587 ("[T]hreatened loss of [political] power is . . . a concrete and particularized injury sufficient for standing purposes."); *id.* at 587 n.4 (citing *Owen v. Mulligan*, 640 F.2d 1130, 1132-33 (9th Cir. 1981), for holding "'potential loss of an election' was an injury in fact sufficient to give Republican party official standing"); (2) Plaintiffs' direct standing based on their need to divert additional resources to Texas elections "to combat the effects of the Ballot Order Statute," Compl. ¶¶ 14-17; *see OCA-Great Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (finding standing where organization "went out of its way to counteract the effect of Texas's allegedly unlawful [voting law] . . . with a view . . . toward mitigating its real-world impact"); and (3) Plaintiff Miller's direct standing based on the harm the Ballot Order Statute imposes on her First Amendment right to vote and associate with others to advance her political interests by giving a head start to all the candidates she opposes, Compl. ¶ 13; *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (noting each provision of the election code "inevitably affects . . . the individual's right to vote and his right to associate with others for political ends"). Thus, even under the Secretary's creative interpretation, *Comcast* has no bearing here.

## II. CONCLUSION

This Court should follow *Nelson* and deny the Secretary's Motion to Dismiss.

Dated this 3rd day of April, 2020.  Respectfully submitted,

/s/ *Skyler M. Howton*
Skyler M. Howton
TX 24077907
PERKINS COIE LLP
500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
showton@perkinscoie.com

Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

Gillian Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: (310) 788-3245
Facsimile: (310) 843-1244
gkuhlmann@perkinscoie.com

*Counsel for the Plaintiffs*
**Admitted Pro Hac Vice*

Chad W. Dunn, TX# 24036507

Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Plaintiff Texas Democratic Party*

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on April 3, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                /s/ *Skyler M. Howton*