# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>*Defendant*. | CIVIL ACTION NO. 1:19-cv-01071 |

## THE TEXAS SECRETARY OF STATE'S SUPPLEMENTAL BRIEF
## IN SUPPORT OF HER MOTION TO DISMISS

At the Court's request, the Secretary of State submits this supplemental brief addressing two cases decided since she filed her motion to dismiss.

First, Plaintiffs argue they need not plausibly allege each element of standing. They argue that the pleading stage affects not only the method of establishing a fact (allegations instead of evidence) but also which facts need to be established. The Supreme Court's recent opinion in *Comcast Corp. v. National Association of African American-Owned Media* rejects that reasoning and confirms dismissal is appropriate here. No. 18-1171, 2020 WL 1325816 (U.S. Mar. 23, 2020).

Second, Plaintiffs' reliance on *Nelson v. Warner* is misplaced. *See* No. 3:19-cv-898, 2020 WL 1312882 (S.D. W. Va. Mar. 17, 2020). In *Nelson*, the parties did not raise the arguments briefed in this case. Thus, the *Nelson* court did not consider them. To the extent *Nelson* addresses the constitutionality of ballot order statutes, its reasoning is not persuasive.

**I.      Plaintiffs' Efforts to Distinguish Binding Precedent Are Untenable After *Comcast***

As the Secretary has previously argued, associational standing requires that Plaintiffs identify

injured members. *See* ECF 33 at 11; ECF 38 at 5 (citing, *inter alia*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010)). Plaintiffs responded that this rule does not apply at the pleading stage. *See* ECF 36 at 15; MTD Hearing Tr. at 28:16 (Mar. 24, 2020) ("*City of Kyle* is not a motion to dismiss.").

As to organizational standing, the Secretary argued that Plaintiffs had not "satisfy[ied] the *City of Kyle* requirements" because they had "neither alleged that their reactions to the Ballot Order Statute 'differ from [their] routine [political] activities' nor 'identified any specific projects' put on hold." ECF 38 at 6 (quoting ECF 33 at 13). Again, Plaintiffs responded that *City of Kyle* did not apply because it "was not decided on a motion to dismiss." MTD Hearing Tr. at 26:14–15 (Mar. 24, 2020).

In short, Plaintiffs' position is that, even if they will eventually need to prove an element of standing, they need not allege that element at the pleading stage. That position is untenable after *Comcast*.

*Comcast* explained that "the essential elements of a claim remain constant through the life of a lawsuit." *Comcast*, 2020 WL 1325816, at *3. Of course, even though "the legal elements themselves do not change," "[w]hat a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial." *Id.* "So, to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Id.*

Here, binding precedent establishes that Plaintiffs will eventually need to prove the identity of injured members (for associational standing) and the *City of Kyle* requirements (for organizational standing). *Comcast* establishes that Plaintiffs must plausibly allege those elements of standing at the pleading stage.

At this stage, Plaintiffs can get away with allegations instead of evidence. But those allegations must plausibly allege every element of standing that Plaintiffs will eventually need to prove.

To be sure, *Comcast* analyzed causation for a Section 1981 claim rather than standing for a

2

Section 1983 claim, but those distinctions are immaterial. First, for purposes of burdens, the elements of standing are analogous to the elements of a cause of action. "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Second, there is no reason to doubt that Section 1983, like Section "1981[,] follows the general rule" requiring plausible allegations of each element. *Comcast*, 2020 WL 1325816, at *4. Plaintiffs do not argue otherwise.

Thus, *Comcast* applies to this case with full force, and Plaintiffs must allege every element of standing consistent with *Twombly* and *Iqbal*. They have not done so.

## II. *Nelson* Did Not Consider the Arguments Presented Here and Is Not Persuasive

Plaintiffs rely on *Nelson*, but that opinion does not address the arguments the Secretary has raised in this case. *Nelson* considered a limited motion to dismiss filed by a local official, not by the West Virginia Secretary of State. It was focused on whether the local official was a proper defendant. *See Nelson*, 2020 WL 1312882, at *4–5. It did not consider whether the Secretary of State is a proper defendant. *See* ECF 33 at 3–8; ECF 38 at 1–3.[1]

As a result, *Nelson* is not precedent against the Secretary's arguments here. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quotation omitted). Decisions that "never squarely addressed the issue," but "at most assumed" an answer, are not binding "by way of *stare decisis*." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). That is true even for jurisdictional issues that the court had an independent obligation to consider. "When a potential jurisdictional defect is neither noted nor discussed in a

---

[1] Even if it had considered the role of West Virginia's Secretary of State, the analysis may differ across States. *See* Amicus Br. for the State of Texas, *et al.*, at 11, *Jacobson v. Florida Sec'y of State*, No. 19-14552 (11th Cir. Jan. 14, 2020) (noting the necessity of "a state-specific analysis of the powers granted to [a] Secretary of State").

3

federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011).

