UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>Plaintiffs,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>Defendant. | Civil Action No. 1:19-cv-01071-LY |

**PLAINTIFFS' RESPONSE TO THE SECRETARY'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS**

On May 4, 2020, the Secretary submitted a Notice of Supplemental Authority attaching the opinion issued by the Eleventh Circuit in *Jacobson v. Fla. Sec'y of State*, No. 19–14552, 2020 WL 2049076 (11th Cir. Apr. 29, 2020) (ECF No. 63). The Secretary's contention that the decision—which addresses only questions of standing and does not reach the merits of the lower court's decision—should guide this Court on numerous issues in the instant case is foreclosed by multiple binding precedents from this Circuit and the Supreme Court.

As an initial matter, the Secretary's reliance on *Jacobson* to argue that Ms. Miller lacks standing misconceives and misconstrues Ms. Miller's injury. Ms. Miller is injured because the systemic favoritism that Texas's Ballot Order Statute conveys on all of the candidates of a single major political party—in recent years, and again in 2020, the major political party with which Ms. Miller does *not* associate—hinders her ability and the ability of Democratic voters like her to "associate in the electoral arena to enhance their political effectiveness as a group." *Anderson v.*

1

*Celebrezze*, 460 U.S. 780, 794 (1983). This is a cognizable burden on and injury to voters that flows from the Supreme Court's decision in *Anderson* itself. *See id*. at 788 (noting each provision of a state's election code "inevitably effects—at least to some degree—the individual's right to vote and his right to associate with others for political ends," and that the Court's "primary concern" is "the interests of the voters who chose to associate together to express their support" for candidates and their views); *see also Bullock v. Carter*, 405 U.S. 134, 143 (1972) ("[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters."). The Eleventh Circuit's decision on this score is, quite simply, wrong. Not only is it contrary to binding and relevant Supreme Court precedent, it is contradicted by the Eighth Circuit, which considered the same issue in a challenge to a ballot order statute. *See McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (relying on *Anderson* in finding that candidate had standing to challenge North Dakota ballot order law due to his "injury as a voter").

As for the Secretary's reliance on *Jacobson* regarding the standing of the organizational Plaintiffs, it is misplaced for at least three independent reasons. First, in *Jacobson* the Eleventh Circuit panel entirely ignores the question of whether the plaintiff political party organizations could have had standing based on the direct threat of injury that the ballot ordering statute posed to their electoral prospects; however, this is a harm that the Fifth Circuit has explicitly and specifically found sufficient to support Article III standing in cases brought by political party entities in circumstances meaningfully indistinguishable from the instant litigation. *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (holding that Texas Democratic Party had "direct standing" based on "harm to its election prospects"). Furthermore, in *Benkiser* the Fifth Circuit noted that "[v]oluminous persuasive authority" similarly holds that a threat to a

2

party's electoral prospects is sufficient to confer standing. *Id.* at 587 & n.4 (citing *Smith v. Boyle*, 144 F.3d 1060, 1061–63 (7th Cir. 1998); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir.1994); *Owen v. Mulligan*, 640 F.2d 1130, 1132–33 (9th Cir. 1981); *Democratic Party of the United States v. Nat'l Conservative Political Action Comm.*, 578 F.Supp. 797, 810 (E.D. Pa. 1983); and *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 423 (E.D. Mich. 2004)). In line with this extensive body of precedent, the Plaintiff political party organizations that brought this case have alleged that Texas's Ballot Order Statute harms their electoral prospects by conferring a percentage advantage to candidates affiliated with the major opposing party. *See* ECF No. 1 ¶¶ 4, 14, 15, 16, 17. Based on binding Fifth Circuit precedent, this alone is sufficient for them to have standing to challenge the Statute.

*Jacobson*'s holding that the Democratic organizations lacked associational standing is similarly directly contrary to the Fifth Circuit's holding in *Benkiser*, which held that the Texas Democratic Party (a plaintiff here) had standing on behalf of Democratic candidates for office as "their interests are identical." 459 F.3d at 587. Texas's runoff election has been postponed until July 14, 2020, at which time the names of those individual candidates for whom the DSCC, DCCC, DNC, *and* the Texas Democratic Party have associational standing, and who will suffer injury due to the Ballot Order Statute, will be known. *See* ECF No. 1 ¶¶ 4, 14, 15, 16, 17, 37-38. That the nominees for all elected offices have not yet been named does not strip the organizational Plaintiffs of associational standing on behalf of their candidates, to say nothing of their associational standing to assert the interests of and injuries to voters who support the Democratic Party. *See Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (holding state Democratic Party has associational standing to bring claims of its voters injured by voter ID law), *aff'd* 553 U.S. 181, 189 n.7 (2008) ("We also agree with the unanimous view of those judges that the

Democrats have standing to challenge the validity of SEA 483 . . . .").[1]

As to the Eleventh Circuit's conclusion that the plaintiff organizations failed to prove standing based on a diversion of resources theory through the evidence presented *at trial*, the *Jacobson* court grafted an entirely new requirement onto what plaintiffs must demonstrate for diversion of resources in presenting their proof, requiring a showing at odds with precedent in this Circuit that plaintiffs need only demonstrate an "identifiable trifle." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017). But even *Jacobson* recognizes that the requirements on this issue are lower at preliminary stages of litigation prior to trial. 2020 WL 2049076 at *8; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[O]n a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (citations omitted). Thus, even if this Court were to adopt *Jacobson's* entirely novel (and legally incorrect) position on what must be proved to show a diversion of resources injury at trial, the Secretary provides no basis for why it should do so at the preliminary stages of this action, where discovery

---

[1] To the extent the Secretary's brief, as well as the Eleventh Circuit's ruling in *Jacobson*, is meant to assert that the DSCC and DCCC lack members and that this is fatal to associational standing, ECF No. 63 at 2, that is plainly incorrect and foreclosed by Supreme Court precedent. In *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977), the Supreme Court made clear that the defendant's status "as a state agency, rather than a traditional voluntary membership organization," did not preclude it from asserting associational standing on the behalf of apple growers in the state of Washington even though it did not have any "members." *Id*. The Court noted that the defendant "performs the functions of a traditional trade association representing the Washington apple industry," and that the agency "provides the means by which [Washington apple growers] express their collective views and protect their collective interests." *Id*. at 345. So, too, here. The DSCC, DNC, and DCCC are the three federally recognized party committees of the Democratic Party under 52 U.S.C. § 30101(14), *see* ECF No. 1 ¶¶ 15-17, and as such plainly have associational standing to represent the interests of Democratic candidates as well as Democratic voters. *See Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989, 999 (9th Cir. 2020) (holding Arizona voting law which burdens voters unconstitutional in case brought by, among others, DSCC). In any event, the Secretary raises no contention that the Democratic National Committee or Texas Democratic Party lack members, as the Fifth Circuit has previously found. *See Benkiser*, 459 F.3d at 587-88 (holding Texas Democratic Party had associational standing).

is still ongoing and trial has yet to take place.

The Secretary's reliance on *Jacobson's* finding that the injuries at issue there were not traceable to the *Florida* Secretary of State based on an entirely novel interpretation of *Florida* law also has no application here. In *this* case, the Secretary's argument that the harm at issue is not traceable to or redressable by the *Texas* Secretary of State runs headlong into binding Fifth Court precedent in *OCA-Greater Houston*, 867 F.3d at 613, and is contrary to decisions by Texas district courts and courts throughout this Circuit going back for over 40 years, which have repeatedly found that the designation of an official as "chief election officer" establishes Article III standing for plaintiffs who sue the Secretary in various election-law contexts. *See, e.g.*, *Scott v. Schedler*, 771 F.3d 831, 838–39 (5th Cir. 2014) (finding Article III standing and noting Secretary was the chief election officer under the NVRA); *Harness v. Hosemann*, No. 3:17-CV-791-DPJ-FKB, 2019 WL 8113392, at *3 (S.D. Miss. Aug. 7, 2019) (citing cases in noting that "while this civil action is not rooted in the NVRA, several courts have held that the designation of 'chief election officer' militates in favor of finding Article III standing in various election-law contexts"); *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, 828–29, 832 (S.D. Tex. 2012) (Costa, J.) (denying Secretary's motion to dismiss for lack of standing and noting her "argument is at odds with numerous cases in which plaintiffs have sued secretaries of state when challenging voter registration laws even though states commonly delegate voter registration responsibilities to county officials"), *rev'd on other grounds*, 732 F.3d 382 (5th Cir. 2013); *United States v. Texas*, 422 F. Supp. 917, 921 (S.D. Tex. 1976) (rejecting Secretary's motion to dismiss challenge to Texas election law, noting Secretary's duty to maintain uniformity of election laws).

The Fifth Circuit's words in *OCA-Greater Houston* require neither elaboration nor explanation: "The facial invalidity of a Texas election statute is, without question, fairly traceable

to and redressable by the State itself and its Secretary of State, who serves as the 'chief election officer of the state.'" 867 F.3d at 613. Indeed, Judge Jill Pryor's partial dissent and concurrence in *Jacobson* objected to the majority's holding that the harm was not caused or redressable by Florida's Secretary of State by citing to *OCA-Greater Houston*, noting that, "when confronted with cases in which defendant state officials carried out similar responsibilities with respect to challenged laws, our sister circuits have concluded that the officials were enforcing the law sufficiently to confer standing." *Jacobson*, 2020 WL 2049076, at *30 (Pryor, J., concurring in part and dissenting in part). In sum, the Secretary's reliance on *Jacobson* is contrary to binding precedent in *this* Circuit and therefore meritless.

Finally, the Secretary's reliance on Judge William Pryor's dicta in concurrence regarding the effect of *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), is entirely misplaced. Judge Pryor's concurrence, in addition to being plain wrong on the law, is a single circuit judge's opinion and has no binding effect in even the Eleventh Circuit, let alone this case. As Plaintiffs detailed in their response to the Secretary's Motion to Dismiss, *Rucho*'s plain terms limit it to the partisan gerrymandering context. ECF No. 36 at 18-20. Unlike that unique context, where federal courts were agonizing over the proper legal test to apply for decades, federal courts have been easily and ably deciding First and Fourteenth Amendment challenges similar to the ones Plaintiffs bring here for decades—including to ballot order statutes specifically—using the *Anderson-Burdick* balancing test. *See, e.g.*, *Mann v. Powell*, 314 F. Supp. 677, 678-79 (N.D. Ill. 1969), *aff'd* 398 U.S. 955 (1970); *see also* ECF No. 36 at 19 (citing ballot order cases decided using *Anderson-Burdick* since the test's inception). *Rucho* has no applicability here, and *Anderson-Burdick* is the appropriate framework to evaluate Plaintiffs' claims.

Dated: May 6, 2020.                    Respectfully submitted,

                                                         /s/Skyler M. Howton

Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
showton@perkinscoie.com

Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jgeise@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

Gillian Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA  90067-1721
Telephone: (310) 788-3245
Facsimile: (310) 843-1244
gkuhlmann@perkinscoie.com

*Counsel for the Plaintiffs*
*\*Admitted Pro Hac Vice*

Chad W. Dunn, TX# 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111

Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Plaintiff Texas Democratic Party*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/Skyler M. Howton*
Skyler M. Howton