IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



FILED

2020 JUL 10 PM 1:20

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

| | | |
|---|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC | § | |
| PARTY; DNC SERVICES CORP., D/B/A | § | |
| DEMOCRATIC NATIONAL COMMITTEE; | § | |
| DSCC; AND DCCC, | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CAUSE NO. 1:19-CV-1071-LY |
| | § | |
| RUTH HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY | § | |
| OF STATE, | § | |
| DEFENDANT. | § | |

## ORDER ON MOTION TO DISMISS

Before the court are The Texas Secretary of State's Motion to Dismiss filed December 12,

2019 (Doc. #33); Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss filed

December 31, 2019 (Doc. #36); Plaintiffs' Notice of Supplemental Authority in Support of Response

in Opposition to Secretary's Motion to Dismiss filed January 29, 2020 (Doc. #41); The Texas

Secretary of State's Response to Plaintiffs' Notice of Supplemental Authority filed February 4, 2020

(Doc. #42); and Plaintiffs' [Second] Notice of Supplemental Authority in Support of Response in

Opposition to Defendant's Motion to Dismiss filed March 18, 2020 (Doc. #52). The court conducted

a hearing by telephone on the motion on March 24, 2020, at which the court entertained argument

from counsel for the parties.

Following the hearing, the parties filed the following supplemental briefing: Plaintiffs'

Supplemental Brief Regarding *Nelson v. Warner*, No. 3:19-0898 (S.D. W. Va. Mar. 17, 2020), and

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, et al.*, No. 18-1171 (U.S. Mar. 23, 2020)

filed April 3, 2020 (Doc. #60); The Texas Secretary of State's Supplemental Brief in Support of Her

Motion to Dismiss filed April 3, 2020 (Doc. #61); Notice of Supplemental Authority in Support of

Motion to Dismiss filed May 4, 2020 (Doc. #63); Plaintiffs' Response to the Secretary's Notice of

Supplemental Authority in Support of Motion to Dismiss filed May 6, 2020 (Doc. #68); Plaintiffs'

Notice of Supplemental Authority in Support of Their Response in Opposition to Defendants'

Motion to Dismiss filed June 17, 2020 (Doc. #69); The Texas Secretary of State's Response to

Plaintiffs' Notice of Supplemental Authority filed June 25, 2020 (Doc. #71); The Texas Secretary

of State's Notice of Supplemental Authority in Support of Her Motion to Dismiss filed June 26,

2020 (Doc. #72); and Plaintiffs' Response to Notice of Supplemental Authority filed June 29, 2020

(Doc. #74). Having considered the motion, response, reply, arguments of counsel, and supplemental

briefing, along with the applicable law, the court will grant the motion to dismiss for the reasons to

follow.

## I. BACKGROUND

This case involves the constitutionality of a Texas law that governs the order in which

candidates appear on the ballot in Texas elections. The Texas Election Code provides instruction

on the preparation of all ballots for all elections in Texas. *See* Tex. Elec. Code Ann. § 52.002. In

a general election, ballots are "arranged in vertical columns separated by parallel lines." *Id.* §

52.065(a). The leftmost column lists the "title of [each] office to be voted on." *Id.* § 52.065(b).

"The name of each political party with a nominee on the ballot shall be printed at the top of the

second and as many succeeding columns as necessary." *Id.* § 52.065(c). Candidate names "appear

opposite the office [for which they are running] in the appropriate party column." *Id.* Spaces for

independent and write-in candidates are included to the right of the party columns. *Id.*

§ 52.065(c)–(d).

In 1963, the Texas Legislature enacted Senate Bill 61, which requires that candidates be arranged on ballots "in descending order of the number of votes received statewide by each party's candidate for governor in the most recent gubernatorial general election, beginning on the left with the party whose candidate received the highest number of votes." *Id.* § 52.091(b) (the "Ballot-Order Statute"). In other words, the Ballot-Order Statute mandates that for every partisan election listed on a general-election ballot in Texas, the candidates who share their political party with the last-elected governor shall be listed first. Because the last-elected Governor of Texas, Greg Abbott, was the Republican Party's candidate for governor, all Republican candidates will be listed first on the 2020 general-election ballot.

Plaintiffs include Rachel Miller, a Texas voter who consistently supports Democratic candidates; the Texas Democratic Party; and three national Democratic committees–DNC Services Corp., d/b/a Democratic National Committee, Democratic Senatorial Campaign Committee, and Democratic Congressional Campaign Committee (collectively, "Plaintiffs"). Plaintiffs challenge the constitutionality of the Ballot-Order Statute, asserting that the statute (1) imposes an undue burden on the right to vote in violation of the First and Fourteenth Amendments of the United States Constitution and (2) violates the Equal Protection Clause of the United States Constitution. Plaintiffs allege that the statute, on its face, treats similarly-situated major political parties differently, to the detriment of candidates who do not share a political-party affiliation with the last-elected governor; while candidates who share a political-party affiliation with the last-elected governor "enjoy systemic, arbitrary, and artificial advantage over their opposing candidate" simply because the statute boosts their electoral prospects for no other reason than a single member of their party out-performed other candidates in a different election, often years before the election in which

3

they continue to maintain this state-mandated advantage. Plaintiffs request that the court render an order (1) declaring that the Ballot-Order Statute is unconstitutional pursuant to the First and Fourteenth Amendments, (2) preliminarily and permanently enjoining Defendant Ruth Hughs, the Texas Secretary of State, from utilizing the Ballot-Order Statute, (3) requiring Hughs to use a ballot-order system that gives similarly-situated major-party candidates an equal opportunity to be listed first on the ballot, and (4) awarding costs, disbursements, and attorney's fees incurred in bringing this action.

Hughs, the Secretary of State of Texas, is named in her official capacity as the State's chief elections officer responsible for the administration and implementation of election laws in Texas. *See* Tex. Elec. Code Ann. § 31.001(a). Hughs moves to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). She raises five arguments in favor of dismissal. First, Hughs asserts that Plaintiffs cannot sue the Secretary of State because she does not enforce the Ballot-Order Statute. Second, Hughs argues that Plaintiffs lack standing because the statute does not injure Plaintiffs. Third, Hughs asserts, Plaintiffs' challenge presents a nonjusticiable political question. Fourth, Hughs argues that the statute is constitutional because it does not burden anyone's constitutional rights; and because it furthers the Texas's interests in preventing gamesmanship, avoiding voter confusion, making voting easier, and simplifying administration. Finally, Hughs asserts that Plaintiffs are not entitled to the equitable relief they seek because Texas Democrats enacted the statute and "benefitted" from it for many years.

## II. STANDARD OF REVIEW

A party may challenge the court's subject-matter jurisdiction based upon the allegations on the face of the complaint. *See* Fed. R. Civ. P. 12(b)(1); *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). In ruling on a motion to dismiss for lack of subject-matter jurisdiction, "a trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MD Physicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed jurisdictional facts. *Freeman v. United States,* 556 F.3d 326, 334 (5th Cir. 2009).

Plaintiffs must establish the elements of standing before a court exercises jurisdiction. The United States Supreme Court requires strict compliance with this jurisdictional-standing requirement. *See Chicago & Grand Trunk R. Co. v. Wellman,* 143 U.S. 339, 345 (1892) (federal courts may exercise power "only in the last resort, and as a necessity"); *Muskrat v. United States,* 219 U.S. 346, 356 (1911) ("[F]rom its earliest history this [C]ourt has consistently declined to exercise any powers other than those which are strictly judicial in their nature"). This requirement assures that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974).

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." Although a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough

to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

## III. ANALYSIS

### A. Authority of the Texas Secretary of State for Standing Purposes

Hughs asserts that Plaintiffs cannot establish standing to sue her because all compliance with the Ballot-Order Statue is implemented and enforced by local officials in the State, not Hughs. Therefore, Hughs argues, Plaintiffs' alleged injuries are not "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). The court finds that Fifth Circuit precedent instructs otherwise.

"The facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State of Texas itself and its Secretary of State, who serves as the 'chief election officer of the state.'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017) (quoting

6

Tex. Elec. Code Ann. § 31.001(a)).  The Ballot-Order Statute creates no private right of action; rather, the statue applies to every election held in the Texas,[1] and as the chief election officer of the State, the Texas Secretary of State "is instructed by statute to 'obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code.'" *Id.* at 613–14 (quoting Tex. Elec. Code Ann. § 31.003).  Thus, Plaintiffs have met their burden to show that their alleged injury is traceable to and redressable by Hughs.

Hughs also raises the defense of state sovereign immunity, arguing that Plaintiffs have not complied with the strictures of the *Ex parte Young* exception to sovereign immunity because the Secretary of State has no connection with, and is not "threaten[ing] and [] about to commence proceedings" to enforce an invalid act.  209 U.S. 123, 155–56 (1908).  This argument is similarly based upon Hughs's improper assertion that the Secretary of State does not enforce Texas election law.  However, sovereign immunity cannot be asserted in this case.  "[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979)).  Therefore, the immunity from suit that Texas and Hughs otherwise enjoy in federal court offers no shield in this case.

### B.  Plaintiffs' Standing

Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute.  "For a court to pronounce upon . . . the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra

---

[1] Tex. Elec. Code Ann. § 1.002(a).

vires." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2. In order to give meaning to Article III's case-or-controversy requirement, courts have developed justiciability doctrines, including standing. *Lujan,* 504 U.S. at 560. Because standing is an essential component of federal subject-matter jurisdiction, the lack of standing can be raised at any time by a party or by the court. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (citing *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan,* 883 F.2d 345, 348 (5th Cir.1989)). "In order to have constitutional standing, a plaintiff must establish (1) an injury in fact that is (2) fairly traceable to the challenged action of the defendant and (3) redressable by a favorable ruling." *Fusilier v. Landry*, No. 19-30665, 2020 WL 3496856, at *2 (5th Cir. June 29, 2020) (citing *Lujan*, 504 U.S. at 560–61).

Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Plaintiffs seeking prospective relief to prevent future injuries must prove that their threatened injuries are "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (internal quotation marks omitted). *See also Jacobson v. Florida Sec'y of State*, 957 F.3d 1153, 1201 (11th Cir. 2020).

### 1. Rachel Miller's Standing

Miller alleges that she "will suffer serious, irreparable injury as a result of the Ballot Order Statute, both due to the dilution of her vote and the burden on her efforts to help elect Democratic Party candidates." The Eleventh Circuit recently explained that "[a] candidate's electoral loss does

not, by itself, injure those who voted for the candidate. Voters have no judicially enforceable interest in the *outcome* of an election." *Jacobson*, 957 F.3d at 1202 (citing *Raines v. Byrd*, 521 U.S. 811, 819, 824 (1997)). "Instead, they have an interest in their ability to vote and in their vote being given the same weight as any other." *Id.* The circuit concludes "that absent any evidence of vote dilution or nullification, a citizen is not injured by the simple fact that a candidate for whom she votes loses or stands to lose an election." *Id. See also Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009); *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 390 (1st Cir. 2000). This court agrees. Miller does not allege that her vote will not be counted; only that the Ballot-Order Statute places a burden on voters generally due the Republican candidates' first position on the ballot. The alleged injury, which is common to all voters, is legally insufficient to establish Article III standing.

Miller's allegation of dilution of votes likewise fails to establish an injury-in-fact because it is based upon "group political interests, not individual legal rights." *Gill v. Whitford*, ___ U.S. ___, 138 S. Ct. 1916, 1933 (2018). "The 'generalized partisan preferences' on which the voters rely cannot provide an injury in fact sufficient for Article III standing." *Jacobson*, 957 F.3d at 1204 (quoting *Gill*, 138 S. Ct. at 1933).

### 2. Committee Plaintiffs' Standing

Hughs argues that Plaintiffs Texas Democratic Party; DNC Services Corp., d/b/a Democratic National Committee; Democratic Senatorial Campaign Committee; and Democratic Congressional Campaign Committee (the "Committee Plaintiffs") lack organizational and associational standing. Committee Plaintiffs seek to establish organizational standing based upon their own injuries,[2] and

---

[2] *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *N.A.A.C.P. v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010).

associational standing based upon the injuries of their members.[3]  The court finds that Committee

Plaintiffs fail to prove an injury under either theory and therefore lack Article III standing.

As associations or organizations, Committee Plaintiffs must satisfy independently the

requirements of *Lujan* in order to establish standing.

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally
> protected interest which is (a) concrete and particularized; and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal
> connection between the injury and the conduct complained of—the injury has to be
> "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result
> [of] the independent action of some third party not before the court." Third, it must
> be "likely," as opposed to merely "speculative," that the injury will be "redressed by
> a favorable decision."

504 U.S. at 560–61 (internal citations and footnote omitted, alterations in original).  *See also*

*Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, ___U.S.___, 140 S. Ct. 1009,

1014 (2020) ("[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we

usually ask what the plaintiff must prove in the trial at its end."); *City of Kyle*, 626 F.3d at 237.

Regarding Committee Plaintiffs' associational-standing claim, the court finds no allegation

that a specific member of any of Committee Plaintiffs has been or will be unable to vote or that any

candidate member has lost or will lose an election a result of the Ballot-Order Statute, which has

been in effect since 1963.  Committee Plaintiffs' allegations merely suggest, in the abstract, that

some members may have been harmed by the statute in previous elections and may be harmed in the

2020 general election.  Such allegations are insufficient for associational standing because the

---

[3]  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006).

alleged injury is neither concrete nor imminent. *See Lujan*, 504 U.S. at 560; *City of Kyle*, 626 F.3d at 237; *Benkiser,* 459 F.3d at 587 (5th Cir.2006).

As to Committee Plaintiffs' organizational standing, they may establish injury-in-fact by showing that they diverted significant resources to counteract Hughs's conduct such that Hughs's conduct significantly and "perceptibly impaired" Committee Plaintiffs' ability to provide their "activities—with the consequent drain on [their] resources . . . ." *Havens,* 455 U.S. at 379. *See also City of Kyle*, 626 F.3d at 238. Such injury must be "concrete and demonstrable." *Id.* Committee Plaintiffs have alleged only that the resources diverted to combat the Ballot-Order Statute's effect would otherwise go to other projects generally identified in the complaint, such as the Texas Democratic Party's "Get Out The Vote Programs" and the other Committee Plaintiffs' support of candidates in states outside of Texas. Committee Plaintiffs have not alleged that the diversion of resources concretely and "perceptibly impaired" the Committee Plaintiffs' ability to carry out their purpose. *Havens,* 455 U.S. at 379. *See also City of Kyle*, 626 F.3d at 239. Therefore, the court concludes that Committee Plaintiffs have alleged no injury-in-fact to establish associational or organizational standing.[4]

### C. Justiciability

Even assuming Plaintiffs have standing, the complaint suffers from another jurisdictional defect: it presents a nonjusticiable political question. Plaintiffs' complaint fails to establish that the Ballot-Order Statute burdens their right to vote such that the court cannot examine the statute under

---

[4] Having concluded that the Committee Plaintiffs lack Article III standing, the court need not address Hugh's argument that the Committee Plaintiffs lack statutory standing as defined by *Lexmakr Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014).

the *Anderson-Burdick* framework.[5]  *See Crawford v. Marion County Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring).[6]

The standard of review for laws regulating the right to vote under the First and Fourteenth Amendments  was analyzed by the Supreme Court in *Burdick*, which holds that states "must play an active role in structuring elections," and that "[e]lection laws will invariably impose some burden upon individual voters."  504 U.S. at 433.  Thus, courts must first "identify a burden before [they] can weigh it." *Crawford*, 553 U.S. at 205.

Hughs argues that the Supreme Court's recent decision in *Rucho v. Common Cause*, ____U.S.___, 139 S. Ct. 2484 (2019), is relevant to the court's inquiry in this case.  The court agrees.  Although *Rucho* involved political gerrymandering, the Supreme Court explains that by their very nature some controversies are not redressable by the courts because "the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Id.* at 2494 (quoting *Vieth v. Jubelirer,* 541 U.S. 267, 277 (2004) (plurality opinion)).  "In such a case the claim is said to present a 'political question' and to be nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)).  "Among the political question cases the Court has identified are those that lack 'judicially discoverable and manageable standards for resolving [them].'" *Id.*  The Court concludes that partisan gerrymandering claims are nonjusticiable political questions because they rest on an initial determination of what is "fair," and a secondary determination of how much deviation from what

---

[5]  *Anderson v. Celebrezze,* 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

[6] *See also Mecinas v. Hobbs*, CV-19-05547-PHX-DJH, 2020 WL 3472552, at *12 (D. Ariz. June 25, 2020).

is fair is permissible. *Id.* at 2500. These questions of fairness, the Court holds, are best left to the legislatures and not the courts. *Id.*

Plaintiffs argue that the holding in *Rucho* "cannot be read to support the Secretary's expansive suggestions that *all* elections-related claims with political ramifications are suddenly non-justiciable." Nonjusticiability may be rare, but that does not mean that it may not be applied outside of the issue of gerrymandering claims, so long as there is an "absence of a constitutional directive or legal standard[]" to guide the courts. *Id.* at 2508. In a recent case involving a question far outside the issue of partisan gerrymandering, the Ninth Circuit recently extended the reasoning of *Rucho* to find that claims related to climate change are nonjusticiable. *Juliana v. United States*, 947 F.3d 1159, 1173 (9th Cir. 2020) ("The Court found in *Rucho* that a proposed standard involving a mathematical comparison to a baseline election map is too difficult for the judiciary to manage. It is impossible to reach a different conclusion here.") (internal citations omitted).

Plaintiffs' complaint asserts that the Ballot-Order Statute "provides an unfair, arbitrary, and artificial advantage to all candidates whose political party won the last gubernatorial election.." Thus, Plaintiffs' ask this court to determine what is "fair" with respect to ballot order. This request to determine what is "fair" is the precise question that the Supreme Court in *Rucho* declined to address. 139 S. Ct. at 2494; *see also Jacobson*, 957 F.3d at 1213 ("No judicially discernable and manageable standards exist to determine what constitutes a 'fair' allocation of the top ballot position, and picking among the competing visions of fairness poses basic questions that are political, not legal.") (internal citations omitted). In order to examine the alleged burden on Plaintiffs in this case, the court would have to accept Plaintiffs' version of what is fair, which this court cannot do. It is not the job of the court to determine best practices.

Moreover, the allegations in the complaint are not based upon Plaintiffs being prevented from exercising their right to vote. Plaintiffs theory is that their votes are diluted by Republican candidates being listed first on the ballot. These alleged injuries are neither actual nor concrete. As there is no burden, the court is unable to weigh it. *See Crawford*, 553 U.S. at 205. Plaintiffs fail to establish that the Ballot-Order Statute meaningfully burdens them in a way in which the Supreme Court has recognized as being appropriate for examination under the *Anderson-Burdick* framework. *See Crawford*, 553 U.S. at 181 (analyzing constitutionality of photo-identification law); *Clingman v. Beaver*, 544 U.S. 581, 584 (2005) (challenging Oklahoma's semi-closed primary system); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 353–54 (1997) (analyzing law forbidding candidates from appearing on ballot for more than one party); *Burdick*, 504 U.S. 428, 440–41 (examining complete prohibition on write-in voting); *Norman v. Reed*, 502 U.S. 279, 288–89 (1992) (overturning law limiting access of new political parties on ballot); *Munro v. Socialist Workers Party*, 479 U.S. 189, 190 (1986) (challenging statute that restricted minor-party candidates from appearing on ballot unless they met specific criteria). Specifically, the statute here does not prevent candidates from appearing on the ballot or prevent anyone from voting; it merely establishes the order by which candidates appear on the ballot.

Having concluded that Plaintiffs have failed to satisfy standing and that Plaintiffs' claims are nonjusticiable because there is no judicially discernible and manageable standards to adjudicate them, the court shall dismiss Plaintiffs' complaint for lack of jurisdiction.[7]

---

[7] Hughs also argues that Plaintiffs' claims fail "because of laches, the benefits Plaintiffs previously accepted, unclean hands, and *in pari delicto*." Because the court concludes that it lacks jurisdiction, the court need not address Hughs's additional arguments.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that The Texas Secretary of State's Motion to Dismiss filed December 12, 2019 (Doc. #33) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint for Declaratory and Injunctive Relief is **DISMISSED**.[8]

A Final Judgment shall be filed subsequently.

SIGNED this _____ day of July, 2020.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

---

[8] Having dismissed Plaintiffs' complaint, the court **FURTHER ORDERS** that Plaintiffs' Opposed Motion to Proceed with Trial Via Video Conference filed June 22, 2020 (Doc. #70) is **DISMISSED**.