UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RACHEL MILLER; TEXAS DEMOCRATIC PARTY; DEMOCRATIC NATIONAL COMMITTEE d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; and DCCC,<br><br>Plaintiffs,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>Defendant. | Civil Action No. 1:19-cv-01071-LY |

**PLAINTIFFS' OPPOSED MOTION FOR RECONSIDERATION**

## I.   Introduction

Plaintiffs seek reconsideration of this Court's July 10 Order granting the Secretary's Motion to Dismiss, ECF No. 76 ("Order") on the grounds that it rested on manifest errors of law and fact. *First*, the Court erred in holding that the Texas Democratic Party ("TDP"), DSCC, DCCC, and Democratic National Committee ("DNC") (collectively "Committee Plaintiffs"), all official committees of the Democratic Party, lacked Article III injury because the Court failed to address standing based on harm to the Party's electoral prospects, a theory of injury that the Fifth Circuit and at least seven other Circuits have recognized and found sufficient to invoke federal jurisdiction. *Second*, the Court erred in holding that Committee Plaintiffs lacked associational standing and failed to demonstrate diversion of resources because the Court applied an evidentiary standard contrary to Supreme Court and Fifth Circuit precedent. *Finally*, the Court erred in holding that *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), renders this case nonjusticiable because the Court neglected decades of courts finding cases of this nature justiciable and ignored the history of the Supreme Court's political question jurisprudence. For the reasons set forth below, Plaintiffs respectfully request that the Court reconsider its Order and schedule this matter for a trial on the merits at the Court's convenience following the November election.[1]

## II.   Legal Standard

This Court treats a motion for reconsideration as a motion to alter or amend a judgment under Rule 59(e). *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered

---

[1] Plaintiffs have met and conferred with the Secretary and she is opposed to this motion.

1

evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). A court "correctly" grants a motion to reconsider when a decision overlooks binding precedent. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 374 (5th Cir. 2002); *see also id.* at n.7.

### III. Argument

#### A. Committee Plaintiffs have competitive standing.

The Court's Order identified and discussed two of Committee Plaintiffs' asserted bases for standing—diversion of resources and associational standing, *see* Order at 9-11—but failed to consider their third and independent basis for standing, made pursuant to binding Fifth Circuit precedent, that political parties have competitive standing to challenge election laws that threaten their electoral prospects by systemically favoring another party over them. *See* ECF No. 57 at 24:10-25:22; ECF No. 68 at 2-3; ECF No. 74 at 1-2. In *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 586-87 (5th Cir. 2006), the Fifth Circuit detailed this basis for standing in holding that TDP (also one of the Plaintiffs in this litigation) had standing to challenge an attempt by the Texas Republican Party to replace the name of an ineligible candidate on the ballot. *Id.* at 585. In addition to finding that TDP had associational standing to sue based on the injury to the Democratic candidate—another basis for the standing of Committee Plaintiffs here, *see infra* Section III.C— the Court found TDP had "direct standing" based on threatened "harm to its election prospects." *Id.* at 586. Specifically, the Court explained that not only would replacing the ineligible candidate reduce the Democratic "congressional candidate's chances of victory," but also that "'down-ballot' Democratic candidates, like county commissioners and judges, would suffer due to the change's effect on voter turnout and volunteer efforts." *Id.* at 586. This constituted an Article III injury

2

because "a political party's interest in a candidate's success is not merely an ideological interest. Political victory accedes power to the winning party" and "threatened loss of that power is [] a concrete and particularized injury sufficient for standing purposes." *Id*. at 587.

The Fifth Circuit is in good company in recognizing that harm to a political party's electoral prospects is an injury cognizable under Article III. At least seven other Circuits have recognized this ground for standing, including specifically in ballot order challenges. *See Green Party of Tenn. v. Hargett*, 767 F.3d 533, 544 (6th Cir. 2014) (concluding political parties "subject to" ballot-ordering provision had standing to challenge it); *LaRoque v. Holder*, 650 F.3d 777, 786-87 (D.C. Cir. 2011) (holding candidate had standing to challenge law that "provid[es] a competitive advantage to his . . . opponents"); *Smith v. Boyle*, 144 F.3d 1060, 1062 (7th Cir. 1998) (holding Republican Party had standing to challenge at-large election method that disadvantaged Republicans); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (holding Conservative Party had standing to challenge opposing candidate's position on ballot on grounds it "could siphon votes from . . . and therefore adversely affect the interests of the Conservative Party"); *Owen v. Mulligan*, 640 F.2d 1130, 1133 (9th Cir. 1981) (holding Republican committee members had standing where they "seek to prevent their opponent from gaining an unfair advantage in the election process"); *Schiaffo v. Helstoski*, 492 F.2d 413, 422 (3d Cir. 1974) (holding candidate had standing to challenge opponent's right to send constituent mail postage-free because damage to his "electoral prospects constitutes a noneconomic harm"). Just last week the Eighth Circuit joined these other Circuits, holding political party committees have competitive standing to challenge ballot order statutes they allege "unequally favor[] supporters of *other* political parties." *Pavek v. Donald J.*

3

*Trump for President, Inc.*, No. 20-2410, 2020 WL 4381845, at *1 (8th Cir. July 31, 2020).[2]

Thus, under binding precedent and this raft of persuasive authority, the Court's conclusion that Committee Plaintiffs failed to allege a sufficient injury to pursue this action was manifest error. As a practical matter, starting every election with a built-in disadvantage based on ballot position, which Committee Plaintiffs allege occurs to every single candidate they support, *see* Compl., ECF No. 1, ¶¶ 3,5, 14-17, 19, 21-23, 28-39, is a straightforward harm to the Committee Plaintiffs' chances of electoral success. The Court must accept these allegations as true in ruling on the motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). On this basis alone, the Court should reconsider its conclusion that Committee Plaintiffs lack standing to proceed.

      **B.**    **Committee Plaintiffs adequately alleged diversion of resources sufficient to overcome a motion to dismiss.**

Independently, this Court's conclusion that Plaintiffs failed to demonstrate diversion of resources sufficient to proceed was incorrect. The elements of standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation," *Three Expo Events, L.L.C. v. City of Dallas, Texas*, 907 F.3d 333, 341 (5th Cir. 2018) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)), and Committee Plaintiffs have demonstrated sufficient evidence to overcome a motion to dismiss by showing both that the Ballot Order Statute will cause them to spend increased amounts in Texas due to an unfair competitive landscape, and that it will cause the DSCC, DCCC, and DNC, which are national organizations, to divert resources away

---

[2] The Eighth Circuit stayed a ruling preliminarily enjoining Minnesota's ballot ordering system because it found Minnesota's statute, which lists major party candidates in *reverse order* of the parties' electoral performance in the last general election, furthered important state interests in encouraging political diversity, countering incumbent effects, and discouraging single party rule. 2020 WL 4381845 at *2. It contrasted this to problematic ballot ordering statutes, like Texas's, which systematically favor the party in power. *Id*.

from other states to Texas, "perceptibly impair[ing]" their ability to carry out their purposes of supporting Democratic candidates nationwide. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also*, *e.g.*, *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990) (noting law which harms a candidate's electoral prospects also provides standing due to the requirement of "additional campaigning and outlays of funds").

Each Committee Plaintiff adequately detailed these diversions in both the Complaint and their affidavits in support of the motion for a preliminary injunction. *See* Compl. ¶¶ 14-17; ECF No. 20-2 ¶ 8 (DCCC stating because it supports candidates all over the country "a decision to spend more money to support candidates in Texas[] has ramifications for what DCCC can do to support candidates in congressional districts elsewhere"); ECF No. 20-9 ¶ 13 (DSCC discussing difficult resource allocation decisions it will be forced to make, which "will mean either that it does not put enough resources in to combat the advantage that the Ballot Order Statute gives Republicans, or that it takes money away from other competitive races elsewhere in order to accomplish that"); ECF No. 20-10 ¶¶ 10, 18 (DNC stating it has to allocate money to state parties nationwide and Ballot Order Statute will require diverting more money to Texas to the detriment of its support and programs in other states); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (noting Court can consider matters outside pleadings to resolve attack on standing).

Thus, the Court's conclusion that Committee Plaintiffs failed to demonstrate standing on a diversion of resources theory sufficient to overcome a motion to dismiss was also manifest error.

### C.     Committee Plaintiffs have associational standing.

This Court's conclusion that Committee Plaintiffs did not demonstrate associational standing because they did not demonstrate that the Ballot Order Statute has prevented any of their

5

members from voting or has caused any of their candidates to lose was also in error because it heightens the requirements of standing in contravention of Fifth Circuit and Supreme Court precedent. *See* Order at 10. The Fifth Circuit has made clear that standing demands only the smallest, "identifiable trifle" of an injury. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017); *see also United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax.") (citations omitted). Plaintiffs have more than met that bar, alleging that the Ballot Order Statute systematically harms the electoral prospects of Democratic candidates, Compl. ¶ 23, and that this burden has become more significant as Texas elections have grown closer. *Id.* ¶¶ 28-31. Further, Plaintiffs highlighted that the Ballot Order Statute may be outcome determinative in many elections in Texas in 2020. *Id.* ¶¶ 33-38.

There is simply no precedent stating that a party or candidate only has standing to challenge an election law that they can prove has or will result in them losing an election. To the contrary, in *Benkiser*, the Fifth Circuit found associational standing "for similar reasons that the TDP has direct standing": the "threat[]" to the candidate's "election prospects and campaign coffers." 459 F.3d at 587. The Court did not require any showing that the challenged activity would cause TDP's candidates to *lose* the election. This is consistent with the holdings of multiple other Circuits that have found that laws which merely place a candidate at a *competitive disadvantage* provide an injury sufficient to confer standing, *not one of which* required proof that but for the challenged law the candidate would win. *See, e.g.*, *LaRoque*, 650 F.3d at 786-87 (holding candidate had competitive standing to challenge election law "even if 'the multiplicity of factors bearing on

elections' prevents [him] from establishing 'with any certainty that the challenged rules will disadvantage [his] . . . campaign[]'") (quoting *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 90-91 (D.C. Cir. 2005)); *Fulani*, 917 F.2d at 1030 (holding candidates had standing to challenge improper inclusion of other candidates on the ballot due to "increased competition"); *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621, 626–27 (2d Cir. 1989) (holding candidate had injury when deprived of participation in debates because it "palpably impaired" her ability to compete on equal footing with other candidates); *Owen*, 640 F.2d at 1132-3 (holding candidate had standing due to "potential" loss of election from his competitor receiving preferential postage rates on campaign mail); *Schiaffo*, 492 F.2d at 422 (holding candidate had standing because damage to his "electoral prospects constitutes a noneconomic harm"); *see also Green Party of Tenn.*, 767 F.3d at 544-45 (holding minor political parties that received small percentage of vote had standing to challenge ballot ordering statute because it "affected" their candidates).[3]

### D. This case presents a justiciable question.

This Court's holding that this case is nonjusticiable both overlooks all of the courts which have previously adjudicated ballot order claims under the standard Plaintiffs advance here and overreads *Rucho* to represent a sea-change in the Supreme Court's political question jurisprudence contrary to the plain language of the opinion itself. *Rucho* held that, where the Supreme Court had

---

[3] To the extent the Court credits Defendant's argument that the Committee Plaintiffs fail to establish associational standing because they do not identify a specific candidate by name, this argument is wrong both as a matter of law, *see Hancock Cty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) (holding an association need not "set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing"), and as a matter of fact, *see* Compl. ¶¶ 34-36 (identifying races in Congressional Districts 10, 21, 22, 23, 24, 31 and the United States Senate). The names of the Democratic candidates in all of those races were not even known until the July 14, 2020 runoff.

tried (and failed) for nearly half a century to formulate a way to adjudicate *partisan gerrymandering* cases, it could identify no judicially manageable standard. 139 S. Ct. at 2484. That *Rucho*'s reasoning was applied in the climate change case of *Juliana v. United States*, 947 F. 3d 1159, 1173 (9th Cir. 2020), is hardly surprising: courts have likewise been unable to formulate a standard for evaluating whether the government has done enough to ensure a "climate system capable of sustaining human life." *Id*.

The same is manifestly *not* true of ballot order challenges. All the while the Supreme Court was struggling to identify a judicially manageable standard for partisan gerrymandering claims, both it and lower federal courts applying its precedent were ably deciding *precisely* the types of claims that Plaintiffs bring here—and they have continued to do so since *Rucho* was decided. *See, e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980); *Sangmeister v. Woodard*, 565 F.2d 460, 465 (7th Cir. 1977); *Netsch v. Lewis*, 344 F. Supp. 1280, 1281 (N.D. Ill. 1972); *see also Gould v. Grubb*, 14 Cal. 3d 661, 669-70 (1975). For the past 30-some years, federal courts have evaluated ballot order challenges just like this one using the now-familiar *Anderson/Burdick* balancing test. *See, e.g.*, *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 716-17 (4th Cir. 2016); *Green Party of Tenn.*, 767 F.3d at 551; *Jacobson v. Lee*, 411 F. Supp. 3d 1249 (N.D. Fla. 2019), *vacated and remanded sub nom. Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193 (11th Cir. 2020); *Graves v. McElderry*, 946 F. Supp. 1569, 1578 (W.D. Okla. 1996); *see also Nelson v. Warner*, No. 3:19-0898, 2020 WL 4004224, at *8 (S.D.W. Va. July 15, 2020) (holding *Rucho* does not render challenge to ballot order statute nonjusticiable as "courts have competently adjudicated ballot order cases using equal protection principles for decades"). As the Eighth Circuit noted just one week ago, "[w]e have adjudicated the merits of such claims before and have comfortably employed

judicially manageable standards in doing so." *Pavek*, 2020 WL 4381845, at *1 (citing *McLain*, 637 F.2d at 1165-67); *see also id.* at *2 ("Because [Minnesota's ballot order statute] implicates the right to vote, we apply the so-called *Anderson/Burdick* standard when evaluating the statute's constitutionality.") (citations omitted).[4]

Even the Supreme Court has passed upon the constitutionality of a ballot order scheme, clearly rejecting the argument that ballot order challenges are nonjusticiable. At issue in *Mann v. Powell* was a practice that ordered candidates based on when their nominating petitions were received and, when two were received simultaneously, favored incumbents. 314 F. Supp. 677, 679 (N.D. Ill. 1969). The district court found this systemic favoritism of incumbents—even *only* as a tie-breaker—an "unlawful invasion of plaintiffs' Fourteenth Amendment right to fair and evenhanded treatment," *id.*, and issued a preliminary injunction requiring that ballot order be determined by a "nondiscriminatory means by which" candidates whose petitions were received simultaneously must "have an equal opportunity to be placed first on the ballot." *Id*. Among the

---

[4] Beyond its application specifically to ballot ordering statutes, the Court's statement that the Supreme Court has only applied *Anderson-Burdick* to evaluate cases involving laws that "prevent candidates from appearing on the ballot" or "prevent [voters] from voting," Order at 14, is incorrect. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451-52 (2008) (utilizing *Anderson-Burdick* to consider challenge to system that allowed candidates to appear on primary ballot with designated party preference and had top two vote getters advance to general election as violation of political parties' associational rights); *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572-586 (2000) (utilizing *Anderson-Burdick* to hold California's open primary system violated political parties' associational rights); *see also, e.g.*, *Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 175 (4th Cir. 2017) (applying *Anderson-Burdick* in considering challenge to law prohibiting local candidates from having party identifier appear next to their name on ballot); *Libertarian Party v. D.C. Bd. of Elections & Ethics*, 682 F.3d 72, 74 (D.C. Cir. 2012) (applying *Anderson-Burdick* in considering challenge to regulation regarding vote tally of losing write-in candidates); *Wexler v. Anderson*, 452 F.3d 1226, 1231-32 (11th Cir. 2006) (applying *Anderson-Burdick* in considering challenge to Florida's practice of employing different manual recount procedures according to type of voting system employed in each county).

issues raised in Appellants' Jurisdictional Statement in that case was the precise question of whether such a case was justiciable at all. *See Powell v. Mann*, Appellants' Jurisdictional Statement, No. 1359, 1970 WL 155703, at *5-6 (U.S., Mar. 27, 1970) (presenting question for review whether "the 'political question doctrine' . . . permit[s] federal judicial cognizance of political cases, involving inter- or intra-party election disputes"); *see also id*. at *21 (arguing lower court lacked jurisdiction due to "[t]he lack of predeterminable federal standards, based on some neutral principle [which are] too subjective to allow federal courts in the antagonistic climate of pre-election politics"). The Supreme Court did not take the bait. Instead, it summarily affirmed the district court, 398 U.S. 955, and that affirmance binds this Court. S*ee Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975).

The Supreme Court made clear in *Rucho* that the partisan gerrymandering context presents the "rare circumstance" where the questions raised are beyond the reach of federal court. 139 S. Ct. at 2508. Thus, by its own terms, *Rucho* is the exception to the rule, not the new prevailing standard. Indeed, the Supreme Court has only found a handful of issues to be nonjusticiable political questions in its 225-year existence, and research has not revealed a single instance in which it suddenly declared an entire category of litigation non-justiciable without expressly saying so. *See generally* John Harrison, *The Political Question Doctrines*, 67 Am. U. L. Rev. 457 (2017).

In short, *Rucho* does not render this case nonjusticiable.

### IV.   Conclusion

For the reasons stated herein, Plaintiffs respectfully request that the Court reconsider its July 10, 2020 Order, deny the Secretary's motion to dismiss, and schedule this matter for a trial on the merits at the Court's convenience following the November election.

Dated this 7th day of August, 2020.

Respectfully submitted,

/s/ *John M. Geise*

Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
showton@perkinscoie.com

Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

Gillian Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: (310) 788-3245
Facsimile: (310) 843-1244
gkuhlmann@perkinscoie.com

*Counsel for the Plaintiffs*
*\*Admitted Pro Hac Vice*

Chad W. Dunn, TX# 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Plaintiff Texas Democratic Party*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *John M. Geise*
John M. Geise
