```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TEXAS
 2                            AUSTIN DIVISION

 3   TEXAS DEMOCRATIC PARTY, DEMOCRATIC   ) AU:19-CV-01063-LY
     SENATORIAL CAMPAIGN COMMITTEE,       )
 4   DEMOCRATIC CONGRESSIONAL CAMPAIGN    )
     COMMITTEE, EMILY GILBY, TERRELL      )
 5   BLODGETT, TEXAS YOUNG DEMOCRATS,     )
     TEXAS COLLEGE DEMOCRATS,             )
 6                                        )
        Plaintiffs,                       )
 7                                        )
     V.                                   ) AUSTIN, TEXAS
 8                                        )
     RUTH HUGHS,                          )
 9                                        )
        Defendant.                        ) MARCH 17, 2020
10   ---------------------------------------------------------------
     RACHEL MILLER, TEXAS DEMOCRATIC      ) AU:19-CV-01071-LY
11   PARTY, DNC SERVICES CORP., DSCC, DCCC,)
                                          )
12      Plaintiffs,                       )
                                          )
13   V.                                   ) AUSTIN, TEXAS
                                          )
14   RUTH HUGHS,                          )
                                          )
15      Defendant.                        ) MARCH 17, 2020

16          ************************************************
                    TRANSCRIPT OF TELEPHONE CONFERENCE
17                  BEFORE THE HONORABLE LEE YEAKEL
            ************************************************
18
     APPEARANCES:
19
     FOR THE PLAINTIFFS:   CHAD W. DUNN
20                         BRAZIL & DUNN
                           4407 BEE CAVES ROAD, BUILDING 1, SUITE 111
21                         AUSTIN, TEXAS 78746

22                         JOHN M. GEISE
                           PERKINS COIE, LLP
23                         700 THIRTEENTH STREET N.W., SUITE 600
                           WASHINGTON, D.C. 20005-3960
24

25
```

```
 1                            KEVIN J. HAMILTON
                              ABHA KHANNA
 2                            PERKINS COIE, LLP
                              1201 THIRD AVENUE, SUITE 4900
 3                            SEATTLE, WASHINGTON 98101-3099

 4                            GILLIAN C. KUHLMANN
                              PERKINS COIE LLP
 5                            1888 CENTURY PARK EAST, SUITE 1700
                              LOS ANGELES, CALIFORNIA 90067-1721
 6
    FOR THE DEFENDANT:        PATRICK K. SWEETEN
 7                            WILLIAM THOMAS THOMPSON
                              MICHAEL ABRAMS
 8                            ERIC A. HUDSON
                              TEXAS ATTORNEY GENERAL
 9                            300 WEST 15TH STREET, 9TH FLOOR
                              AUSTIN, TEXAS 78701
10
    COURT REPORTER:           ARLINDA RODRIGUEZ, CSR
11                            501 WEST 5TH STREET, SUITE 4152
                              AUSTIN, TEXAS 78701
12                            (512) 391-8791

13

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

```
16:02:49   1            (In chambers)
16:02:49   2                 THE COURT:  Okay.  Only one housekeeping chore is
16:02:53   3   we're not looking at you, but we do have a court reporter.  So
16:02:57   4   anytime anyone speaks, just state your name and then speak so
16:03:02   5   we'll have the complete record.
16:03:04   6                 So, whoever wants to tell me first, tell me what your
16:03:07   7   problem is.
16:03:09   8                 MR. HAMILTON:  All right.  Thank you, Your Honor.
16:03:10   9   This is Mr. Hamilton on behalf of the plaintiff in both of
16:03:13  10   these cases.  I have formally appeared in the *Gilby* case, but
16:03:22  11   my law firm and Ms. Khanna, who is on the line here today has
16:03:27  12   entered an appearance on the Miller case.  So I'll be
16:03:30  13   addressing both of them.
16:03:32  14                 The concern, Your Honor, is no surprise.  The
16:03:37  15   coronavirus has been sweeping the country and courts around the
16:03:41  16   nation, including this one, has entered orders with respect to
16:03:46  17   in-person courtroom appearances.  The second wave of those
16:03:50  18   orders is now happening in different courts -- this is my third
16:03:56  19   call in three days -- with respect to depositions, because,
16:04:01  20   obviously, those require courtroom staff -- sorry -- legal
16:04:06  21   staff, court reporters, witnesses, and lawyers all to
16:04:11  22   congregate in small conference rooms for hours at a time, which
16:04:15  23   is contrary, of course, to the advice of all the health
16:04:21  24   professionals.
16:04:21  25                 THE COURT:  Yes.  But it might be helpful in culling
```

```
16:04:24   1   the herd.
16:04:24   2           (Laughter)
16:04:24   3           MR. HAMILTON:  That's true, Your Honor, it probably
16:04:26   4   would.  Particularly those of us who are over 60 are
16:04:29   5   particularly vulnerable.
16:04:31   6           The reason that we're raising is we have a deposition
16:04:34   7   scheduled tomorrow.  It's a 30(b)(6) deposition of the
16:04:37   8   representative of the Texas Democratic Party.  The witness is
16:04:41   9   Glen Maxey.  He is 68 years old, diabetic, and has underlying
16:04:45  10   health issues that makes him particularly vulnerable.  We have
16:04:51  11   a deposition on Thursday in the Miller case of Ms. Miller, who
16:04:56  12   will have to drive from Fort Worth to Austin for the
16:04:59  13   deposition.  And on Friday of Ms. Gilby.  She's local, so
16:05:03  14   there's no driving involved, but all three of them will involve
16:05:07  15   in-person depositions.
16:05:09  16           So what we've proposed, this is -- this is not a
16:05:15  17   difficult problem.  In other litigation and arbitration
16:05:18  18   elsewhere in the court, or elsewhere in the country, what we
16:05:21  19   have -- we've proposed is to take the depositions
16:05:24  20   telephonically and/or by video with the witness being in a room
16:05:31  21   six feet away from a court reporter on video and -- and the
16:05:36  22   lawyers participating either by video or by telephone.
16:05:42  23           The only -- you know, only concern that we've heard
16:05:46  24   from the State, who has refused to agree so far and, instead,
16:05:49  25   proposed to continue -- and I'll let them speak for themselves
```

16:05:52  1  in a moment.  The only concern we've heard is this
16:05:57  2  technological one.  And I submit, Your Honor, at this point in
16:06:00  3  2020, that's not -- that's not a problem that is material or
16:06:05  4  significant.
16:06:07  5           I have a college senior who has just had her college
16:06:12  6  senior spring break or spring semester canceled, and all of the
16:06:16  7  classes from school are going to be done by video conference
16:06:19  8  involving a heck of a lot more than three people using
16:06:24  9  platforms like Zoom that are really easy to use.  Our law firm
16:06:29  10 is using it all over the country, and colleges from coast to
16:06:30  11 coast are literally using that platform.  So I don't think
16:06:34  12 there's a technology problem here.
16:06:36  13          The other point I would make is -- and the Court may
16:06:41  14 already be aware of this.  Of course, it's not applicable to
16:06:44  15 Your Honor and the Western District of Texas, but the Supreme
16:06:51  16 Court of Texas issued an order yesterday regarding a COVID-19
16:06:57  17 state of disaster.  And paragraph 2(b) of that order
16:07:00  18 specifically directed that, in state court in Texas, that the
16:07:07  19 courts should allow or require anyone involved in any hearings,
16:07:10  20 depositions, or any other proceeding of any kind, including but
16:07:16  21 not limited to a party attorney with a court reporter, to
16:07:21  22 participate remotely, such as by teleconferencing, video
16:07:25  23 conferencing, or other means.
16:07:26  24          Your Honor, I think you obviously have the plenary
16:07:29  25 authority to direct parties to cooperate and to take or defend

16:07:33  1  these depositions remotely, and that's what we're asking for
16:07:39  2  here.
16:07:39  3           The State has suggested that we simply extend the
16:07:43  4  discovery cutoff and, you know, delay these depositions.
16:07:47  5  That's not going to solve the problem.  This issue isn't going
16:07:50  6  to go away in a matter of days or weeks.  It's probably at
16:07:57  7  least months.  And this case can't be delayed because of the
16:08:04  8  press of the election dates.  So we need to stay on track.  The
16:08:07  9  depositions need to move forward.  There's no reason to delay
16:08:10 10  them, and it's simply a matter of protecting the health and
16:08:13 11  safety and lives of the staff, court reporters, lawyers, and
16:08:18 12  witnesses who are going to be hauled in during the course of
16:08:24 13  discovery in the matter.
16:08:25 14           So that's what we're simply asking Your Honor, is a
16:08:28 15  minute order directing the parties cooperate to take these
16:08:29 16  depositions remotely.
16:08:32 17           THE COURT:  All right.  Who wants to speak for the
16:08:34 18  State in both cases?
16:08:36 19           MR. SWEETEN:  Your Honor, this is Patrick Sweeten.
16:08:38 20           And so I want to address a few issues.  First of all,
16:08:43 21  we are aware of COVID-19 and the concerns that exist, you know,
16:08:47 22  with respect to that.  And in no way were we insisting on
16:08:50 23  in-person contact in these next three depositions in the next
16:08:53 24  few days.  That's not accurate.  That's a red herring.
16:08:59 25           In fact, yesterday I spoke to counsel from BC face to

| | | |
|---|---|---|
| 16:09:02 | 1 | face, who indicated that he was going to be in Austin and at |
| 16:09:05 | 2 | the deposition. We then learned last night that, you know, |
| 16:09:09 | 3 | he's got a health problem and that he's over 65. That's the |
| 16:09:12 | 4 | first time they've mentioned it. We even made arrangements |
| 16:09:16 | 5 | yesterday as to where to take him. |
| 16:09:17 | 6 | We're not trying to push forward -- if there are |
| 16:09:22 | 7 | concerns about his health, we're not trying to push forward and |
| 16:09:26 | 8 | take the depositions tomorrow. In fact, we have three |
| 16:09:29 | 9 | depositions that were all set as in-person depositions, and |
| 16:09:31 | 10 | I've told them in e-mail today that we're willing to move |
| 16:09:34 | 11 | those. |
| 16:09:34 | 12 | What we did, though, is we took I think a very |
| 16:09:37 | 13 | reasonable step of saying why don't we pause? I mean, the |
| 16:09:40 | 14 | reason we're at such a torrid pace is that we have a scheduling |
| 16:09:48 | 15 | deadline of fact discovery of May 1st in one case and May 15th |
| 16:09:52 | 16 | in the other. And why don't we just push one of those back |
| 16:09:55 | 17 | 30 days, which would make it June 15th and one of them back 45 |
| 16:10:00 | 18 | days and make it June 15th. We can still -- one of them has a |
| 16:10:05 | 19 | trial date of July 20th and 21st. We can still make that trial |
| 16:10:09 | 20 | date. |
| 16:10:09 | 21 | That would allow us to see where this is going and |
| 16:10:14 | 22 | maybe take these corporate rep depos towards May or June. You |
| 16:10:18 | 23 | know, that's -- you know, that's three or a four months out, |
| 16:10:21 | 24 | and things may change. And, you know, if -- if there's a |
| 16:10:27 | 25 | particular health concern that is coming up, you know, later in |

```
16:10:31   1   the fact discovery period, you know, we could address that, you
16:10:35   2   know, through technological means.
16:10:37   3           So they're trying to have us shift these three
16:10:40   4   depositions that we were going to take immediately into video
16:10:43   5   conference depositions.  You know, we're not ready to turn on a
16:10:47   6   dime on an e-mail that I saw for the first time when I got in
16:10:51   7   this morning and then turn, you know, three depositions this
16:10:54   8   week into video conference depositions.  And we think a better
16:10:57   9   way to handle that would just be let's move the -- the fact
16:11:00  10   discovery dates 30 days.
16:11:03  11           We can still make the trial dates.  There's plenty to
16:11:10  12   do in this case.  They've disclosed five experts in the ballot
16:11:13  13   order case, and that's the case that's already set for trial
16:11:16  14   that Your Honor allotted them six hours for.  So we've taken
16:11:19  15   one of the expert's depositions there.  We're working on our
16:11:22  16   experts.  We've got discovery issues between the parties as far
16:11:25  17   as getting written discovery exchanged back and forth.  There
16:11:28  18   is plenty to do, and we thought we could -- we could move the
16:11:32  19   depositions.  You know, perhaps as things unfold, in-person
16:11:36  20   depositions in May, June are going to be workable.
16:11:39  21           But, in the event that they are not, you know, then
16:11:43  22   we could talk about additional methods of handling it.  But no
16:11:46  23   one here from the State is saying we're going to take an
16:11:52  24   elderly person's deposition tomorrow in person and we won't
16:11:55  25   move from that.  We told them that.  And so that's a red
```

| | | |
|---|---|---|
| 16:12:00 | 1 | herring.  We think the more reasonable step would be simply to |
| 16:12:03 | 2 | move the fact discovery deadline to allow us to, you know, |
| 16:12:07 | 3 | react to this crisis. |
| 16:12:09 | 4 | You'll remember, Your Honor, on both of these cases |
| 16:12:11 | 5 | the same law firms has been pushing and saying we've got to |
| 16:12:17 | 6 | have this case heard -- you know, we've got to have this case |
| 16:12:20 | 7 | heard this summer.  Well, we already have a compressed trial |
| 16:12:24 | 8 | schedule as a result of them coming to this court saying it's |
| 16:12:26 | 9 | got to be done.  We've got to get this, you know, tried this |
| 16:12:31 | 10 | summer. |
| 16:12:32 | 11 | And so there is room to -- to move out 30 to 45 days, |
| 16:12:37 | 12 | depending on the case.  We're asking for 30 on ballot order and |
| 16:12:41 | 13 | we're asking for 45 on mobile voting, you know, with a uniform |
| 16:12:45 | 14 | deadline of June 15th.  And I think that there would still be |
| 16:12:48 | 15 | time, certainly, to make the July trial that the Court has |
| 16:12:50 | 16 | already set, that's already on the Court's schedule, and work |
| 16:12:54 | 17 | through this problem, you know, in a reasonable way in light of |
| 16:12:59 | 18 | this pandemic that has, you know, impacted many of my cases as |
| 16:13:04 | 19 | well. |
| 16:13:04 | 20 | And so we're working through these issues.  But I |
| 16:13:12 | 21 | think the primary step is let's get some room from these |
| 16:13:14 | 22 | already extremely compressed schedules that we were really |
| 16:13:16 | 23 | working to make and we were definitely on pace to make.  But |
| 16:13:18 | 24 | this has happened, and now they're trying to assert that we |
| 16:13:21 | 25 | have to take all of these in a certain way.  And we think |

```
16:13:24   1   that -- that the best way to handle that would be to just
16:13:27   2   extend the fact discovery deadline.
16:13:30   3              THE COURT:  All right.  Let me make a couple of
16:13:35   4   observations.
16:13:36   5              We do have the 1071 case set for trial July the 20th.
16:13:48   6   I think there is a need to get both of these cases tried
16:13:51   7   sometime in that range because -- I'm not suggesting that
16:13:56   8   you-all overlooked this, but most lawyers overlook the fact
16:14:04   9   that in all cases, particularly ones that have great statewide
16:14:07  10   impact and involve significant issues, the opinions don't jump
16:14:16  11   out off of the bench as soon as I've heard the testimony.  It
16:14:25  12   takes a good long time for us to write a reasoned opinion and
16:14:33  13   do the research.
16:14:35  14              I face these cases that generally have good lawyers
16:14:38  15   on both sides, and the good lawyers on both sides overlook how
16:14:43  16   difficult the cases are.  They're quite obvious and they're
16:14:46  17   quite apparent to one side and quite apparent to the other
16:14:53  18   side.  They're not that apparent to the Court.
16:14:55  19              We are underwater in Austin by the number of cases we
16:14:59  20   have.  We are hugely under-judged.  We only have two
16:15:04  21   United States district judges in Austin.  The last time we got
16:15:07  22   a new position in Austin was 1991, which means right now what
16:15:13  23   we're working with are the number of judges that the docket was
16:15:18  24   projected to be in 1991.
16:15:21  25              If you buy into the proposition that the amount of
```

```
16:15:26   1   legal activity in an area is a direct factor of how many people
16:15:30   2   you put in an area, which does give a good ratio, we have twice
16:15:35   3   as many people in the Austin Division of the Western District
16:15:39   4   of Texas than we did in 1991, and our dockets have just about
16:15:45   5   doubled and we're dealing with virtually -- using virtually the
16:15:51   6   same number of law clerks and judges to resolve them.
16:15:56   7               Yes, we got a new magistrate judge last summer, but
16:15:59   8   magistrate judges, while although somewhat helpful, are of
16:16:04   9   marginal utility, particularly here where we have the lion's
16:16:12  10   share of the constitutionality of statute cases that come down
16:16:15  11   the pike in Texas.
16:16:17  12               So let me just say that a July 20th trial date in the
16:16:21  13   1071 case is not pushing it in order to get an opinion out a
16:16:31  14   reasonable period before the November elections.
16:16:36  15               Now, I understand the argument that we've been doing
16:16:39  16   it this way a long time and there's nothing magic about
16:16:42  17   November of 2020.  And I am sympathetic to that.  There is an
16:16:51  18   urgency but, to a large extent, it's an artificial urgency that
16:16:56  19   only pertains to this election.  But what I'm telling you is,
16:17:00  20   if we get past late July to hear either one of these cases,
16:17:06  21   your chances of getting an opinion are not good just because it
16:17:14  22   takes a long time to get things out because of the sheer weight
16:17:17  23   of the docket.  And our criminal docket, while although not as
16:17:21  24   big as in some divisions, is large and is growing, and we have
16:17:26  25   to give precedence to the criminal cases, which pushes the
```

```
16:17:35   1   civil cases back farther.
16:17:37   2              Right now, based on the order that you have seen,
16:17:43   3   we're not having any jury cases through the end of April and
16:17:46   4   the grand jury has been recessed through the end of April,
16:17:53   5   which means when they come back into session, we're likely to
16:17:58   6   get a big slug of criminal cases, which could not be a good
16:18:04   7   thing for you-all, even on your July 20th hearing date.
16:18:10   8              So I'm just telling you everything is a problem right
16:18:13   9   now.  The coronavirus is creating that problem.  I hope I'm
16:18:23  10   wrong, but I'm not convinced that we're going to be back to
16:18:25  11   business as usual on May the 1st.  I think this is a situation
16:18:29  12   where we've started -- the courts have started moving dates
16:18:36  13   along but I don't think we have seen the end of it.  So there
16:18:40  14   is that.
16:18:41  15              And in the 1063 case we have not yet set that one for
16:18:49  16   trial, and we've got a motion to dismiss setting in that case
16:18:58  17   that we'll take up first.  If the case survives the motion to
16:19:03  18   dismiss, I honestly don't know where that case is going to go
16:19:08  19   for trial, because we are full.  And, as I said, what is not
16:19:15  20   often apparent when you look on the Internet at the dates we
16:19:19  21   have court set is the fact that I spend more time on the same
16:19:25  22   matter outside of the courtroom than I spend on that matter
16:19:30  23   inside the courtroom.  And so there has to be time set aside
16:19:36  24   for that.  So everyone needs to understand that.
16:19:40  25              And I would think that lawyers of your skill and
```

```
16:19:45   1   experience would be capable of sitting down and understanding
16:19:53   2   how all of those moving parts work and working out a reasonable
16:19:57   3   agreement.  It appears that you cannot, and I am disappointed
16:20:07   4   in both sides, because somewhere in the middle is likely to be
16:20:14   5   a time when these depositions can be taken that does not push
16:20:18   6   it too close.  But let me just say I'm not convinced that any
16:20:30   7   of these orders get lifted by June the 25th.
16:20:33   8               Now, I have been working with lawyers that have
16:20:40   9   primarily legal issue bench trials, and we are setting a few
16:20:43  10   here or there.  But with six hours a side on the one that's
16:20:51  11   set, that is over a day of trial time, and I'm not sure we're
16:20:57  12   going to have that in June.  So those are just things that you
16:21:06  13   have to think about.  In the 1071 case, of course, we have the
16:21:11  14   motion to dismiss set the 24th, which we'll discuss.
16:21:18  15               So let me just ask you-all -- because I get paid to
16:21:24  16   make decisions and I'm fine with that; it's what I do, and I
16:21:31  17   will make a decision on this.  I will tell you one of you will
16:21:35  18   not like it and the other one will, and one of you will think
16:21:39  19   it is wrong and arbitrary and it could have been handled better
16:21:45  20   and the other one will agree with it.
16:21:47  21               You're the only ones that can have an agreement that
16:21:53  22   satisfies both of you, if you understand what compromise is,
16:22:01  23   and very few people apparently today do, not the least number
16:22:05  24   of which are in Washington.  But you both have to give up
16:22:09  25   something to get this done.
```

```
16:22:10   1              Now, how important is it to get it done on the
16:22:17   2    schedule it's on versus getting it done in time to have the
16:22:24   3    trial in June, because if I'm going to do it --
16:22:31   4              MR. HAMILTON:  Your Honor, if I can address --
16:22:31   5              THE COURT:  Just a minute.
16:22:33   6              -- I'm going to do it one way or the other, and I'll
16:22:35   7    just tell you what it is.  I'm either going to just arbitrarily
16:22:38   8    set a new date, which I don't think is a good idea, because I
16:22:43   9    don't think that's going to be made, or I'm going to order it
16:22:48  10    be done electronically.  We're in a brave new world out there.
16:22:53  11    We're doing more things electronically.  Everybody is going to
16:22:55  12    have to give up something.  We're going to be in pain for a
16:22:59  13    long time in the way businesses operate and the way we do
16:23:02  14    things.  So now you may address that.
16:23:08  15              MR. HAMILTON:  Well, Your Honor -- Mr. Hamilton on
16:23:10  16    behalf of the plaintiffs in both cases -- I understand and
16:23:14  17    appreciate the Court's comment about the crisis that is
16:23:21  18    exacerbating in the courts with the collision of all of these
16:23:29  19    trial dates and would suggest that that warrants sticking with
16:23:35  20    the schedule.
16:23:36  21              We're happy to be flexible in terms of the specific
16:23:41  22    scheduling of these depositions.  I don't see any reason why we
16:23:44  23    need to.  It's not difficult to arrange the logistics of a
16:23:47  24    video deposition or a telephonic deposition.  Counsel can
16:23:58  25    e-mail --
```

16:23:57  1        THE COURT:  You're wasting everybody's time.
16:23:58  2   Everybody understands that.  I don't want to hear anymore
16:24:01  3   prose.  I want to know if you're going to agree to one way or
16:24:03  4   the other, or am I just going to order it, you know.  You-all
16:24:08  5   aren't being -- let me just tell you, you-all are not being
16:24:11  6   reasonable, because you haven't worked this out.  So I don't
16:24:14  7   want to hear why one side is more reasonable than the other
16:24:17  8   side.
16:24:18  9        MR. SWEETEN:  Your Honor, this is Patrick Sweeten
16:24:20 10   from the State.  And I'll just tell the Court that we are happy
16:24:23 11   to have a discussion with opposing counsel about all these
16:24:27 12   issues based on what your -- what the Court has laid out and
16:24:31 13   see if we can come to something workable.
16:24:33 14        We tried that, you know, in a short e-mail span when
16:24:38 15   this was fist raised last night and until they sent the Court a
16:24:43 16   letter at two o'clock.
16:24:44 17        THE COURT:  Stop, Mr. Sweeten, I want to ask you a
16:24:46 18   question right there.
16:24:48 19        MR. SWEETEN:  Yes, sir.
16:24:48 20        THE COURT:  Have you-all had either a face-to-face
16:24:50 21   meeting or a telephone conference about these issues since the
16:24:55 22   first e-mail went out?
16:24:58 23        MR. SWEETEN:  Since the e-mail last night, the
16:25:00 24   parties have only exchanged e-mails until 2 p.m.
16:25:03 25        THE COURT:  All right.  Then let me tell you again

| | | |
|---|---|---|
| 16:25:05 | 1 | what I have told lawyers a thousand times:  It is a problem of |
| 16:25:09 | 2 | the modern practice of law that lawyers try to work things out |
| 16:25:13 | 3 | with e-mails.  And when you try work them out with e-mails, it |
| 16:25:18 | 4 | never works, or only in the rarest of cases, things get |
| 16:25:24 | 5 | misinterpreted in e-mails.  It's the worst thing that ever |
| 16:25:27 | 6 | happened to the practice of law. |
| 16:25:29 | 7 | My experience in my court has been that at some point |
| 16:25:35 | 8 | both sides, or at least one side, gets frustrated with the |
| 16:25:39 | 9 | e-mails, which is what appears happened here, and then you get |
| 16:25:43 | 10 | the Court involved.  Whereas if you had had personal |
| 16:25:45 | 11 | communication, at least a telephone call, you might have come |
| 16:25:52 | 12 | closer to getting this solved. |
| 16:25:54 | 13 | And I am very critical of the whole process and the |
| 16:25:59 | 14 | practice of law today which leads everybody to think that they |
| 16:26:03 | 15 | can convince somebody by e-mail what ought to be done, because |
| 16:26:08 | 16 | it's just not so.  There has never been an instance in my |
| 16:26:14 | 17 | court, which I'm aware or that has come to my attention, that |
| 16:26:17 | 18 | when things started out with e-mails and I get the lawyers on |
| 16:26:21 | 19 | the phone or get them in here in front of me and find out they |
| 16:26:24 | 20 | haven't ever talked about it, that anything the Court has done |
| 16:26:28 | 21 | has been anything but a waste of time. |
| 16:26:31 | 22 | So now go ahead with what you're saying, because I'm |
| 16:26:36 | 23 | disappointed that when you got the notice that we could have a |
| 16:26:41 | 24 | phone call, you-all didn't immediately have your own telephone |
| 16:26:45 | 25 | conversation.  The only role you as lawyers have in this case |

```
16:26:47   1   is to resolve the case.  It's not up to the Court to resolve
16:26:52   2   the case.  And you are supposed to make it as expeditious as
16:26:59   3   you can to get the case resolved.
16:27:01   4             And what you do when you get engaged in banter like
16:27:04   5   this is waste the Court's time, because I would put you to
16:27:09   6   trial without any depositions.  I do not believe expert
16:27:16   7   testimony is important in this case.  I believe it's a question
16:27:18   8   of looking at statute and determining the issues that are
16:27:21   9   presented.  I realize both of you disagree.  But I'm not likely
16:27:25  10   to give any experts very much weight.  I'll just tell you that
16:27:30  11   going in.  And I'm not likely to give any fact issue witnesses
16:27:34  12   very much weight.
16:27:35  13             What I'm going to give the weight to is looking at
16:27:39  14   the statute and determining whether the objections to it
16:27:41  15   legally are well-taken.  So that's what I tell you.
16:27:53  16             MR. SWEETEN:  Well, Your Honor, the State hears you
16:27:55  17   loud and clear, we are certainly willing to discuss this
16:27:58  18   matter, you know, with opposing counsel.  We certainly -- you
16:28:02  19   know, we were surprised that the Court was contacted, you know,
16:28:07  20   as quickly as it was.  But I think that there's probably, you,
16:28:11  21   know some room to have additional discussions and try to work
16:28:16  22   on this issue.
16:28:17  23             I mean, that, you know, may involve -- it's got to
16:28:21  24   involve some sort of give and take.  So I hear the Court and
16:28:24  25   I'll pledge to do that and talk with opposing counsel on that
```

```
16:28:29   1   issue.
16:28:30   2              MR. HAMILTON:  And, Your Honor, on behalf of the
16:28:31   3   plaintiffs, of course we understand and absolutely will take
16:28:36   4   Mr. Sweeten up on that and have a conference call with him
16:28:39   5   shortly after this one and do our best to reach an amicable
16:28:44   6   agreement that accommodates both sides as well as the health
16:28:47   7   concerns that are raised.
16:28:49   8              THE COURT:  All right.
16:28:50   9              MR. HAMILTON:  Thank you for your time.
16:28:52  10              THE COURT:  All right.  Then I'm going to cut this
16:28:53  11   off and let you do that.  But let me say something while I've
16:28:57  12   got you on the phone, because we've got the motion to dismiss
16:29:01  13   set on the 24th in *Miller* and a scheduling conference on the
16:29:07  14   25th in *Gilby*.  It is going to be my intention to conduct both
16:29:12  15   of those by telephone because we are -- we haven't totally shut
16:29:18  16   the building down, but we are restricting a lot of things
16:29:25  17   because we don't want to throw too many people in contact with
16:29:30  18   one another if we can avoid it.  Some of the things we can't
16:29:33  19   avoid.
16:29:34  20              But in part of your discussions you might want to
16:29:37  21   talk about how you want to handle the fact that those two
16:29:42  22   hearings will be done by telephone.  And if you have exhibits
16:29:50  23   or things in the -- on the motion to dismiss in the *Miller*
16:29:55  24   case -- we probably won't have anything on just the scheduling
16:29:58  25   conference in the *Gilby* case -- you might want to consider
```

```
16:30:03   1  getting them to the Court early and what have you.  So discuss
16:30:06   2  the logistics of those two hearings also.
16:30:12   3              MR. HAMILTON:  Yes, sir.
16:30:13   4              THE COURT:  All right.  Thank you-all.
16:30:13   5              MR. SWEETEN:  Thank you, Your Honor.
16:30:13   6         (End of transcript)
           7
           8
           9
          10
          11
          12
          13
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25
```

1  **UNITED STATES DISTRICT COURT     )**

2  **WESTERN DISTRICT OF TEXAS        )**

3      I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7      I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10     WITNESS MY OFFICIAL HAND this the 29th day of

11 September 2020.

12

13                                  /S/ Arlinda Rodriguez
                                    Arlinda Rodriguez, Texas CSR 7753
14                                  Expiration Date:  10/31/2021
                                    Official Court Reporter
15                                  United States District Court
                                    Austin Division
16                                  501 West 5th Street, Suite 4152
                                    Austin, Texas 78701
17                                  (512) 391-8791