**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

```
TEXAS DEMOCRATIC PARTY, DEMOCRATIC    ) AU:19-CV-01063-LY
SENATORIAL CAMPAIGN COMMITTEE,        )
DEMOCRATIC CONGRESSIONAL CAMPAIGN     )
COMMITTEE, EMILY GILBY, TERRELL       )
BLODGETT, TEXAS YOUNG DEMOCRATS,      )
TEXAS COLLEGE DEMOCRATS,              )
                                      )
    Plaintiffs,                       )
                                      )
V.                                    ) AUSTIN, TEXAS
                                      )
RUTH HUGHS,                           )
                                      )
    Defendant.                        ) MARCH 25, 2020
------------------------------------------------------------
RACHEL MILLER, TEXAS DEMOCRATIC       ) AU:19-CV-01071-LY
PARTY, DNC SERVICES CORP., DSCC, DCCC,)
                                      )
    Plaintiffs,                       )
                                      )
V.                                    ) AUSTIN, TEXAS
                                      )
RUTH HUGHS,                           )
                                      )
    Defendant.                        ) MARCH 25, 2020
```

```
          ********************************************
              TRANSCRIPT OF TELEPHONE CONFERENCE
               BEFORE THE HONORABLE LEE YEAKEL
          ********************************************
```

APPEARANCES:

FOR THE PLAINTIFFS:   CHAD W. DUNN
                      BRAZIL & DUNN
                      4407 BEE CAVES ROAD, BUILDING 1, SUITE 111
                      AUSTIN, TEXAS 78746

                      JOHN M. GEISE
                      PERKINS COIE, LLP
                      700 THIRTEENTH STREET N.W., SUITE 600
                      WASHINGTON, D.C. 20005-3960

```
 1                          KEVIN J. HAMILTON
                            AMANDA J. BEANE
 2                          PERKINS COIE, LLP
                            1201 THIRD AVENUE, SUITE 4900
 3                          SEATTLE, WASHINGTON 98101-3099

 4                          MAX RENEA HICKS
                            LAW OFFICE OF MAX RENEA HICKS
 5                          P. O. BOX 303187
                            AUSTIN, TEXAS 78703
 6
   FOR THE DEFENDANT:       PATRICK K. SWEETEN
 7                          WILLIAM THOMAS THOMPSON
                            MICHAEL ABRAMS
 8                          ERIC A. HUDSON
                            TEXAS ATTORNEY GENERAL
 9                          300 WEST 15TH STREET, 9TH FLOOR
                            AUSTIN, TEXAS 78701
10
   COURT REPORTER:          ARLINDA RODRIGUEZ, CSR
11                          501 WEST 5TH STREET, SUITE 4152
                            AUSTIN, TEXAS 78701
12                          (512) 391-8791

13

14

15

16

17

18

19

20

21

22

23

24 Proceedings recorded by computerized stenography, transcript

25 produced by computer.
```

| | |
|---|---|
| 14:02:13 | 1 |

(In chambers)

THE COURT: All right. Let's start with the plaintiffs, and will somebody tell me who all is representing the plaintiffs in this case.

MR. HAMILTON: I will, Your Honor. Good afternoon. It's Kevin Hamilton on behalf of the plaintiffs -- or at least the *Gilby* plaintiffs. And with me is John Geise, Chad Dunn, and Amanda Beane.

THE COURT: All right. Any other party representatives of any of the plaintiffs?

MR. HICKS: Yes, Your Honor. Renea Hicks here for Terrell Blodgett, Texas Young Democrats and Texas College Democrats. And there's no one else on the phone with me on this.

THE COURT: All right. Let me get you checked off here.

All right. And for the defendants?

MR. SWEETEN: Your Honor, this is Patrick Sweeten. With me is Will Thompson and Eric Hudson. And we've got I think remotely is Michael Abrams is on the line, too.

THE COURT: Mr. Abrams, are you there?

MR. ABRAMS: Yes, Your Honor.

THE COURT: All right. I think we've got everybody.

Okay. Talk a little bit about this, and I know couple of you at least were on the line yesterday when we had

| | | |
|---|---|---|
| 14:03:25 | 1 | the case -- a hearing in another case involving the Secretary |
| 14:03:31 | 2 | of State.  So basic ground rule is, when anybody speaks, first |
| 14:03:36 | 3 | thing you do is state your name so we can get you on the record |
| 14:03:40 | 4 | here. |
| 14:03:40 | 5 | We have in place the earlier scheduling order that I |
| 14:03:48 | 6 | entered on December -- that I signed on December 30th which |
| 14:03:51 | 7 | sets some dates for the filing of dispositive motions and |
| 14:03:56 | 8 | discovery cutoff and what have you.  We've scheduled this as a |
| 14:04:00 | 9 | scheduling conference.  So the first thing I'd like to ask -- |
| 14:04:06 | 10 | and whoever wants to speak can do it -- what do we need to |
| 14:04:12 | 11 | schedule? |
| 14:04:12 | 12 | It seems to me we've got the motion to dismiss |
| 14:04:15 | 13 | pending.  We need to schedule it.  And then do we want at this |
| 14:04:21 | 14 | time to go ahead and schedule the case on the merits to see if |
| 14:04:24 | 15 | it survives the pretrial motions?  Do we need to also get a |
| 14:04:35 | 16 | setting on any other motions that get filed in May?  I'm pretty |
| 14:04:39 | 17 | flexible on this because we're not doing a whole lot right now. |
| 14:04:42 | 18 | The biggest problem you have is, because we're not |
| 14:04:45 | 19 | doing a whole lot right now, if we extend anything in this case |
| 14:04:48 | 20 | much past May or early June, you're not likely to get a |
| 14:04:53 | 21 | judgment before the November election.  So you need to have |
| 14:04:58 | 22 | that in your mind.  We have a big docket here anyway, and |
| 14:05:02 | 23 | the -- the plague has not assisted it in any way because of |
| 14:05:07 | 24 | what we have to do with the calendar. |
| 14:05:10 | 25 | So whoever wants to come first with suggestions, I'm |

14:05:12  1  happy to hear you.

14:05:16  2          MR. HAMILTON:  Your Honor, this is Kevin Hamilton on

14:05:18  3  behalf of the *Gilby* plaintiffs.  And thank you.

14:05:22  4          THE COURT:  Mr. Hamilton, are you saying the "guilty

14:05:25  5  plaintiffs"?

14:05:27  6      (Laughter)

14:05:27  7          MR. HAMILTON:  "Gilby," but thank you.  Hopefully

14:05:31  8  they're not guilty.  We've had a number of discussions with

14:05:36  9  Mr. Sweeten over the course of the last few days, and there's a

14:05:40  10  number of things that I think we've agreed to with respect to

14:05:43  11  discovery and scheduling.  So I'll just tick these off for the

14:05:47  12  Court's consideration.

14:05:49  13          First, as you'll recall, we were on the phone with

14:05:51  14  you earlier this week with respect -- or maybe last week --

14:05:54  15  with respect to a dispute over depositions.  We've worked that

14:05:58  16  all out now and agreed on a process for taking depositions by

14:06:02  17  videotape and to work cooperatively to make that happen.

14:06:06  18          But we've agreed, under the circumstances, because of

14:06:08  19  the coronavirus and the problems that that presents, that the

14:06:18  20  discovery cutoff should be moved back to June 1st.  And I've

14:06:22  21  assured Mr. Sweeten that, if he's unable to complete necessary

14:06:25  22  discovery by that date, that we would confer with him in good

14:06:29  23  faith to address any remaining discovery that he needed to

14:06:33  24  take.

14:06:33  25          Second, we've agreed that the expert witness

14:06:40  1   disclosure deadlines should remain undisturbed but that the

14:06:45  2   filing deadline for Daubert motions should be slid back to

14:06:49  3   May 15th, so moving it back two weeks.

14:06:54  4           And then, finally, we've agreed the dispositive

14:06:59  5   motions deadline should be moved back to June 1st.  Now, we

14:07:05  6   recognize that has an impact on the Court's schedule as well.

14:07:08  7           Speaking for the plaintiffs, all of this is in the

14:07:10  8   hopes that we can complete discovery and set the case for a

14:07:13  9   trial date this summer.  Candidly, though, given the Court's

14:07:19  10  comments about the trial calendar and the impact of the

14:07:22  11  pandemic that has descended on us all, that seemed uncertain at

14:07:28  12  this point.  Our first preference would be, of course, to have

14:07:33  13  a trial on the merits in the summer.

14:07:35  14          THE COURT:  All right.  Let me interrupt you right

14:07:37  15  there, Mr. Hamilton.  This whole thing gets much easier if we

14:07:47  16  could go right to trial with it.  The problem you have in

14:07:50  17  getting a trial setting is, right now I have a motion to

14:07:52  18  dismiss pending and you're anticipating filing further

14:07:59  19  dispositive motions if it survives the motion to dismiss.  All

14:08:08  20  of this -- and I realize what lawyers like to do -- but it

14:08:11  21  slices and dices the case up and pushes you down the line,

14:08:14  22  because it means I don't just have one thing I have to worry

14:08:17  23  about setting, I have three things I have do worry about

14:08:20  24  setting.

14:08:21  25          These kinds of cases I don't find as difficult

14:08:28  1  logistically as the lawyers do.  I can't for the life of me

14:08:33  2  figure out, except I always fail in this plea, why I have to

14:08:38  3  have a dispositive motions deadline, why we should even have

14:08:42  4  dispositive motions.  I've got the motion to dismiss I have to

14:08:46  5  take up, and then if I've got a schedule a dispositive --

14:08:54  6  hearing on dispositive motions and your deadline going to be

14:08:59  7  June the 1st, then we've got to have a response and then

14:09:02  8  there's got to be a reply.  And then I've got to set it, or if

14:09:06  9  you don't want to have oral argument on it, that doesn't help

14:09:09  10  me at all in the amount of time I have to spend in considering

14:09:13  11  it.

14:09:14  12      All of these things that you're allowed to do by the

14:09:17  13  rules just put your case off down the line and makes it a lot

14:09:22  14  harder for the Court to deal with it.  So I just tell you that.

14:09:27  15      If we don't get this done by November, it won't be --

14:09:32  16  or if I don't get a judgment out by November, it won't be

14:09:35  17  because I had trouble finding you a trial date.  It's because I

14:09:41  18  had trouble setting everything separately that you want to set,

14:09:46  19  including any objections to Daubert motions.  And you-all, you

14:09:53  20  know, will immediately get gold stars if I don't see any,

14:09:56  21  because everybody since we had Daubert objects to experts.  I

14:10:04  22  think I could have a theoretical physics case, and one of you

14:10:08  23  would designate Einstein and I would get a Daubert motion.

14:10:12  24      So it's all of the motions, it's the run-up, that

14:10:15  25  holds you off getting a final determination.  It's not dealing

14:10:19  1   with the case.  So I want everybody to understand that, because

14:10:22  2   I am worried about getting this done by the November election.

14:10:26  3   But the reason I'm worried about it is not that this is a

14:10:31  4   difficult case for me to try.  It's just that we have to slice

14:10:35  5   and dice it.  So there you go.  End of rant.

14:10:39  6             MR. HAMILTON:  Your Honor, if I could just jump in

14:10:41  7   here.  Maybe I've got a solution.  I discussed this with

14:10:47  8   Mr. Sweeten as well yesterday.  Our plan was, because of some

14:10:50  9   of the considerations that you mentioned and what we imagined

14:10:53  10  was going to be a crowded docket, was to file a motion for

14:10:56  11  preliminary injunction by April 10th.  That eases the need for

14:11:01  12  a lot of this.

14:11:03  13            THE COURT:  No.  No.  That gives me one more hearing

14:11:06  14  I have to have.  But that's fine.  You know, if you can agree

14:11:16  15  on a preliminary injunction, that would be great.  But you're

14:11:19  16  not helping me if I get a motion for preliminary injunction in

14:11:24  17  April, because that just means it's one more thing I've got to

14:11:27  18  deal with, because sooner or later I'm going to have to hear

14:11:31  19  the dispositive motions and the Daubert motions and the motion

14:11:34  20  to dismiss.

14:11:37  21            MR. HAMILTON:  Understood, your Honor.  I think the

14:11:39  22  idea was that we would -- we would be filing a preliminary

14:11:43  23  injunction motion and deciding it on the papers.  As far as I'm

14:11:50  24  concerned, if there's a motion to dismiss pending -- and there

14:11:53  25  is -- and we're filing a motion for preliminary injunction, I

14:11:56  1    don't see the need for a dispositive motion at that point if

14:11:58  2    any part of the case -- you know, if we achieve -- if the Court

14:12:02  3    grants the preliminary injunction motion, we can set the trial

14:12:08  4    well after the election.  There's no need.  It takes all the

14:12:10  5    pressure off.

14:12:11  6         If the Court denies the preliminary injunction

14:12:13  7    motion, then I'm not -- I'm just -- you know, obviously we

14:12:17  8    would prefer to have a trial date before the summer.  But, if

14:12:20  9    that's going to -- the Court's calendar is probably going to

14:12:25  10   control that.

14:12:25  11        THE COURT:  Well, keep going.

14:12:34  12        MR. HAMILTON:  That's the main gist of what I was

14:12:37  13   going to say.  There's one open dispute between the parties

14:12:40  14   that we have not been able to resolve.  And that is the State's

14:12:44  15   request for leave to take more than ten depositions, the

14:12:48  16   presumptive cap under the federal rules.  We just don't believe

14:12:50  17   that's necessary or appropriate.  Most of the -- the reason

14:12:55  18   that's been advanced is because the plaintiffs have identified

14:12:58  19   more than ten potential individuals who may have relevant

14:13:03  20   knowledge under the Rule 26 disclosure.

14:13:06  21        We, out of an abundance of caution, listed folks that

14:13:11  22   we haven't even talked to but, because of their position as

14:13:14  23   state office holders, likely or may have relevant information

14:13:18  24   about the conduct of elections or the purpose of the

14:13:20  25   legislation.  If we're proceeding on a preliminary injunction

14:13:24  1  motion, there's no need for a full-blown discovery.  If we're

14:13:28  2  doing a full-blown discovery, then we might as well accelerate

14:13:36  3  and head to trial.

14:13:36  4         But, in any event, if the Court denies the motion for

14:13:37  5  a preliminary injunction and sets a trial date in the fall or

14:13:40  6  sometime after the election, then we'll have plenty of time to

14:13:44  7  do discovery then.

14:13:45  8         THE COURT:  Well, I strongly believe that both sides

14:13:48  9  are making this case way more complicated than it is.  But

14:13:52  10  what -- what have you done with regard to the plaintiffs'

14:13:55  11  motion to compel production?  That seems to me like that's an

14:13:59  12  open dispute that's still out there.

14:14:04  13         MR. SWEETEN:  Your Honor, this is Patrick Sweeten on

14:14:07  14  behalf of the secretary of state.  And to answer your question

14:14:12  15  directly first, and then I can address some of the matters that

14:14:13  16  Mr. Hamilton raised, we have briefed that motion.  That motion

14:14:17  17  was about the issue of legislative privilege.  We have filed

14:14:24  18  our response to that, and that is at this point with the Court.

14:14:29  19  That's where that stands.

14:14:30  20         As the Court mentioned earlier, we do have a motion

14:14:33  21  to dismiss outstanding.  The Court heard the arguments

14:14:39  22  yesterday.  There's some overlap with respect to the motion to

14:14:42  23  dismiss.  There's quite a bit in this case.  So that, as the

14:14:45  24  Court has identified, is an open question.

14:14:47  25         Let me kind of go back, if this is okay, Your Honor,

14:14:50    1    to talk about some of the things that Mr. Hamilton addressed.

14:14:53    2            First of all, we heard this Court when last Tuesday

14:14:59    3    the plaintiffs, you know, wrote the Court and sought a hearing

14:15:03    4    and we had a hearing.  We heard this Court, and we've had --

14:15:06    5    since that time, we've had three telephone conferences and

14:15:10    6    we've sent out probably half a dozen e-mails exchanged between

14:15:14    7    us as we're trying to work through this issue.

14:15:17    8            We have -- as we were working towards it, as of

14:15:20    9    yesterday, we thought we'd probably figured out a scheduling

14:15:26    10   order that might work.  I think there were a couple of issues.

14:15:28    11   One is we wanted to make sure the dispositive deadline went

14:15:30    12   after fact discovery or at least on the day it closed.  I don't

14:15:35    13   know that Mr. Hamilton addressed that.

14:15:37    14           But then yesterday late we heard that Mr. Hamilton

14:15:40    15   was planning -- that counsel was planning to file now a

14:15:44    16   preliminary injunction with the thought that they file that

14:15:46    17   April 10th.  And at this point, you know, I think it's

14:15:51    18   important that we figure out what horse they're going to choose

14:15:55    19   to ride.  And if the horse is -- we're going to ride the PI

14:15:59    20   horse, then I don't disagree with Mr. Hamilton.  We ought to

14:16:03    21   just work on the scheduling order through the fall, and I think

14:16:05    22   we can figure a lot of the logistics out and the time deadlines

14:16:11    23   that way.  And then we can address the motion for preliminary

14:16:14    24   injunction.

14:16:14    25           There are some -- you know, if he were to file the

14:16:19  1  preliminary injunction, which he's saying he's going to do, we

14:16:23  2  obviously would need time to do two things, and that would be

14:16:27  3  first to respond, because I would presume if he's talking about

14:16:32  4  doing it on the papers, then we're going to see some new

14:16:35  5  affidavits and some things that we haven't seen before.  So we

14:16:38  6  would need some time to respond to that PI.

14:16:41  7          Secondly, because we probably are going to see some

14:16:44  8  new -- you know, some new opinions that we hadn't seen before,

14:16:48  9  we would certainly need time to take, you know, the necessary

14:16:52  10  depositions.  That said, I think we could do that and file --

14:16:56  11  the State could file its response sometime in mid May, maybe,

14:17:00  12  May 15th, and provide our response.  And then however the Court

14:17:05  13  wishes to proceed with respect to their PI, you know,

14:17:09  14  obviously, we would defer to the Court.

14:17:11  15          But if we're going to ride that horse, then it seems

14:17:13  16  to me that we've got to the -- you know, that the Court should

14:17:17  17  just abate the scheduling order that was intended to move the

14:17:21  18  case forward very quickly, and we'll do it in a PI posture, in

14:17:28  19  a way that allows both parties the ability to make their cases

14:17:33  20  both factually and legal.

14:17:35  21          So if that's what they're going to do, I think we're

14:17:39  22  going to need certainly more than the seven days that the

14:17:42  23  Western District provides for to respond to that kind of

14:17:45  24  situation.

14:17:46  25          Now, I will say that -- and this is now -- I think

14:17:49  1  that's -- if that's what the Court -- if that's what the

14:17:53  2  plaintiffs intend to do, then I think the scheduling order

14:17:56  3  should be pushed off and us deal with the PI issues.

14:18:00  4          So, all that aside, I did want to tell the Court

14:18:04  5  that, after the meeting, we have agreed to take some of the

14:18:07  6  video -- some of the depositions by videotape.  We did agree to

14:18:14  7  extend the overall scheduling order.  We also, with respect to

14:18:17  8  the depositions that he's discussed, the plaintiffs listed 33

14:18:22  9  witnesses on their initial disclosures.  We have been able to

14:18:29 10  eliminate some that we don't think we need to depose, but

14:18:32 11  there's still, you know, somewhere around fifteen or so that

14:18:35 12  we'd like to at least talk to if we were going to be moving

14:18:41 13  toward an overall trial.

14:18:43 14          We could probably push that off until a later time if

14:18:46 15  we're going to -- if we're going under the preliminary

14:18:49 16  injunction posture and just take the depositions that were

14:18:53 17  necessary based on what they filed.

14:18:55 18          So we can go, you know, either way.  If we want to do

14:19:00 19  the PI, I think the scheduling order should get continued.  If

14:19:03 20  we're going to try to go to final trial and not go the PI

14:19:07 21  direction, then we obviously need more time, because we've got

14:19:12 22  to take -- understand, Your Honor, with these shutdown orders

14:19:17 23  and all that's going on, I mean, we've asked them, Who do you

14:19:19 24  represent of those fifteen?  And most of those they don't

14:19:21 25  represent.  And so we're talking about third-party subpoenas

14:19:24 1   and getting them on a video with one lawyer in one place,

14:19:27 2   another lawyer in another place.  And I'm a not even sure right

14:19:33 3   now how we would get -- whether or not we're going to be able

14:19:36 4   to get compulsory process of those third-party witnesses that

14:19:40 5   they've disclosed.

14:19:41 6       Now, I've asked them to see if we could just limit

14:19:42 7   that and tell me who you're going to call at a final trial in

14:19:45 8   this case, and they indicated, as Mr. Hamilton said, that they

14:19:49 9   hadn't talked to those witnesses and so they don't know.  And

14:19:52 10  so, we -- there is a potential for us shaving those down.

14:19:56 11      So I wanted to just let the Court know where we were,

14:19:58 12  let the Court know that it -- that I think that -- that, you

14:20:01 13  know, this is a crossroads and they pick the route.  If it's a

14:20:05 14  PI, then I think everything else can move and we can just focus

14:20:09 15  on the PI, set this thing out, you know, in a normal schedule

14:20:15 16  through November, or whatever the Court deems would be

14:20:17 17  appropriate, but leaving the State enough time to be able to

14:20:23 18  react to the affidavits that would surely be there, the

14:20:26 19  arguments that they would be making, because, you know, to the

14:20:30 20  extent they're factual, we would obviously need the time to

14:20:33 21  take those depositions.

14:20:34 22      So that's the State's position with respect to it,

14:20:38 23  Your Honor.  Are there any questions from the Court?

14:20:41 24      THE COURT:  Well, yes.  Number one, I'm not opposed,

14:20:46 25  if Mr. Hamilton wants to commit to us looking at a request for

14:20:52  1  preliminary injunction first.  But none of you are giving me

14:20:56  2  any cold comfort that that does anything but prolong things.

14:21:01  3  I'm still going to have the motion to dismiss.  Nobody is

14:21:06  4  saying they'll drop a request for dispositive motions.

14:21:11  5        So I don't mind going ahead that way.  I also,

14:21:17  6  Mr. Hamilton, will tell you you need to now eliminate everybody

14:21:23  7  that maybe you've just heard about or seen on television and

14:21:28  8  get it down to who you're actually going to call.

14:21:32  9        One of the things that the coronavirus has done is --

14:21:36  10  and every lawyer needs to understand it because the judges are

14:21:39  11  having to come to ground with it -- it is not a business as

14:21:43  12  usual.  This is a massive thing that has had great effects on

14:21:47  13  everybody's docket.  I cannot tell you how much time I've spent

14:21:49  14  the last ten days in meetings with judges and reading things

14:21:52  15  coming out of the Administrative Office of the Courts.  And all

14:21:56  16  of the administrative and procedural folderol that we've just

14:22:01  17  had to do bureaucratically around here and what we've had to

14:22:06  18  adjust to with our clerk's office out and will be out forever.

14:22:10  19        So what you-all need to do -- you've started on it,

14:22:14  20  but you need to go farther -- is paring this down and getting

14:22:18  21  it ready to go.  Now, having said that, if you agree that we

14:22:28  22  can accomplish something by my looking at a request for a

14:22:32  23  preliminary injunction -- a motion for preliminary injunction,

14:22:40  24  what I would like to see from you is an agreed order for me to

14:22:42  25  sign, a scheduling order that abates -- well, that cancels the

14:22:50  1  existing scheduling order, the one that I signed on

14:22:52  2  December 30th, that sets a schedule for the defendant to file a

14:22:58  3  motion for preliminary injunction, a reasonable time for the

14:23:04  4  plaintiff -- I mean, the plaintiff to file a request for a

14:23:09  5  preliminary injunction, a reasonable time for the defendant to

14:23:12  6  respond, and a reasonable time for the plaintiff to reply.

14:23:15  7       And then once I get that I can go ahead, if you-all

14:23:28  8  are in agreement, I'll look at this without further argument.

14:23:32  9  And I think you-all have gone a long way toward developing this

14:23:35  10  case on the very bunch of stuff -- group of things that I

14:23:39  11  already have, and I suspect you'll write good briefs on this,

14:23:44  12  and I deal with that.  And if I grant the preliminary

14:23:50  13  injunction, then we get back together and discuss what needs to

14:23:53  14  be set from that point forward, and the same would be true if I

14:23:58  15  denied the preliminary injunction.

14:24:00  16       So if in between these dates, if this is the way you

14:24:07  17  want to go, you want to schedule some discovery that would just

14:24:12  18  be germane to the request for preliminary injunction, you can

14:24:17  19  do so.  But I do think -- we've used a lot of metaphors here

14:24:21  20  today, but I do think we are at the point where a decision

14:24:24  21  needs to be made right now -- maybe not right this minute -- on

14:24:30  22  whether or not we want to go that route or whether we want to

14:24:33  23  continue to proceed the way we are.

14:24:37  24       You've got a potential problem with a trial setting

14:24:40  25  based on the number of things I'm going to have to rule on

14:24:44  1  anyway, but I tend to think you-all might be correct, that this

14:24:47  2  is a better way to go about it than the way we've been going

14:24:53  3  about it.

14:24:54  4          What a lot of times is overlooked is -- and I'm all

14:25:00  5  in favor of a transparent court and transparent justice system.

14:25:05  6  But the problem that arises is lawyers look at the calendar

14:25:09  7  that is online and see that I don't have something set one day

14:25:13  8  or three days in a row or for a week and immediately think

14:25:17  9  those are free days when I can set things.  Well, they're not,

14:25:22  10 because with the size of our docket, it takes a long time to

14:25:26  11 write things and to research things.

14:25:29  12          And on well-lawyered, hotly-contested cases, it may

14:25:33  13 seem very obvious to each side, like in this case, which way

14:25:38  14 the Court has to go, but it's not that obvious to the Court.

14:25:43  15 We need to backstop what you put in your briefs.  We need to do

14:25:50  16 individual research.  And then it's not the easiest and

14:25:53  17 simplest thing to draft an opinion that is coherent, that the

14:25:59  18 party that doesn't like it can take to the Circuit.

14:26:03  19          So there's a lot of time in here involved with the

14:26:08  20 court that is not immediately apparent from the public docket

14:26:12  21 which is posted.  And, again, I say what I did a couple of

14:26:17  22 weeks ago, I've got 400 civil cases on any docket.  Every one

14:26:21  23 of them has got a problem right now because of the coronavirus,

14:26:25  24 and I have an increasing number of criminal cases that I'm

14:26:29  25 having to deal with first.  So you need to factor all that in.

14:26:33  1          So where are we?  Do we want to make a decision?  Are

14:26:36  2    you-all prepared to make a decision on the route you want to

14:26:40  3    take right now or do you want to talk about it and regroup?  We

14:26:44  4    started with Mr. Hamilton before, so, Mr. Hamilton, tell me

14:26:48  5    your current thinking.

14:26:48  6          MR. HAMILTON:  Well, Your Honor, I have two thoughts.

14:26:56  7    First, I think it makes sense for us to regroup and allow me to

14:26:58  8    chat or discuss with our team on our side and with Mr. Sweeten,

14:27:03  9    and then we can come up with an agreed order and reconvene.

14:27:07  10          The second thought I had -- and perhaps this ship has

14:27:14  11   sailed and it's not worth raising -- but it would be to

14:27:21  12   accelerate the trial, take the Daubert motion and dispositive

14:27:23  13   motions and those with the trial, roll it all up, and do a

14:27:27  14   trial in early May or early June.

14:27:32  15          That would -- I'm listening to the Court and I'm

14:27:35  16   trying to streamline things.  We have a motion to dismiss now.

14:27:39  17   If that's denied, then we have a trial that -- that just

14:27:45  18   incorporates all of the fending motions.

14:27:49  19          THE COURT:  If we were to do that -- and I think

14:27:52  20   that's a good idea because nobody waives anything -- I don't

14:27:56  21   look for this to be a lengthy trial.  I understand your need

14:28:01  22   for some discovery.  But, as I told you before, I look at it a

14:28:05  23   lot more as a legal issue than you do.  And nobody -- and,

14:28:11  24   Mr. Sweeten, you don't need to comment on this right now.  But

14:28:15  25   we could very easily roll all of the issues into one hearing,

14:28:21 1 you could have argument on it, and we could get it done.

14:28:24 2 And I would suggest -- and I'm going to turn you

14:28:28 3 loose to talk about this, too, along with what else you're

14:28:31 4 talking about.

14:28:32 5 If we did that, the smartest course would be to do it

14:28:36 6 sometime in June, because I'm not convinced that all of the

14:28:40 7 operating orders we have that end the end of April are not

14:28:45 8 going to get extended. I would be concerned about setting this

14:28:53 9 before June.

14:28:53 10 One of the reasons is, this is part of the situation

14:28:59 11 that we have here, the marshals service and other people that

14:29:04 12 advise us want us to keep as few people in the courthouse and

14:29:08 13 as many people out of it as we can. I'm hopeful that we get

14:29:12 14 back to business as normal in May, but I'm not confident of

14:29:16 15 that.

14:29:21 16 MR. HAMILTON: Your Honor, one thing I would just

14:29:22 17 point out, in one of the cases we have, a similar elections

14:29:25 18 case with a similar issue in Florida, the court has scheduled a

14:29:29 19 Zoom trial, where the parties appear by video before Your Honor

14:29:33 20 and we argue it.

14:29:36 21 THE COURT: That would not be my favorite thing. I

14:29:40 22 would do that as a last alternative. One reason is I don't do

14:29:45 23 that kind of stuff well. I'm old school. You're dealing with

14:29:49 24 an old man who hopes he can survive the virus and still be

14:29:54 25 around. If it really gets bad and we have to do it that way,

| | | |
|---|---|---|
| 14:30:01 | 1 | I'll listen to it, but that's not going to be where I want to |
| 14:30:04 | 2 | start planning right now. |
| 14:30:09 | 3 | MR. HICKS:  Your Honor, Renea Hicks for the Blodgett |
| 14:30:11 | 4 | plaintiffs. |
| 14:30:11 | 5 | THE COURT:  Well, Mr. Hicks, you of all people know |
| 14:30:14 | 6 | that when we got away from yellow pads and ballpoint pens as |
| 14:30:18 | 7 | our technology, I totally lost all contact with what you-all |
| 14:30:21 | 8 | do. |
| 14:30:21 | 9 | MR. HICKS:  I haven't gotten away from those yet. |
| 14:30:23 | 10 | THE COURT:  Okay. |
| 14:30:24 | 11 | MR. HICKS:  I know you're disappointed that I don't |
| 14:30:27 | 12 | have more to say, but I just wanted to get clear that we're |
| 14:30:31 | 13 | riding along with what Mr. Hamilton is saying on behalf of the |
| 14:30:34 | 14 | other plaintiffs.  So I just won't step in otherwise. |
| 14:30:37 | 15 | THE COURT:  I understand that, Mr. Hicks, and I |
| 14:30:39 | 16 | admire your restraint. |
| 14:30:43 | 17 | Mr. Sweeten, what is your next comment? |
| 14:30:49 | 18 | MR. SWEETEN:  Well, Your Honor, as we walked in -- |
| 14:30:50 | 19 | walked into the conference room with this telephone call with |
| 14:30:54 | 20 | an agreement that we would at least have until -- with opposing |
| 14:30:58 | 21 | counsel that we would at least have until June 1st to conduct |
| 14:31:00 | 22 | our discovery and he agreed that we've got a whole bunch of |
| 14:31:04 | 23 | logistical issues.  So when we're talking about finishing this |
| 14:31:08 | 24 | case up in May, that obviously concerns me.  I think we |
| 14:31:13 | 25 | could -- |

14:31:14  1          THE COURT:  Well, let me just tell you we're not

14:31:16  2   going to finish this case in May.  That was what I meant by my

14:31:20  3   previous conversation.  Nothing is going to happen that early.

14:31:23  4          MR. SWEETEN:  Okay.  And so taking now I think what

14:31:28  5   the Court is now talking about is a world in which the PI

14:31:31  6   doesn't exist, then I think that -- or they haven't filed it,

14:31:36  7   then I think that right now, you know, I think the big issue is

14:31:40  8   the MTD, which has jurisdictional issues and sovereign immunity

14:31:46  9   issues.  So I think that would be the first boulder to move.

14:31:48  10          We have a whole bunch of discovery that we would feel

14:31:51  11   like we need to do unless, you know, in discussions with

14:31:54  12   Mr. Hamilton tells me I'm not calling that witness, I'm not

14:31:57  13   using that guy.  I'll cut those depos.  I just need to take who

14:32:01  14   he's going to put up at any sort of trial of this matter.

14:32:04  15          So I think we can go back, you know, to pre-yesterday

14:32:08  16   afternoon when I heard they were thinking of filing a PI, and

14:32:11  17   we could proceed with the trial itself.  I do think we need

14:32:15  18   fact discovery, you know, to be extended until June 1st and the

14:32:19  19   other deadlines that we had all talked about.

14:32:22  20          THE COURT:  All right.  Stop right there.  We don't

14:32:25  21   need to talk about all this.  Here's the deal:  I haven't taken

14:32:28  22   anything off the table.  All right?  I think the best way to

14:32:31  23   proceed would be to find you a trial setting sometime in June,

14:32:37  24   if you could get everything done then, or at least July.  If we

14:32:42  25   had a trial that put all of these issues in it sometime in that

14:32:48  1  range, by mid summer or before the end of July, I have every

14:32:52  2  reason to believe we could get a final judgment out well before

14:33:00  3  the election and an opportunity for whoever didn't like it to

14:33:03  4  get to the Circuit, at least to their emergency panel, as

14:33:06  5  quickly as possible.

14:33:07  6        That is an alternative.  If that doesn't work for

14:33:12  7  you-all I am not opposed to looking at going the preliminary

14:33:15  8  injunction route and seeing how that works out.  But we all

14:33:20  9  don't need -- I don't need to be in on your discussions on

14:33:24  10  that.  I'm happy to go whichever route you want to take,

14:33:28  11  bearing in mind that there are bumps in that road based on

14:33:34  12  where we're hung up with the coronavirus stuff on being able to

14:33:38  13  deal with things as efficiently as I would like to and the fact

14:33:41  14  that I do have a big docket.  But, in and around that, I will

14:33:45  15  tell you I find this to be an important case, so I'm going to

14:33:48  16  try to accommodate you where I can.

14:33:50  17        But go back to what I said earlier, this is not

14:33:53  18  business as usual anymore.  You-all are going to have to sit

14:33:58  19  down, and as loath as I am to use modern vernacular, think

14:34:02  20  outside the box and come up with a procedure or a way that

14:34:09  21  protects you both, to where you can make the strongest argument

14:34:13  22  you can on your respective positions, and we get this thing out

14:34:16  23  of the trial court and on down the way as quickly as possible.

14:34:22  24        So I think what I would like to do right now is not

14:34:26  25  do anything except ask you-all how long would you need to take

14:34:32 1 to have some time discussing this and trying to come up with a

14:34:35 2 road or a path and how you want to do it, and then we convene

14:34:39 3 another phone call in the near future and talk about that.

14:34:44 4        I sound like Ross Perot many years ago when he was

14:34:49 5 running for president.  I'm all ears, you know.

14:35:00 6        MR. HAMILTON:  Your Honor, Mr. Hamilton for the

14:35:01 7 plaintiff.

14:35:01 8        I would -- perhaps Monday?  This coming Monday would

14:35:05 9 be -- I think that would give us the balance of today,

14:35:08 10 Thursday, and Friday to discuss with Mr. Sweeten the

14:35:16 11 alternatives and some dates and see if we can reach an

14:35:19 12 agreement.  And, if we can't, at least highlight where we're

14:35:22 13 disagreeing and then reconvene on Monday to present that to the

14:35:26 14 Court.  We could also probably do it by Friday as well.  But

14:35:29 15 there are depositions scheduled for both Thursday and Friday,

14:35:32 16 so I'm thinking Monday.

14:35:33 17        THE COURT:  I'm not pushing you on this, because

14:35:35 18 we've got a little breathing room right now anyway under the

14:35:39 19 existing order.

14:35:40 20        So, Mr. Sweeten, what do you think about getting

14:35:42 21 together Monday?  And I'm not trying to push you to Monday if

14:35:45 22 you need more time than that.  I'm much more interested in

14:35:49 23 you-all having sufficient time to discuss this with your

14:35:52 24 clients and discuss it among yourselves and come up with a path

14:35:55 25 to the end that makes sense that we can all live with than I am

14:35:59  1  pushing you to give me a response on Friday or Monday or

14:36:04  2  Tuesday.

14:36:05  3         I remind you-all, as I remind lawyers all the time,

14:36:09  4  you only have one role in this, case and that's to resolve the

14:36:12  5  case.  And we've discussed various ways you can get it to the

14:36:15  6  point of resolution.  There may be more that we haven't even

14:36:19  7  thought about.

14:36:19  8         So, Mr. Sweeten, tell me what you think would be a

14:36:21  9  reasonable period of time for us to try to regroup here.

14:36:25  10         MR. SWEETEN:  Your Honor, I think that we can make

14:36:27  11  some progress between now -- I think Monday sounds great.  I

14:36:31  12  think we can get back to this court, and hopefully we will have

14:36:34  13  made some progress on, you know, the witness numbers and the

14:36:40  14  scheduling order and some other issues.  So I'm hopeful that we

14:36:43  15  can make some progress.

14:36:44  16         THE COURT:  No.  Let me tell you what I want you to

14:36:46  17  make some progress on more than that.  I want you to make some

14:36:50  18  progress over what the path is, not the -- it would be good to

14:36:53  19  have it on the witnesses and stuff.  But I want to know if

14:36:57  20  there is a chance that, if I block out time in June or July, we

14:37:03  21  can hear this case on the merits.  I want to know, if we're not

14:37:06  22  going to do that, what you-all have talked about, about going

14:37:12  23  the preliminary injunction route.

14:37:13  24         Otherwise, I can deal with your witness stuff right

14:37:16  25  now.  I've heard enough on it, and I can get an order out this

14:37:19  1  afternoon telling you what you're going to do with your

14:37:21  2  witnesses.

14:37:22  3          So I want a much more in-depth study by you-all about

14:37:28  4  resolving this case and how we're going to do it.  And, again,

14:37:32  5  think outside the box.  You know, it is not business as usual.

14:37:36  6  Listen to those two things.  That's what I want.  I want you to

14:37:39  7  forget the way you've tried every other lawsuit you've ever

14:37:43  8  tried and come up with some reasonable way to get this case

14:37:47  9  done.

14:37:48  10          Now, how long do you need to have discussions about

14:37:51  11  that?

14:37:51  12          MR. SWEETEN:  Oh, I think -- and I did intend -- I'm

14:37:55  13  sorry I didn't put that in my list.  I did intend to talk about

14:37:58  14  all those issues, Your Honor, and will do.  And Monday would be

14:38:01  15  enough time, I think, for Mr. Hamilton and I and our groups to

14:38:04  16  get together and try to see what we can work out and then come

14:38:08  17  back and report to the Court.

14:38:09  18          THE COURT:  All right.  Would you prefer to have the

14:38:11  19  telephone conference in the morning or in the afternoon?

14:38:18  20          MR. SWEETEN:  I think either way would work, but I'd

14:38:19  21  probably prefer Monday afternoon about this same time if that's

14:38:24  22  all right with the Court.

14:38:24  23          THE COURT:  It would be a little later.  I could give

14:38:25  24  you three o'clock.  I've got another -- everything I'm doing is

14:38:27  25  by telephone right now, obviously.  But I've got another

14:38:31　1　telephonic conference at 2:00.  So how would three o'clock

14:38:35　2　Monday sound for you-all?

14:38:36　3　　　　　MR. SWEETEN:  That works well, Your Honor.

14:38:37　4　　　　　MR. HAMILTON:  And for Mr. Hamilton for the

14:38:40　5　plaintiffs, that's fine, Your Honor.  That works well.

14:38:42　6　　　　　THE COURT:  All right.  Then I'm going to leave

14:38:44　7　everything we have in place now in place, and we will

14:38:47　8　reschedule the telephonic scheduling conference for

14:38:53　9　three o'clock on Monday.  It will be the same call-in and

14:38:56　10　everything that you already have.

14:39:00　11　　　　　And you-all see what you can come up with, because I

14:39:03　12　mean it:  I will accommodate you any way I can reasonably

14:39:10　13　accommodate you if you-all will work together on this.

14:39:16　14　　　　　MR. HAMILTON:  Thank you, Your Honor.  We very much

14:39:17　15　appreciate that.

14:39:18　16　　　　　THE COURT:  All right.  I look forward to talking

14:39:20　17　with you again on Monday.

14:39:22　18　　　　　MR. HAMILTON:  All right.  Thank you, Your Honor.

14:39:23　19　　　　　MR. SWEETEN:  Thank You, Judge.

14:39:24　20　　　　　MR. HICKS:  Thanks.

14:39:25　21　　　(End of transcript)

22

23

24

25

1 **UNITED STATES DISTRICT COURT          )**

2 **WESTERN DISTRICT OF TEXAS            )**

3          I, Arlinda Rodriguez, Official Court Reporter, United

4 States District Court, Western District of Texas, do certify

5 that the foregoing is a correct transcript from the record of

6 proceedings in the above-entitled matter.

7          I certify that the transcript fees and format comply with

8 those prescribed by the Court and Judicial Conference of the

9 United States.

10          WITNESS MY OFFICIAL HAND this the 29th day of

11 September 2020.

12

13                                    /S/ Arlinda Rodriguez
                                       Arlinda Rodriguez, Texas CSR 7753
14                                    Expiration Date:  10/31/2021
                                       Official Court Reporter
15                                    United States District Court
                                       Austin Division
16                                    501 West 5th Street, Suite 4152
                                       Austin, Texas 78701
17                                    (512) 391-8791

18

19

20

21

22

23

24

25