**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| TEXAS DEMOCRATIC PARTY, DEMOCRATIC ) | AU:19-CV-01063-LY |
| SENATORIAL CAMPAIGN COMMITTEE, ) | |
| DEMOCRATIC CONGRESSIONAL CAMPAIGN ) | |
| COMMITTEE, EMILY GILBY, TERRELL ) | |
| BLODGETT, TEXAS YOUNG DEMOCRATS, ) | |
| TEXAS COLLEGE DEMOCRATS, ) | |
| ) | |
|    Plaintiffs, ) | |
| ) | |
| V. ) | AUSTIN, TEXAS |
| ) | |
| RUTH HUGHS, ) | |
| ) | |
|    Defendant. ) | APRIL 6, 2020 |

---------------------------------------------------------------

| | |
|---|---|
| RACHEL MILLER, TEXAS DEMOCRATIC ) | AU:19-CV-01071-LY |
| PARTY, DNC SERVICES CORP., DSCC, DCCC,) | |
| ) | |
|    Plaintiffs, ) | |
| ) | |
| V. ) | AUSTIN, TEXAS |
| ) | |
| RUTH HUGHS, ) | |
| ) | |
|    Defendant. ) | APRIL 6, 2020 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE LEE YEAKEL
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

FOR THE PLAINTIFFS:  CHAD W. DUNN
                    BRAZIL & DUNN
                    4407 BEE CAVES ROAD, BUILDING 1, SUITE 111
                    AUSTIN, TEXAS 78746

                    JOHN M. GEISE
                    PERKINS COIE, LLP
                    700 THIRTEENTH STREET N.W., SUITE 600
                    WASHINGTON, D.C. 20005-3960

```
1                        KEVIN J. HAMILTON
                         AMANDA J. BEANE
2                        PERKINS COIE, LLP
                         1201 THIRD AVENUE, SUITE 4900
3                        SEATTLE, WASHINGTON 98101-3099

4                        MAX RENEA HICKS
                         LAW OFFICE OF MAX RENEA HICKS
5                        P. O. BOX 303187
                         AUSTIN, TEXAS 78703
6
   FOR THE DEFENDANT:    PATRICK K. SWEETEN
7                        WILLIAM THOMAS THOMPSON
                         ERIC A. HUDSON
8                        TEXAS ATTORNEY GENERAL
                         300 WEST 15TH STREET, 9TH FLOOR
9                        AUSTIN, TEXAS 78701

10 COURT REPORTER:       ARLINDA RODRIGUEZ, CSR
                         501 WEST 5TH STREET, SUITE 4152
11                       AUSTIN, TEXAS 78701
                         (512) 391-8791
12

13

14

15

16

17

18

19

20

21

22

23

24 Proceedings recorded by computerized stenography, transcript

25 produced by computer.
```

15:00:36 1    (In chambers)

15:00:47 2          THE COURT:  All right.  Well, thank you-all for being

15:01:14 3    available this afternoon.  Let me start with the plaintiff, and

15:01:19 4    announce who all will be on the call from you-all, and then

15:01:24 5    we'll do the same with the defendant.

15:01:26 6          And when we get into this, remember that whenever

15:01:31 7    anybody on the phone starts speaking, state your name first so

15:01:33 8    we can make sure that we know who we're talking to.

15:01:37 9          So let's start with the plaintiff as to who is

15:01:39 10   available by phone today.

15:01:43 11         MR. HAMILTON:  Good afternoon, Your Honor.  It's

15:01:45 12   Kevin Hamilton for the Gilby plaintiffs.  And with me is

15:01:49 13   co-counsel Amanda Beane and John Geise, G-e-i-s-e.  And I

15:01:54 14   believe Mr. Hicks, Renea Hicks, is on as well for the Blodgett

15:01:59 15   plaintiffs.

15:02:00 16         MR. HICKS:  Yes, I am.

15:02:02 17         MR. DUNN:  And Chad Dunn is here also.

15:02:04 18         THE COURT:  All right.  And for the defendant?

15:02:08 19         MR. SWEETEN:  Good afternoon, Your Honor.

15:02:09 20   Patrick Sweeten for the defendant.  With me today is

15:02:13 21   Eric Hudson and Will Thompson.

15:02:18 22         THE COURT:  Okay.  Very good.  We had a conference

15:02:21 23   call, as you-all remember, a couple of weeks ago and originally

15:02:25 24   had scheduled this call for last Monday, but you-all were

15:02:28 25   engaged in trying to work through the situation.  And so

15:02:32  1  whoever wants to start out, tell me where we are and what we

15:02:39  2  need to take up today.

15:02:45  3        MR. HAMILTON:  Your Honor, this is Kevin Hamilton for

15:02:46  4  the plaintiffs.  I'm happy to run through the areas of

15:02:49  5  agreement.

15:02:55  6        THE COURT:  Well, Mr. Hamilton, those are going to be

15:02:57  7  the only areas, aren't they, the areas of agreement?

15:02:59  8        MR. HAMILTON:  I wish I could say that, Your Honor.

15:03:02  9        But the good news is I think the parties, we've met

15:03:06  10  on numerous occasions over the last two weeks, all with the

15:03:13  11  goal of trying to simplify this matter, as the Court directed

15:03:16  12  the parties, and set it on a realistic schedule for a potential

15:03:19  13  trial in late June or early July.  And I think we've made some

15:03:22  14  good progress.  So, if I might, I'll just quickly run through

15:03:26  15  those.

15:03:26  16        The parties have agreed that the discovery cutoff

15:03:32  17  should be June 1 for all discovery, absent some special

15:03:36  18  circumstances.

15:03:37  19        Number two:  The dispositive motions cutoff should be

15:03:41  20  June 1st.  The plaintiffs' position is that the parties should

15:03:46  21  simply forego dispositive motions and roll it all into the

15:03:50  22  trial itself.  But if the State wants to, and they've indicated

15:03:53  23  they do, file its motion, then we've agreed that would be an

15:03:56  24  appropriate deadline and it could be entertained without

15:03:59  25  argument.

15:04:02 1    Number three:  We've agreed that all parties should

15:04:05 2 disclose primary trial witnesses by April 10th, far earlier

15:04:11 3 than usual, but these are unusual circumstances, and disclosure

15:04:14 4 of rebuttal witnesses by all parties on April 17th.  The goal

15:04:18 5 here is to get those parties out on the table so that people

15:04:25 6 can take discovery if they need to.

15:04:27 7    Number five:  The parties have agreed that the time

15:04:30 8 for trial should be evenly divided between the plaintiffs and

15:04:34 9 the State and enforced by the Court with a time clock.

15:04:38 10    Number six:  With respect to Daubert issues, any

15:04:42 11 challenge to any of the experts would be addressed either in a

15:04:46 12 pretrial motion in limine or in a trial brief or actually at

15:04:51 13 trial by standing up and objecting.  The State suggests

15:04:56 14 deadline, if one were to file motions in limine, filing such

15:05:00 15 motions seven days --

15:05:02 16    THE COURT:  Let me interrupt you right there.  I'm

15:05:06 17 not going take up objections to experts in motions in limine.

15:05:11 18 I never do that.  I think it's an extremely bad idea.  Your

15:05:14 19 choice is to have a Daubert motion deadline that is reasonably

15:05:20 20 far out, because these sometimes take time, or you just make

15:05:25 21 your objections during trial.  But I'm not going to do it by

15:05:31 22 motion in limine.

15:05:31 23    Lawyers way overuse motions in limine.  And, if you

15:05:34 24 haven't learned it in my court before anyway, I don't want to

15:05:40 25 see lengthy motions in limine, and I doubt I'm going to see any

15:05:43 1  motions in limine because we're going to do this to the bench,

15:05:45 2  aren't we, or are we going to have a jury trial?

15:05:47 3          MR. HAMILTON:  It's going to be a bench trial,

15:05:50 4  Your Honor.

15:05:50 5          THE COURT:  Then there wouldn't be a place for a

15:05:52 6  motion in limine anyway.

15:05:53 7          So if you want me to deal with experts early, you're

15:05:56 8  going to have to set a date for that and file motions.

15:06:05 9          MR. HAMILTON:  All right.  Thank you.  I think from

15:06:07 10 the plaintiffs' perspective, there is no need for that.  I

15:06:09 11 think all of the experts are likely to be considered experts by

15:06:12 12 the Court, and any issues can be addressed simply at trial.

15:06:20 13         THE COURT:  All right.

15:06:20 14         MR. HAMILTON:  There are two principal areas of

15:06:22 15 disagreement, neither hugely significant, I don't think.

15:06:26 16         The first is a motion to dismiss.  There's a fully

15:06:30 17 briefed pending motion to dismiss.  The State seeks an early

15:06:32 18 date to argue the motion.  Plaintiffs' position is that the

15:06:35 19 motion should be decided without argument or simply carried to

15:06:39 20 trial.  But if the Court wishes to entertain argument on the

15:06:42 21 motion, of course we stand ready to do that at the Court's --

15:06:47 22 at the Court's pleasure and whenever is convenient for the

15:06:51 23 Court.

15:06:52 24         The second outstanding issue is expert reports.

15:06:55 25 There are three experts in this case.  Plaintiffs have

15:06:58 1 identified two; the State has identified one. We've proposed,

15:07:03 2 in order to streamline the trial, to simply admit the expert

15:07:06 3 reports into evidence, allow each side a very brief 15-minute,

15:07:10 4 top-level summary, and then allow the other side to

15:07:13 5 cross-examine the expert.

15:07:14 6 The State's proposed that, instead, the parties

15:07:18 7 should redo the expert report into a written direct testimony

15:07:23 8 that then would be submitted to the Court in lieu of the report

15:07:26 9 and then proceed to cross-examination. In our view, that's

15:07:30 10 just unnecessarily complicating things. Three-judge federal

15:07:36 11 panels entertaining redistricting cases across the country --

15:07:40 12 Virginia and North Carolina are two cases I was involved in.

15:07:43 13 Texas is a case I was not involved in -- but in 2017 all of

15:07:46 14 them adopted that approach of admitting the expert reports into

15:07:50 15 evidence, obviously, with any objection going to the weight in

15:07:55 16 order to streamline the presentation.

15:07:57 17 So it's not an unheard of approach, but it's

15:08:01 18 ultimately a question for this Court and how it would like the

15:08:03 19 testimony presented.

15:08:04 20 THE COURT: Let me say something, and I'm not getting

15:08:08 21 into that quite right now. But on expert reports, one of

15:08:13 22 things I require -- and I hope your reports, whether they end

15:08:20 23 up being introduced in evidence and cross-examined on the base

15:08:23 24 of the reports or whether we do it some other way, I want a

15:08:26 25 section in every expert's report that says "opinions" and gives

15:08:34 1 me, in point-by-point fashion, without argument or without

15:08:41 2 hiding it or anything, just in a couple of sentences, what the

15:08:47 3 opinion -- the bottom-line opinion that you're going to ask

15:08:50 4 your expert to give in this case.

15:08:53 5      I do not like to have to search through expert

15:08:57 6 reports.  Expert reports are getting far too wordy and are not

15:09:03 7 of much help to the Court.  It's all right if you want to have

15:09:10 8 background and what else you have in a general part of the

15:09:13 9 report.  But somewhere in that report I want a section that

15:09:16 10 says "opinions" and then very briefly and succinctly list for

15:09:23 11 me the opinions you intend for the expert give.

15:09:29 12      MR. HAMILTON:  Yes, Your Honor.  We can certainly do

15:09:31 13 that.

15:09:31 14      THE COURT:  Now go ahead.

15:09:33 15      MR. HAMILTON:  Okay.  Last thing I was going to say,

15:09:35 16 and then I'll stop:  The parties have worked hard to resolve a

15:09:43 17 lingering dispute involving the details of electronic document

15:09:47 18 discovery and various search terms.  The plaintiffs made a

15:09:49 19 proposal over the weekend.  The state responded just a couple

15:09:52 20 of hours ago.  I'm hopeful we can resolve that shortly.  But,

15:09:55 21 in any event, it shouldn't be relevant to this scheduling

15:10:00 22 conference.  And, if necessary, that dispute can be addressed

15:10:04 23 by motion or by magistrate judge, if necessary.  But I'm

15:10:07 24 hopeful that won't be necessary.

15:10:08 25      THE COURT:  All right.  Let me ask you a question:

| | | |
|---|---|---|
| 15:10:11 | 1 | Do we also still have outstanding as a disagreement the |
| 15:10:17 | 2 | legislative privilege argument on that discovery? |
| 15:10:21 | 3 | MR. HAMILTON: Yes, Your Honor. I believe there is a |
| 15:10:26 | 4 | pending dispute about that. I don't believe -- we haven't been |
| 15:10:29 | 5 | discussing that issue. Neither side has raised that. |
| 15:10:34 | 6 | THE COURT: No. I'm just looking at my docket and |
| 15:10:36 | 7 | seeing what I have that I've got to deal with still. So that's |
| 15:10:41 | 8 | still there to deal with? |
| 15:10:44 | 9 | MR. HAMILTON: Yes, Your Honor. |
| 15:10:46 | 10 | THE COURT: Mr. Sweeten? |
| 15:10:51 | 11 | MR. SWEETEN: Yes, Your Honor. Patrick Sweeten for |
| 15:10:54 | 12 | the secretary. A couple of things I want to go over. First of |
| 15:10:56 | 13 | all, we have had multiple, multiple on-the-phone negotiations. |
| 15:11:01 | 14 | I think Your Honor would be pleased with that. I think we have |
| 15:11:06 | 15 | made some progress on some issues we talked about. I think |
| 15:11:09 | 16 | he's hit many of them, so I'm not going to repeat them. But, |
| 15:11:11 | 17 | largely, it's the discovery deadlines and those other |
| 15:11:15 | 18 | deadlines. |
| 15:11:16 | 19 | We do have some issues that -- that, you know, we |
| 15:11:19 | 20 | want to address with the Court. I mean, I can first talk about |
| 15:11:25 | 21 | a couple that Mr. Hamilton raised. One is the motion to |
| 15:11:30 | 22 | dismiss that we have filed in this case. We were -- you know, |
| 15:11:33 | 23 | we're hopeful that we can get that set in pretty short order. |
| 15:11:40 | 24 | A couple of things about that: It's very similar to |
| 15:11:42 | 25 | a motion to dismiss that this Court already heard in the ballot |

| | |
|---|---|
| 15:11:47 | 1 |
| 15:11:51 | 2 |
| 15:11:53 | 3 |
| 15:11:57 | 4 |
| 15:12:03 | 5 |
| 15:12:08 | 6 |
| 15:12:13 | 7 |
| 15:12:17 | 8 |
| 15:12:21 | 9 |
| 15:12:25 | 10 |
| 15:12:30 | 11 |
| 15:12:35 | 12 |
| 15:12:39 | 13 |
| 15:12:43 | 14 |
| 15:12:49 | 15 |
| 15:12:56 | 16 |
| 15:13:00 | 17 |
| 15:13:03 | 18 |
| 15:13:06 | 19 |
| 15:13:10 | 20 |
| 15:13:15 | 21 |
| 15:13:18 | 22 |
| 15:13:21 | 23 |
| 15:13:26 | 24 |
| 15:13:30 | 25 |

order case that Mr. Thompson argued on the 24th.  It has
threshold jurisdictional issues like they -- one of their
plaintiffs, Mrs. Blodgett, has made an ADA claim.  There's
sovereign immunity standing.  And we believe those issues need
to be entertained by the Court as an initial matter.

So I want to say that.  I want do to also on the --
there are a couple of issues that we want to let this Court
know about.  First of all is there are two sets of plaintiffs
in this case.  There's the Blodgett plaintiffs, and then there
are the Gilby plaintiffs.  And Mr. Blodgett is a senior
citizen.  He is in the Westminster facility.  And, obviously,
as we've been working through these negotiations, one of the
things I reached out on Friday to Mr. Hicks, who I don't think
has been a part of these discussions, he advised that right
now, based on a quarantine at that facility, that there's very,
very limited contact with Mr. Blodgett.

Now, Mr. Blodgett has filed an ADA claim.  So,
obviously, there's going to be a point where we're going to
have to go in and take his deposition.  This crisis, as you
know, is -- you know, it's changing, and we don't know when
that would be, that we would be able to take that deposition.
The State has, on some of these other depositions, has agreed
to take video conference depositions.  We've been conducting
those, as the Court's, you know, asked us to work with them,
and we have done that.  We continue to do that.  But it may be

15:13:34  1  a very difficult thing to have Mr. Blodgett provide deposition

15:13:42  2  testimony even through technology.

15:13:43  3  And so it's a concern that we haven't been told it's

15:13:46  4  not going to happen. We have been told, though, that there is

15:13:50  5  great difficulty right now and a full quarantine on having

15:13:55  6  folks go into that facility. And so I think there's -- you

15:13:58  7  know, as we're talking about setting a trial in this matter, I

15:14:01  8  think it's important that this Court knows that that issue is

15:14:05  9  occurring.

15:14:06  10  There's another, in addition to the motion to dismiss

15:14:09  11  and the issue regarding Mr. Blodgett -- and, by the way, with

15:14:12  12  Mr. Blodgett are two other organizational plaintiffs who we

15:14:16  13  intend to depose. And I'm also told that there may be some

15:14:20  14  amount of difficulty obtaining those, because those -- it's

15:14:26  15  Texas Young Democrats or the College Democrats, and they've all

15:14:31  16  gone home. But we'll certainly work with Mr. Hicks if we need

15:14:34  17  to take those depositions. You know, the main thing is we've

15:14:37  18  got to take them before the trial of this case. That's the

15:14:39  19  main issue. And I'm not sure -- you know, as this Court's

15:14:45  20  considering scheduling a trial, I think the Court needs to take

15:14:47  21  that into account.

15:14:49  22  So I want to also address the discovery issue. We

15:14:54  23  have had multiple, multiple meetings, and that's why we

15:14:59  24  canceled the hearing last Monday, because we continued to work

15:15:02  25  through those issues. We are being asked to provide, you know,

15:15:09  1  over 10,000 documents right now in response to discovery

15:15:13  2  requests.  We have objected to those discovery requests as

15:15:17  3  overly broad.  We've made some progress.  We've agreed to go

15:15:21  4  ahead -- they've sent us something like 32 search terms.  We've

15:15:27  5  agreed to go ahead and start processing a good number of those,

15:15:31  6  but we are at odds on that.

15:15:33  7          THE COURT:  All right.  Let me just interrupt here.

15:15:36  8  Why is all of this discovery necessary for me to resolve the

15:15:42  9  issue I have in front of me?  I can understand that there could

15:15:50  10  be a fact issue here, but I think you-all are making this

15:15:53  11  harder than it needs to be.

15:15:55  12          You ought to be able -- and you don't have to respond

15:16:00  13  to this today, but you ought to be able to sit down and

15:16:05  14  determine, and you ought to be able to do this through

15:16:08  15  stipulations to a large degree, exactly what's happening out

15:16:11  16  there and exactly who is affected by it, and then I apply the

15:16:17  17  law to that.

15:16:17  18          Now, let me tell you where your problem is:  I'm

15:16:24  19  pretty much convinced we're not going to be out of this deal

15:16:27  20  anytime soon -- and I am talking about the coronavirus thing.

15:16:33  21  I'm convinced as I can be, without us having discussed it and

15:16:37  22  the chief judge of the district having made a ruling, that all

15:16:40  23  of the orders that we have that cut things off the end of April

15:16:46  24  as an idea to go back to normal are going to get extended at

15:16:50  25  least until the end of May.  I feel pretty strongly that the

15:16:53 1  governor's orders and the mayors' orders in the various cities

15:16:58 2  and the county judges' orders in the various counties of Texas

15:17:01 3  are going to get extended until the end of May.  I'm not 100

15:17:05 4  percent satisfied we're going to be back to business as usual

15:17:09 5  in June, because just because the curve flattens doesn't mean

15:17:15 6  that nobody is getting the virus anymore.

15:17:19 7          And so you just need to be aware of this and not have

15:17:25 8  your hopes unduly up to where we're going to get this done in

15:17:30 9  time for the November election, provided we have a November

15:17:33 10 election.  So you've got to be aware of that.  You need to look

15:17:39 11 at this.

15:17:39 12         I just have -- I just can't imagine how there would

15:17:48 13 be tens of thousands of pages of documents that would be

15:17:50 14 helpful to the Court or to anybody in this case.  And so I

15:17:55 15 appreciate all the work you're doing, but you know, listen to

15:18:03 16 what I've been saying -- and I've not just been doing this to

15:18:06 17 you -- this is not business as usual.  You don't get to try

15:18:09 18 this case or put it together the way you've been doing it your

15:18:12 19 whole careers.

15:18:14 20         We're in a new area right now.  I've got criminal

15:18:17 21 cases backing up on me.  I've got other cases backing up on me.

15:18:21 22 And, as much as I want to accommodate you-all and as much as I

15:18:28 23 appreciate what you're doing, it might not happen.  And you

15:18:31 24 need to be aware of that because you're not the only people

15:18:35 25 that have really urgent things that I'm having to deal with

15:18:42  1  here.  And it just seems to me that that's way too much

15:18:45  2  discovery in any rational world.

15:18:47  3          But now go ahead, Mr. Sweeten, but I just want

15:18:50  4  you-all to know that.

15:18:52  5          MR. SWEETEN:  Okay.

15:18:53  6          THE COURT:  That you're still --

15:18:54  7          MR. SWEETEN:  Thank you, Your Honor.

15:18:55  8          THE COURT:  -- you're still groping around with the

15:18:57  9  way you're used to doing things, and both sides need to get

15:19:01  10  that out of their mind.

15:19:03  11          Perhaps if there's a problem with Mr. Blodgett, the

15:19:05  12  plaintiffs ought to sit down and determine if that's the

15:19:08  13  plaintiff you absolutely have to have.

15:19:10  14          You've got to balance what's makable here and what's

15:19:15  15  not makable here if we're going to have any chance of getting

15:19:19  16  this case resolved sometime in the summer.  And it's not

15:19:23  17  helping anybody -- the coronavirus is not helping anybody, and

15:19:28  18  there's going to be a problem.  And you get to a point where to

15:19:32  19  if things are happening right near the end and we're looking at

15:19:36  20  a trial, we might not get it done.

15:19:38  21          I understand the State's desire to have a motion to

15:19:41  22  dismiss heard.  But know that every time you put another level

15:19:45  23  in here that I have to rule on, it gets you-all farther away

15:19:50  24  from getting this case resolved because of the demand of the

15:19:54  25  other cases I have on my docket.  It's not just about you.

15:19:58  1          But go ahead.

15:20:00  2          MR. SWEETEN:  Thank you, Your Honor.

15:20:01  3          And I understand.  And, Judge, so there are a couple

15:20:04  4  of other issues I just wanted to hit upon.  One is to your

15:20:08  5  point about the ruling on motions.  We have agreed that we'll

15:20:13  6  file any MSJ by June 1st, but we're not going to ask, you know,

15:20:21  7  for an oral argument with respect to the MSJ before trial.  So

15:20:27  8  that's one area --

15:20:28  9          THE COURT:  Well, let me say something right here.

15:20:30  10  You're not scoring any points with me when you tell me that

15:20:33  11  you're going to have a motion to dismiss and a motion for

15:20:36  12  summary judgment and we're looking at a bench trial.  I can

15:20:40  13  just tell you that.  That is something that drives me nuts,

15:20:45  14  that we have serial dispositive motions that I have to deal

15:20:51  15  with before I can get to a final decision in this case.  I

15:20:57  16  think that's a problem.

15:20:58  17          MR. SWEETEN:  Understood, Your Honor.

15:20:59  18          THE COURT:  I think it's a problem in our procedural

15:21:02  19  system.  And, you know, what I can always tell you is I'm not

15:21:07  20  going to do anything with them at all, and then you can run to

15:21:10  21  New Orleans on an interlocutory appeal, which would be just

15:21:15  22  fine, and they can do whatever they're going to do with it.

15:21:18  23  And then it's going to come back here, and I still might not

15:21:22  24  get to them.

15:21:23  25          I'm telling you you need to quit thinking about

15:21:25  1  business as usual.  I will tell you I do not want to deal with

15:21:28  2  a motion to dismiss and a motion for summary judgment.

15:21:37  3          MR. SWEETEN:  Okay.  And I hear you, Your Honor.  I

15:21:39  4  mean, obviously, you know, we will take this Court's statements

15:21:45  5  and will consider that as it relates to the MSJ.  I do want to

15:21:48  6  reiterate, though, that we believe it's important that this

15:21:51  7  Court entertain that MTD.

15:21:56  8          I do want to just touch on a couple of more issues

15:21:58  9  that counsel brought up -- actually, it's just one more, and it

15:22:04  10  is the issue of reports.  And, you know, we understand the

15:22:07  11  Court wants us to work through those issues.  We thought

15:22:12  12  that -- first of all, we're prepared to do the standard direct

15:22:16  13  or cross.  But if the Court wants another method to do that, I

15:22:21  14  have had in other cases courts request that the parties draft

15:22:27  15  written directs rather than, you know, enter a report into

15:22:34  16  evidence and then allow the cross-examination based on the

15:22:38  17  written direct.  And that's what I've proposed to counsel.

15:22:41  18  Many times these reports have lots of extraneous information in

15:22:45  19  them.  They don't go straight to the point.  And I think that

15:22:48  20  there's a discipline that's imposed by a written direct.  And

15:22:53  21  so we are --

15:22:54  22          THE COURT:  Well, let me say something about reports.

15:22:56  23  You-all agree on what's the easiest way to get this done.  I

15:23:00  24  don't have a preference.  Let me tell you the way I learned how

15:23:04  25  you handled expert reports.  Expert reports were to provide

materials to the parties about the expert and what the expert
had done, and they were never introduced in trial.  I tried a
lot of cases where we never introduced an expert report because
it's almost all hearsay.  It's of very little value.  What
experts do is consider all that hearsay and then state
opinions.  And that's why I want it clearly where I can find it
what your expert's opinions are.

        I don't care whether we put the reports in evidence
or not.  That's something for you to agree or disagree on.
But, you know, the way you do experts is, if the expert's
qualified, you establish the expert's qualifications and then
ask him the question and have him state his opinion on it.  So
I don't care how you get around to doing that.  I don't have a
preference on it.  I don't care if you want to put experts on
the stand and ask them questions.  I don't care if you want to
do reports.

        At some point, if you haven't agreed on it or you
haven't adequately estimated how much time the various
proposals will take, we're going to come to a point -- sometime
in this case we're going to talk about how much time you're
going to get to try it.  I'm not going to give you unlimited
time.  I already think you-all are doing too much.  But I'll do
the best I can with the time I have, and I don't know how much
time that's going to be by the time we get down the line or
when it's going to come up.

15:24:52 1    But you-all figure out how you want to do experts.  I

15:24:55 2 don't have a preference.

15:24:59 3    MR. HICKS:  Your Honor, this is Renea Hicks.  I'm

15:25:01 4 going to come back to Blodgett plaintiffs briefly, if I can?

15:25:06 5    THE COURT:  Yes.

15:25:06 6    MR. HICKS:  The problem about Mr. Blodgett -- this

15:25:08 7 only arose Friday afternoon when I heard from Mr. Sweeten that

15:25:12 8 he wanted to depose him and the other two organizational

15:25:17 9 plaintiffs.  We haven't had time to find out much yet.  The

15:25:20 10 initial check is right now they're on lock-down in Westminster,

15:25:24 11 and so only folks with health-related reasons to visit get to

15:25:30 12 go in.  We don't know yet if --

15:25:32 13    THE COURT:  And I bet lawyers -- I bet lawyers don't

15:25:35 14 fall in that category, do they?

15:25:36 15    MR. HICKS:  Well, ill health, maybe.  So we don't

15:25:43 16 know if Mr. Blodgett's deposition is going to present a problem

15:25:48 17 or not.  And this comes back to the point you made about being

15:25:52 18 creative in this situation.  We're just going to have to see as

15:25:55 19 the next week or two develops.  We have to get ahold of

15:25:58 20 Mr. Blodgett for one thing.  It's difficult because he has bad

15:26:00 21 hearing aids right now, so even talking to him on the phone is

15:26:03 22 difficult.  So Mr. Blodgett's one thing.

15:26:06 23    As to the two organizational plaintiffs, Texas Young

15:26:10 24 Democrats and Texas College Democrats, Mr. Sweeten is correct.

15:26:14 25 They've kind of gone off to the four winds, home to wherever

15:26:17 1  they were.  But what I had suggested to Mr. Sweeten was that we

15:26:21 2  are not going to call them as what I would call merits

15:26:25 3  witnesses.  I was proposing to Mr. Sweeten that we didn't even

15:26:31 4  need a deposition.  Although he has a right to take one, we

15:26:34 5  didn't even need them because I was just going to do a sparse

15:26:38 6  declaration by their reps that said, you know, here we are.  We

15:26:43 7  have these concerns.  What I call a basic standing declaration.

15:26:47 8  And I don't think Mr. Sweeten finds that acceptable, but that

15:26:52 9  was a proposal I'd made in an effort to carry out your idea

15:26:54 10 about being creative, and that would save time at trial, too.

15:26:56 11 I suppose we can keep talking about that.

15:26:59 12          And so that's all I have to say on those things, is

15:27:02 13 that we're trying.  And I don't know that any of this is going

15:27:05 14 to present a problem.  It's just it didn't solve in the last

15:27:08 15 weekend since I've heard about this coming up.

15:27:15 16          MR. SWEETEN:  And, Your Honor, if you want me to

15:27:16 17 address that just briefly.  We don't know what the affidavit is

15:27:19 18 going to say.  We certainly would potentially want to explore

15:27:22 19 with those plaintiffs.  I don't envision an extremely long

15:27:25 20 deposition.  But, certainly, we would want to explore certain

15:27:28 21 issues related to standing.

15:27:30 22          Obviously, Mr. Blodgett's a different situation, I

15:27:33 23 think, you know, we certainly need to find out, you know, about

15:27:36 24 his ADA claim, his claims to, you know, reasonable

15:27:40 25 accommodations, there's more there.  Now, that's addressed in

15:27:46  1  our motion to dismiss.  But it's a -- you know, right now, in

15:27:50  2  planning for the discovery in this case, we certainly would

15:27:53  3  want to take depositions, albeit possibly short as to the

15:27:58  4  organizational plaintiff of these witnesses.  And we'll

15:28:00  5  certainly work with them to do so using technology, but I do

15:28:04  6  think that the issue on Mr. Blodgett we did want to raise with

15:28:07  7  the Court because we're making plans for 60, 75 days out.

15:28:12  8          THE COURT:  So what would you-all do if I set a trial

15:28:16  9  setting?  Suppose I just set a trial setting today, and I

15:28:21  10 guessed right and we would be in a situation where we could be

15:28:25  11 having trials again and people coming into the courthouse at

15:28:28  12 the time I set it.  But suppose I'm correct and all of the

15:28:41  13 quarantine orders and what have you run through the end of May

15:28:44  14 and get us to the 1st of June and you haven't gotten all of

15:28:47  15 these depositions and you haven't worked out your problems with

15:28:51  16 the experts and how you're going to do the experts.  What are

15:28:56  17 you going to do if I just tell you, well, I'm not going to

15:28:59  18 change that trial date.  You're going to get everything

15:29:01  19 together in the best form you can get it, and then we're going

15:29:04  20 to try it?  Where does that leave you?  Because that's an

15:29:08  21 option I have.

15:29:18  22          MR. HAMILTON:  Well, Your Honor, I would say -- this

15:29:22  23 is Mr. Hamilton on behalf of the plaintiffs.

15:29:24  24          I would hope that the lawyers would be able to

15:29:26  25 marshal the evidence they have and go forward.  The state

15:29:30 1 courts in Oregon -- it's not where I practiced, and I've never

15:29:35 2 tried a case there -- they don't routinely allow much discovery

15:29:39 3 except for experts, and the lawyers somehow manage to put on

15:29:42 4 cases and try cases. Before the modern discovery rules,

15:29:45 5 lawyers managed to try cases without actually doing a whole lot

15:29:48 6 of discovery and doing everything that modern litigators do.

15:29:52 7       THE COURT: I cannot -- I cannot tell you how many

15:29:55 8 cases I tried in Texas without taking a deposition. You got

15:30:00 9 the truth through cross-examination. We didn't have this

15:30:06 10 cottage industry discovery. I don't think we've advanced the

15:30:09 11 ball. You know, if I could pass a law -- well, there'd be two

15:30:16 12 laws. The first one would be I'd do away with all dispositive

15:30:20 13 motions. That would be the first one I'd pass. That's the

15:30:21 14 first thing that's totally messed up the entire litigation

15:30:24 15 system. And the second one would be I would do away with

15:30:27 16 discovery.

15:30:28 17       Because I can tell you, during my years of practicing

15:30:34 18 law and now my years on the bench, I don't think there is

15:30:39 19 3 percent, maybe even less, of things that are discovered in

15:30:44 20 discovery that has any outcome-determinative effect on the

15:30:49 21 case. And there's somewhere only a slight bit above that of

15:30:57 22 things that are found in discovery that actually even get into

15:31:04 23 the trials that I saw when I was a trial lawyer and that I see

15:31:07 24 as a judge. So I'm just telling you there is an easier way to

15:31:14 25 do this and a less time-consuming one.

15:31:18  1          MR. HAMILTON:  And I agree with that, Your Honor.

15:31:21  2   And at some point when we're not on a status conference on a

15:31:26  3   pending case, I'd love to have a discussion with you about

15:31:29  4   modern discovery because I think we'd find a lot to agree on.

15:31:33  5          But, in response to your specific question about how

15:31:35  6   we would try the case in the event you picked a date in late

15:31:38  7   June or early July for this trial and it actually turned out we

15:31:42  8   were able to have an in-person trial at that point, but without

15:31:45  9   some of this discovery, I think that we would probably survive

15:31:49  10  in that case.  And that would be our preference, Your Honor,

15:31:53  11  that we simply establish a date and let the parties move

15:31:57  12  forward with getting the case ready for that date.

15:32:01  13         And, if things turn out differently, Your Honor,

15:32:04  14  we're just going to have to be flexible and creative about how

15:32:09  15  we approach this.  And if it's not possible to have a trial,

15:32:12  16  there are other ways to reach dispositive ruling in this case.

15:32:17  17         MR. HICKS:  Your Honor, this is Renea Hicks.  I agree

15:32:19  18  with Mr. Hamilton on that.  I just wanted to say, as to the

15:32:22  19  three Blodgett plaintiffs, particularly Mr. Blodgett, I am

15:32:28  20  confident it would make not one bit of difference in the

15:32:31  21  outcome of this case if he were -- if the State weren't to hear

15:32:34  22  from him until he got up and testified briefly to the matters

15:32:38  23  that are outlined in the complaint.  There are not many

15:32:42  24  surprises.  They're just going to be exhaustion.

15:32:45  25         MR. SWEETEN:  Your Honor, first of all, with respect

15:32:48  1  to Mr. Hamilton's profession of streamlining, it is he who is

15:32:56  2  insisting on the 13,000 documents in this case.  So, however

15:32:59  3  the courts of Oregon do it, he's seeking a voluminous amount of

15:33:05  4  discovery at this time.

15:33:06  5       Now, with respect to Your Honor's hypothetical, I

15:33:09  6  think we are working towards trying to get a date set in late

15:33:14  7  June or early July for the trial of this case.  And, you know,

15:33:20  8  we do think -- as I've said several times, we do think that the

15:33:24  9  motion to dismiss will help clarify what those claims are.

15:33:28  10       As to Mr. Hicks's statement that, you know, of course

15:33:32  11  he would like us not to find out about his ADA claim that he's

15:33:36  12  lodged against us and his claims in this case.

15:33:39  13       MR. HICKS:  Let me just break in.  I didn't say --

15:33:42  14       MR. SWEETEN:  But we have the right -- we have the

15:33:44  15  right to take, you know, discovery of the -- of a named

15:33:47  16  plaintiff in this case, you know, is my answer to Mr. Hicks.

15:33:52  17  And, certainly, you know, we're going to work with him to do

15:33:55  18  that well within his schedule.  We're not here to just do it,

15:33:59  19  you know, for the purpose of, you know, just for the deposition

15:34:02  20  itself.  We're here to discover material evidence about the

15:34:06  21  claims that he's lodging against the State.

15:34:09  22       THE COURT:  Let me just tell you, I am very, very

15:34:13  23  skeptical about whether an ADA claim is going to influence me

15:34:17  24  very much on determining what I'm going to do with the ultimate

15:34:22  25  outcome of this case.  So nobody comment on that, but just

15:34:24  1  think about that.

15:34:26  2       You know, I think this case can be boiled down to the

15:34:31  3  simple issue of what's in front of me without all of the window

15:34:34  4  dressing around it.  And I don't think you need 13,000

15:34:40  5  documents, and I'm skeptical as to whether you need much in the

15:34:45  6  way of depositions.

15:34:56  7       MR. HAMILTON:  Your Honor, if I might just jump in

15:34:59  8  and just respond to one thing.  I hear Your Honor loud and

15:35:03  9  clear about the scope of electronic discovery, and I certainly

15:35:06  10 don't think that there's going to be anything close to 13,000

15:35:10  11 documents that may be submitted at the trial.  It's going to be

15:35:13  12 very, very --

15:35:13  13      THE COURT:  I'm not talking about submitting.

15:35:16  14 Submitting into trial is one thing, but even the defendants

15:35:19  15 having to give up that many documents is something else.

15:35:22  16      MR. HAMILTON:  I understand, Your Honor.  If the

15:35:25  17 question is -- the plaintiffs in this case have already

15:35:29  18 produced nearly that number of documents or already reviewed

15:35:34  19 that number of documents.

15:35:34  20      THE COURT:  Let me ask you this, then:  What do you

15:35:37  21 think the fact issues are in this case, because I don't see as

15:35:41  22 many of them as you do.

15:35:44  23      MR. HAMILTON:  That may be, Your Honor.  And it's --

15:35:47  24 the documents that we're looking for relate to the intent

15:35:51  25 claim.  And that's difficult.  That actually is not amenable to

15:35:56  1  the approach that you mentioned earlier, that you simply

15:35:59  2  address, you know, the impact of the law and who it affects and

15:36:04  3  then apply the law to that set of facts.

15:36:08  4          The intent documents are uniquely within the

15:36:11  5  possession of the State.  And we've tried -- and we're working

15:36:14  6  on narrowing that, like I said.  The State proposed a narrowing

15:36:18  7  earlier this afternoon -- or this morning in an effort to

15:36:24  8  resolve that, and I think we're very close to it.  So I think

15:36:27  9  we've already spent more time on this issue in this status

15:36:30  10  conference than it probably deserves.

15:36:33  11          THE COURT:  I could not agree with you more.

15:36:35  12          You know, well, I would just be trying this

15:36:41  13  differently than you're trying it, but I'm not going to tell

15:36:44  14  you how to practice law.  I'm out of that business.

15:36:53  15          MR. HAMILTON:  Thank you, Your Honor.  I --

15:36:54  16          THE COURT:  So where do you-all propose we leave it

15:36:56  17  today?

15:37:00  18          MR. HAMILTON:  Well, Your Honor, I would propose --

15:37:02  19  on behalf of the plaintiffs, I would propose that we set a

15:37:05  20  trial date and that we fix the discovery deadlines, the

15:37:10  21  dispositive -- well, the Court's already indicated that you're

15:37:15  22  not excited about dispositive motions, so I think we should

15:37:18  23  just do away with that, but I would at least set it as a filing

15:37:22  24  for the discovery deadline.

15:37:24  25          THE COURT:  No.  Let me tell you, because, if I do

| | | |
|---|---|---|
| 15:37:28 | 1 | that, then you-all are going to conveniently overlook the fact |
| 15:37:33 | 2 | that I've got to rule on these motions and that I'm required in |
| 15:37:37 | 3 | the federal system -- this is another defect in the federal |
| 15:37:40 | 4 | system -- to write a reasoned opinion on every one of your damn |
| 15:37:45 | 5 | motions.  I don't get to say "granted" or "denied" like the |
| 15:37:48 | 6 | state courts do.  And I don't have time to rule on those |
| 15:37:52 | 7 | motions, and I am not going to run -- |
| 15:37:57 | 8 | MR. HAMILTON:  Your Honor -- |
| 15:37:57 | 9 | THE COURT:  -- I'm not going to run everything right |
| 15:37:59 | 10 | up until the trial date.  So you determine a schedule for me |
| 15:38:06 | 11 | that gets all of that stuff done no later than the end of May, |
| 15:38:10 | 12 | and then I'll tell you what the trial date's going to be; that |
| 15:38:14 | 13 | we have no more motions filed, nothing, and that you're done by |
| 15:38:18 | 14 | the end of May.  And then I'll tell you what your trial date |
| 15:38:22 | 15 | is.  That's what I want to see out of you. |
| 15:38:27 | 16 | MR. HAMILTON:  Okay. |
| 15:38:30 | 17 | MR. SWEETEN:  Your Honor, we can go ahead and discuss |
| 15:38:32 | 18 | with counsel -- we can go back to the table with counsel for |
| 15:38:34 | 19 | the plaintiffs and try to work some of these issues out, |
| 15:38:38 | 20 | whittle them down, and we could come back to Court perhaps |
| 15:38:40 | 21 | later this week and see if we -- if we're able to get -- get |
| 15:38:44 | 22 | something worked out. |
| 15:38:46 | 23 | MR. HAMILTON:  Your Honor, this is Mr. Hamilton |
| 15:38:49 | 24 | again.  Would you like to see a proposed order from the parties |
| 15:38:52 | 25 | that we can agree to. |

15:38:54 1    THE COURT:  Well, either that or here's what I would

15:38:56 2 like to see before we get back together, so I won't set another

15:39:00 3 phone call quite yet.  I would like to see a schedule that has

15:39:05 4 everything done by the end of May, and there will be no motions

15:39:10 5 of any kind filed after the end of May; that everything you're

15:39:16 6 going to do is done.  And I would like to see, then, again,

15:39:25 7 with nobody telling me who is right and who is wrong, but with

15:39:28 8 great specificity, the areas of disagreement that, after

15:39:34 9 further discussion, you just cannot resolve.

15:39:41 10    And you get those two things in to me within a

15:39:46 11 reasonable period of time.  And I'm not going to tell you what

15:39:48 12 that reasonable period of time is because, you know, I've heard

15:39:52 13 some areas of agreement here and some areas of disagreement

15:39:55 14 here and you're going to have to talk about those.  So, you

15:39:59 15 know, maybe by the close of business Friday you could get me

15:40:04 16 that.  If you can do it earlier, that would be fine.  But I'm

15:40:08 17 not going to put you on a strict timeline right now.  I just

15:40:13 18 want it quickly, and I want to know what your idea of the

15:40:17 19 schedule is to get everything finished except my holding a

15:40:22 20 trial and where the areas are that you just can't work out.

15:40:33 21    MR. HAMILTON:  Yes, Your Honor.  We can do that.

15:40:36 22    MR. SWEETEN:  In what form would you like to see the

15:40:38 23 specification of the areas we cannot resolve.

15:40:41 24    THE COURT:  Just a written deal that says, "Point

15:40:43 25 one:  We can't agree on taking Mr. Blodgett's deposition; Point

15:40:49  1  two:  We can't agree on what we're going to do with experts."

15:40:56  2        MR. SWEETEN:  Okay.  No explanation.  Just a

15:40:58  3  one-sentence identification.

15:40:59  4        THE COURT:  Yeah.  I don't want any explanation.

15:41:01  5  I've heard your explanations.  I just want to know where the

15:41:04  6  disagreement is.

15:41:06  7        MR. SWEETEN:  Understood, Your Honor.  We can do

15:41:08  8  that.  That shouldn't be any problem.

15:41:11  9        THE COURT:  And I hope there's not very many of them.

15:41:16  10       Now, let me say something about it, because we still

15:41:18  11 have this legislative privilege thing floating around out

15:41:21  12 there, and that needs to be on your area of disagreement list.

15:41:26  13 And I've seen your invitation in footnote 7 of the State's

15:41:29  14 response to provide documents for in-camera review.

15:41:35  15       I don't know how many of you ever practiced in front

15:41:38  16 of Judge Dietz over in state court, but he had a really good

15:41:41  17 way to handle in-camera review.  He would review the documents,

15:41:45  18 but he would review them in the courtroom, and you-all had to

15:41:47  19 be sitting in the courtroom while he reviewed the documents,

15:41:51  20 because his feeling was that "in-camera" is generally a way to

15:41:55  21 get it off your desk and not have to make a decision on it and

15:42:00  22 put it on the desk of the court that are overburdened anyway.

15:42:03  23       So I'm not real fond of the in-camera inspection.  If

15:42:07  24 you're serious about that, you're going to have to tell me

15:42:12  25 exactly how many documents I need to review and exactly what

15:42:16  1   I'm going to find out that would help me make the decision on

15:42:20  2   whether I'm going to order them produced or not, such as did

15:42:23  3   they come, you know, before the bills were passed in each house

15:42:28  4   or did they come after.  You know, I don't -- I read that

15:42:31  5   footnote 7, and, you know, I don't know what I think I'm going

15:42:36  6   to find out if I look at those.  So think about that.

15:42:39  7          And you and -- let me tell you, you-all are smart

15:42:42  8   lawyers.  You-all ought to be able to sit down -- I've read

15:42:48  9   everything on this legislative thing the legislative privilege.

15:42:54  10  I can tell you I'm leaning towards saying that there is a

15:42:56  11  qualified highly restricted privilege in effect in the federal

15:43:03  12  courts in the Fifth Circuit.

15:43:05  13         You-all ought to be able to talk about that, and

15:43:08  14  you-all ought to be able to decide what's discoverable or not,

15:43:12  15  because I'm going to tell you my gut reaction is some of it is

15:43:16  16  and some of it's not.  And so you-all need to sit down.  You

15:43:21  17  can read the law as well as I can.  You can make agreements on

15:43:28  18  the law.  You can sit down and read *Jefferson Community Health*

15:43:32  19  *Care Centers* and determine exactly what the Fifth Circuit said

15:43:36  20  there, because that's what I'm likely to do.  So you can work

15:43:44  21  that out.  Reasonable people can work it out.

15:43:55  22         What else do we need to discuss?

15:43:58  23         MR. SWEETEN:  Your Honor, this is Patrick Sweeten.

15:44:00  24         I don't think there are any other issues to address.

15:44:03  25  We heard the Court, and so we'll continue having those

15:44:06  1  discussions and provide the information the Court requested by

15:44:08  2  Friday close of business.

15:44:11  3          THE COURT:  All right.  Well, thank you-all.  We will

15:44:13  4  get there.

15:44:16  5          MR. HAMILTON:  Thank you, Your Honor.

15:44:17  6      (End of transcript)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT          )**

**WESTERN DISTRICT OF TEXAS          )**

I, Arlinda Rodriguez, Official Court Reporter, United States District Court, Western District of Texas, do certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

WITNESS MY OFFICIAL HAND this the 30th day of September 2020.


                              /S/ Arlinda Rodriguez
                              Arlinda Rodriguez, Texas CSR 7753
                              Expiration Date:  10/31/2021
                              Official Court Reporter
                              United States District Court
                              Austin Division
                              501 West 5th Street, Suite 4152
                              Austin, Texas 78701
                              (512) 391-8791