*Nelson* also did not consider many other grounds for dismissal the Secretary has pressed here, including third-party standing, *see* ECF 33 at 14–15; ECF 38 at 6–7, the political question doctrine, *see* ECF 33 at 15–16; ECF 38 at 7–8, the inapplicability of *Anderson-Burdick*, *see* ECF 33 at 16–18; ECF 38 at 8–9, and equitable reasons Plaintiffs are not entitled to relief, *see* ECF 33 at 22–25; ECF 38 at 10.

*Nelson* did address Article III injury in fact and an *Anderson-Burdick* claim, but its analysis is not persuasive. Seemingly due to the parties' briefing, *Nelson* conflates the two issues. *See* 2020 WL 1312882, at *1–4. The parties in this case, on other hand, have properly distinguished between those issues. *Compare* ECF 33 at 8–14 (standing), *with id.* at 18–22 (*Anderson-Burdick*); *compare* ECF 38 at 3–6 (standing), *with id.* at 9–10 (*Anderson-Burdick*).

Regardless, the *Nelson* court's analysis turned on allegations that Plaintiffs here do not make. For example, *Nelson* emphasized that the plaintiffs there had alleged that "the primacy effect is universal and occurs in West Virginia 'on every ballot, in every partisan race, in every general election.'" 2020 WL 1312882, at *3. That was enough for *Nelson* to conclude the alleged injury was not "too speculative." *Id.* But here, Plaintiffs do not allege the primacy effect occurs "on every ballot" or "in every partisan race." Nor could they. Their own expert agrees that the primacy effect does not occur in every race, much less on every ballot. *See* ECF 20-4 at 14 (concluding "that ballot order is not correlated with aggregate results in these elections").

*Nelson* purports to distinguish *Libertarian Party of Virginia v. Alcorn*, 826 F.3d 708 (4th Cir. 2016), on the ground that *Alcorn* considered a provision treating major and minor parties differently, rather than a provision treating two major parties differently. *See* 2020 WL 1312882, at *3. But as the Secretary has explained, "the defining difference between major and minor parties is how many voters support them," and Texas's Ballot Order Statute distinguishes between "the Republican and

4

Democratic parties on the same basis." ECF 38 at 9–10. *Nelson* did not consider that argument in favor of *Alcorn*'s applicability.

*Nelson* suggests that "West Virginia's Ballot Order Statute is not politically neutral" because, as applied in any particular election, it "awards the alleged benefit of the primacy effect to candidates based on their political affiliation." 2020 WL 1312882, at *3. *Nelson* gave no weight to the fact that "[t]he party benefiting from West Virginia's law may shift over time." *Id.* That was error. *See* ECF 33 at 22 (citing *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 10 n.10 (1982)). Under *Nelson*'s reasoning, *all* ballot order statutes are discriminatory. Even a statute requiring the parties to draw lots, as applied in any particular election, would "award[] the alleged benefit of the primacy effect to candidates based on their political affiliation." 2020 WL 1312882, at *3. But drawing lots is neutral in the important sense: It announces an objective rule that can award the alleged benefit of ballot order to either party, depending on the circumstances. The same is true of Texas's Ballot Order Statute.

*Nelson*'s discussion of remedies is also mistaken. The *Nelson* court believed it could "strike [the Ballot Order Statute] down entirely" and thereby prevent non-parties from enforcing the statute, even though they would "not be enjoined from enforcing" it. 2020 WL 1312882, at *5. That is not accurate. While federal courts can "enjoin executive officials from taking steps to enforce a statute," they "have no authority to erase a duly enacted law from the statute books." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 936 (2018); *see Murphy v. NCAA*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring) ("[C]ourts do not have the power to 'excise' or 'strike down' statutes."). And *Nelson* provides no reason to think such an order would have *res judicata* effect on absent local officials. *See* 2020 WL 1312882, at *5. Neither do Plaintiffs here. *Cf.* ECF 38 at 2–3.

\*    \*    \*

For these reasons and the reasons included in her previous briefing, the Secretary respectfully requests that the Court dismiss Plaintiffs' Complaint.

| | |
|---|---|
| Date: April 3, 2020 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | /s/ Patrick K. Sweeten<br>PATRICK K. SWEETEN<br>Associate Deputy for Special Litigation |
| JEFFREY C. MATEER<br>First Assistant Attorney General | MATTHEW H. FREDERICK<br>Deputy Solicitor General |
| RYAN L. BANGERT<br>Deputy First Assistant Attorney General | WILLIAM T. THOMPSON<br>Special Counsel for Civil Litigation |
| | MICHAEL R. ABRAMS<br>Assistant Attorney General |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-076)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1414<br>Fax: (512) 936-0545<br>patrick.sweeten@oag.texas.gov<br>matthew.frederick@oag.texas.gov<br>will.thompson@oag.texas.gov<br>michael.abrams@oag.texas.gov |
| | **COUNSEL FOR THE TEXAS SECRETARY OF STATE** |

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 3, 2020, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN